# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UD DISSOLUTION CORP.<br>     (fna, V3 Systems, Inc.),<br><br>     Debtor.<br><br>UD DISSOLUTION LIQUIDATING TRUST,<br><br>     Plaintiff,<br><br>     v.<br><br>SPHERE 3D CORPORATION, incorporated under the laws of the Province of Ontario, Canada; V3 SYSTEMS HOLDINGS, INC., a Delaware corporation; PETER TASSIOPOULOS, an individual; JASON D. MERETSKY, an individual; ERIC L. KELLY, an individual; PETER ASHKIN, an individual; MARIO BIASINI, an individual; GLENN M. BOWMAN, an individual; DANIEL J. BORDESSA, an individual; VIVEKANAND MAHADEVAN, an individual; OVERLAND STORAGE, INC., a California corporation; SILICON VALLEY TECHNOLOGY PARTNERS, LLC, a Delaware Limited Liability Company; CYRUS CAPITAL PARTNERS, L.P., a Delaware limited partnership; FBC HOLDINGS, S.A. R.L., a private limited liability company organized in Luxembourg; CRESCENT 1, L.P., a Delaware limited partnership; CRS MASTER FUND, L.P., a Cayman Islands exempted limited partnership; CYRUS OPPORTUNITIES MASTER FUND II, LTD., a Cayman Islands exempted limited company; CYRUS SELECT OPPORTUNITIES MASTER FUND, LTD., a Cayman Islands exempted limited company; CYRUS CAPITAL PARTNERS GP, L.L.C., a Delaware limited partnership; CYRUS CAPITAL ADVISORS, L.L.C., a Delaware limited liability company; STEPHEN C. FREIDHEIM, an individual; and JOHN DOES I-X,<br><br>     Defendants. | Utah Bankruptcy Case No. 14-32546<br>(Chapter 11)<br><br><br>Misc. Pro. No.:  18-00102 (MFW)<br><br>**Re: D.I. 18**<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE CYRUS DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT [JURY TRIAL DEMANDED]** |

**MEMORANDUM OF LAW IN SUPPORT OF THE CYRUS
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: February 10, 2020

*Of Counsel*:
**AKIN GUMP STRAUSS
HAUER & FELD LLP**
Brian T. Carney (*pro hac vice* pending)
Kristen Diane White (*pro hac vice* pending)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail: bcarney@akingump.com
E-mail: kristen.white@akingump.com

**POTTER ANDERSON & CORROON LLP**

*/s/ L. Katherine Good*
Matthew F. Davis (DE Bar No. 4696)
L. Katherine Good (DE Bar No. 5101)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-mail: mdavis@potteranderson.com
E-mail: kgood@potteranderson.com

*Attorneys for Cyrus Capital Partners, L.P.,
Crescent 1, L.P., CRS Master Fund, L.P., Cyrus
Opportunities Master Fund II, Ltd., Cyrus
Select Opportunities Master Fund, Ltd., Cyrus
Capital Partners GP, L.L.C., Cyrus Capital
Advisors, L.L.C., FBC Holdings, S.A.R.L., and
Stephen Cyrus Freidheim*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .........................................................................................................6

    I.       THE PARTIES AND THE PROCEDURAL BACKGROUND ..............................6

    II.      THE RELEVANT TRANSACTIONS ....................................................................9

          A.      Initial Transactions between Sphere, Overland and the Cyrus Defendants .................................................................................................10

          B.      The V3 Asset Purchase and the March 2014 Debenture............................11

          C.      Sphere's Alleged Delay in Consenting to Remove the Legend on V3's Initial Shares and the October 10, 2014 Agreement .........................12

          D.      Sphere's Acquisition of Overland and the December 2014 Debenture ...................................................................................................13

          E.      The April 6, 2016 Credit Agreement.........................................................13

          F.      Sphere's Sale of Overland to SVTP.........................................................14

    III.     ALLEGATIONS REGARDING PETER BOOKMAN.........................................15

ARGUMENT .............................................................................................................................16

    I.       LEGAL STANDARDS ........................................................................................17

    II.      PLAINTIFF HAS FAILED TO STATE A VALID CLAIM FOR ACTUAL OR CONSTRUCTIVE FRAUDULENT TRANSFER TO AVOID CERTAIN PROPERTY TRANSFERS BY SPHERE (SEVENTH AND EIGHTH CLAIMS) .............................................................................................19

          A.      Plaintiff Cannot Assert Fraudulent Transfer Claims Under the Bankruptcy Code to Avoid the Liens Granted in Connection with the December 2014 Debenture and the Property Transferred Pursuant to the SPA Because Sphere is Not in Bankruptcy......................19

          B.      Plaintiff has Failed to State a Valid Claim to Avoid Certain Property Transfers by Sphere as Actual or Constructive Fraudulent Transfers Under Applicable State Law ......................................................21

III.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR SECURITIES
       FRAUD UNDER § 10(b) OF THE SECURITIES EXCHANGE ACT OF
       1934 AND SECURITIES EXCHANGE COMMISSION RULE 10b-5
       (TWENTY-THIRD CLAIM) ...............................................................................27

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND
       ABETTING BREACH OF FIDUCIARY DUTY (TENTH CLAIM) ..................35

       A.    Plaintiff Fails to State a Valid Claim that the Cyrus Defendants
             Aided and Abetted Breaches of Fiduciary Duties in Relation to the
             SPA .............................................................................................................35

       B.    Plaintiff Fails to State a Valid Claim that the Cyrus Defendants
             Aided and Abetted Breaches of Fiduciary Duties in Relation to the
             APA .............................................................................................................40

V.     PLAINTIFF FAILS TO STATE A VALID CLAIM FOR EQUITABLE
       SUBORDINATION UNDER THE BANKRUPTCY CODE OR THE
       UNIFORM COMMERCIAL CODE (ELEVENTH CLAIM)..............................42

VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH
       ECONOMIC RELATIONS (TWENTIETH CLAIM)..........................................43

VII.   PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH
       CONTRACTUAL RELATIONS (TWENTY-FIRST CLAIM)............................45

VIII.  PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT
       (TWENTY-SIXTH CLAIM) ...............................................................................46

IX.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONSTRUCTIVE
       CONVERSION (TWENTY-SECOND CLAIM) ..................................................47

X.     PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION AGAINST
       STEPHEN FREIDHEIM .....................................................................................48

XI.    PLAINTIFF'S CAUSE OF ACTION FOR A TEMPORARY,
       PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF IS
       IMPROPER (TWENTY-SEVENTH CLAIM) ......................................................49

CONCLUSION....................................................................................................................49

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Aetna, Inc. Sec. Litig.,
   617 F.3d 272 (3d Cir. 2010).................................................................31

In re AgFeed USA, LLC,
   No. 13-11761, 2015 WL 9133627 (Bankr. D. Del. Dec. 15, 2015)........................18

Albert v. Alex. Brown Mgmt. Servs., Inc.,
   No. Civ. A. 762-N, 2005 WL 1594085 (Del. Ch. June 29, 2005) ...........................44

In re Am. Bus. Fin. Servs.,
   361 B.R. 747 (Bankr. D. Del. 2007) ...................................................38

Arnold v. Society for Savings Bancorp, Inc.,
   678 A.2d 533 (Del. 1996) ...............................................................48

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)......................................................................17

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007).......................................................................17

Berryman v. Merit Prop. Mgmt., Inc.,
   152 Cal. App. 4th 1544 (2009)..........................................................39

Bhole, Inc. v. Shore Invests., Inc.,
   67 A.3d 444 (Del. 2013) ................................................................46

Casey v. U.S. Bank Nat'l Ass'n,
   127 Cal. App. 4th 1138 (2005) ........................................................39

Central Bank of Denver v. First Interstate Bank of Denver,
   511 U.S. 164 (1994).....................................................................30

Charas v. Sand Tech. Sys. Int'l, Inc.,
   No. 90 Civ. 5638, 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) ..............................37

In re Circle Y of Yoakum, Texas,
   354 B.R. 349 (Bankr. D. Del. 2006) ....................................................23

In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.,
   Nos. C-05-04726, C-06-00537, 2007 WL 486367 (N.D. Cal. Feb. 12, 2007) .............39

v

Cornielsen v. Infinium Capital Mgmt., LLC,
      916 F.3d 589 (7th Cir. 2019) .................................................................38

Davenport v. Litton Loan Servicing, LP,
      725 F. Supp. 2d 862 (N.D. Cal. 2010) ...................................................39

Duncan v. Vantage Corp.,
      C.A. No. 18-288, 2019 WL 1349497 (D. Del. Mar. 26, 2019).................30

Dura Pharm., Inc. v. Broudo,
      544 U.S. 336 (2005).....................................................................33, 34

E.I. Du Pont de Nemours & Co. v. Monsanto Co.,
      No. CIV.A. 00–359–SLR, 2001 WL 652019 (D. Del. Feb. 14, 2001) ..............44, 45

Easton Technical Prods., Inc. v. FeraDyne Outdoors, LLC,
      No. 18-1222, 2019 WL 1513463 (D. Del. April 8, 2019) .......................18

Ernst & Ernst v. Hochfelder,
      425 U.S. 185 (1976).........................................................................32

Fan v. StoneMor Partners LP,
      927 F.3d 710 (3d Cir. 2019).........................................................31, 32

Fleeger v. Clarkson Co. Ltd.,
      86 F.R.D. 388 (N.D. Tex. 1980) .........................................................37

Fountain v. United States,
      605 F. Supp. 2d 608 (D. Del. 2009).....................................................39

Fowler v. UPMC Shadyside,
      578 F.3d 203 (3d Cir. 2009)...............................................................17

General Motors Corp. v. New A.C. Chevrolet, Inc.,
      263 F.3d 296 (3d Cir. 2001)...............................................................18

Genrette v. Bank of New York Mellon Tr. Co., N.A.,
      No. CV 19-936 (MN), 2019 WL 4917890 (D. Del. Oct. 4, 2019) .........46

In re Global Link Telecom Corp.,
      327 B.R. 711 (Bankr. D. Del. 2005) ...................................................26

Gould v. American-Hawaiian Steamship Co.,
      535 F.2d 761 (3d Cir. 1976)...............................................................30

Hawk Mountain LLC v. Mirra,
      No. 13-2083-SLR-SRF, 2016 WL 3182778 (D. Del. June 3, 2016) .......39

In re Ikon Office Solutions, Inc.,
    277 F.3d 658 (3d Cir. 2002)...............................................................................32

Klein v. General Nutrition Cos., Inc.,
    186 F.3d 338 (3d Cir. 1999).............................................................................32

Kostolany v. Davis,
    No. 13299, 1995 WL 662683 (Del. Ch. Ct. Nov. 7, 1995).....................................36

Krys v. Pigott,
    749 F.3d 117 (2d Cir. 2014).............................................................................38

Levine v. Milton,
    219 A.2d 145 (Del. Ch. Ct. 1996).....................................................................36

In re Liquid Holdings Grp. Inc.,
    No. 16-10202, 2018 WL 2759301 (Bankr. D. Del. June 6, 2018)....................24, 38

Lum v. Bank of Am.,
    361 F.3d 217 .................................................................................................19

MarkDutchCo I B.V. v. Zeta Interactive Corp.,
    411 F. Supp. 3d 316 (D. Del. 2019)...................................................................19

McCabe v. Ernst & Young, LLP,
    494 F.3d 418 (3d Cir. 2007).............................................................................33

McCullough v. Advest, Inc.,
    754 F. App'x 109 (3d Cir. 2018) ......................................................................28

Merck & Co., Inc. v. Reynolds,
    559 U.S. 633, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010).......................................28

North Am. Catholic Educ. Programming Found., Inc. v. Cardinale,
    567 F.3d 8 (1st Cir. 2009)................................................................................38

In re Oakwood Homes Corp.,
    325 B.R. 696 (Bankr. D. Del. 2005) ..................................................................25

Oliver v. Roquet,
    858 F.3d 180 (3d Cir. 2017).......................................................................17, 18

Omnicare, Inc. v. NCS Healthcare, Inc.,
    809 A.2d 1163 (Del. Ch. 2002).........................................................................41

In re Optim Energy, LLC,
    527 B.R. 169 (D. Del. 2015).............................................................................42

IMPAC 6570287v.1

In re OSC 1 Liquidating Corp.,
   529 B.R. 825 (Bankr. D. Del. 2015) ....................................................................18

In re Our Alchemy, LLC,
   No. 16-11596, 2019 WL 4447519 (Bankr. D. Del. Sept. 16, 2019) ....................37, 41

In re Pitt Penn Holding Co.,
   484 B.R. 25 (Bankr. D. Del. 2012) .....................................................................38

Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.,
   42 F. Supp. 2d 423 (D. Del. 1999)......................................................................47

Rochez Bros., Inc. v. Rhoades,
   527 F.2d 880 (3d Cir. 1975)...............................................................................30

In re Rockefeller Center Props., Inc. Sec. Litig.,
   311 F.3d 198 (3d Cir. 2002)...........................................................................31, 33

Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.,
   34 A.3d 1074 (Del. 2011) ..................................................................................36

Sands v. McCormick,
   502 F.3d 263 (3d Cir. 2007)...............................................................................17

Schwartz v. Perseon Corp.,
   175 F. Supp. 3d 390, 399 (D. Del. 2016) .............................................................32

In re SRC Liquidation LLC,
   581 B.R. 78 (D. Del. 2017).................................................................................17

In re Stillwater Asset Backed Offshore Fund Ltd.,
   559 B.R. 563 (Bankr. S.D.N.Y. 2016) ..................................................................20

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007)..........................................................................................31

Travelers Indem Co. v. Cephalon, Inc.,
   620 F. App'x 82 (3d Cir. 2015) ......................................................................18, 38

UD Dissolution Liquidating Trust et al v. John Does I-X et al.
   18-50951-MFW (Bankr. D. Utah) ..........................................................................8

UD Dissolution Trust v. Sphere 3D Corporation, et al.,
   18-cv-01920-BLF (N.D. Cal.) ............................................................................8, 38

Vichi v. Koninklijke Philips Elecs. N.V.,
   62 A.3d 26 (Del. Ch. 2012)................................................................................47

Webster v. Brosman,
    No. N19C-04-179, 2019 WL 5579489 (Del. Super. Ct. Oct. 29, 2019) .................................. 48

In re Westinghouse Sec. Litig.,
    90 F.3d 696 (3d Cir. 1996) ............................................................................................ 18, 38

In re Winstar Commc'ns, Inc.,
    554 F.3d 382 (3d Cir. 2009) .................................................................................................. 42

Winter Family Trust v. Queen,
    503 F.3d 319 (3d Cir. 2007) .................................................................................................. 33

Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC,
    No. CIV.A. 8652-VCN, 2014 WL 2964076 (Del. Ch. Ct. June 30, 2014) ............................ 36

**Statutes**

10 Del. C. § 8106 ..................................................................................................... 44, 46, 48

11 U.S.C. § 103 ................................................................................................................... 19

11 U.S.C. § 301 ................................................................................................................... 20

11 U.S.C. § 506 ................................................................................................................... 20

11 U.S.C. §§ 544 ............................................................................................................ 19, 20

11 U.S.C. § 546 ................................................................................................................... 20

11 U.S.C. § 548 ............................................................................................................ 20, 25

11 U.S.C. § 550 ............................................................................................................ 19, 21

15 U.S.C § 78j(b) ......................................................................................................... 16, 28

15 U.S.C. § 78u–4 ............................................................................................................... 31

28 U.S.C. § 1658 ........................................................................................................... 28, 29

Cal. Civ. Code § 3439, *et seq.* ........................................................................................ 22

Canadian Securities Act ...................................................................................................... 11

Ontario Business Corporations Act ..................................................................................... 37

Ontario Canada Limitations Act 2002 § 4 ........................................................................... 42

Private Securities Litigation Reform Act ............................................................. 31, 32, 33, 34

Securities Exchange Act of 1934 ........................................................................ *passim*

Uniform Commercial Code .................................................................................. *passim*

**Other Authorities**

12B Fletcher, Cyclopedia of Corporations, § 5911 (2017) ..........................................36

17 C.F.R. § 240.10b-5 ........................................................................................ *passim*

Federal Rule of Bankruptcy Procedure 7009 ..............................................................18

Federal Rule of Bankruptcy Procedure 7012 ................................................................1

Federal Rule of Civil Procedure 9 ..................................................................... *passim*

Federal Rule of Civil Procedure 12 ................................................................... *passim*

Federal Rule of Civil Procedure 65 ............................................................................49

IMPAC 6570287v.1

In accordance with Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure 7012, Cyrus Capital Partners, L.P., FBC Holdings, S.a.r.l., Crescent 1, L.P., CRS Master Fund, L.P., Cyrus Opportunities Master Fund II, LTD., Cyrus Select Opportunities Master Fund, LTD., Cyrus Capital Partners GP, L.L.C., Cyrus Capital Advisors, L.L.C. (collectively, the "Cyrus Entities"), and Stephen C. Freidheim (together with the Cyrus Entities, the "Cyrus Defendants") respectfully move to dismiss with prejudice the claims asserted against them in the Amended Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint is a slipshod and disjointed collection of allegations against the Cyrus Defendants that fails to consider the applicable statutes of limitation and to grasp basic elements necessary for liability under the Bankruptcy Code and other applicable law. This Court should dismiss the Amended Complaint's allegations against the Cyrus Defendants in their entirety.

The Amended Complaint is the perfect example of why Rule 12(b)(6) exists.  The Amended Complaint alleges ten claims against the Cyrus Defendants, each of which fails because of fundamental legal and pleading deficiencies.  Specifically, the Amended Complaint:

- brings claims under the Bankruptcy Code to avoid certain alleged fraudulent transfers made by Defendant Sphere 3D Corporation ("Sphere"), which has never been in bankruptcy (Seventh and Eighth Claims);

- includes the perplexing allegation that liens granted by Sphere in exchange for a substantial loan constitute a constructively fraudulent transfer because the amount of the loan does not equal Sphere's total enterprise value (Eighth Claim);

- asserts time-barred claims that the Cyrus Defendants are liable for aiding and abetting violations of federal securities laws, even though the U.S. Supreme Court has expressly held that there is no aiding and abetting liability under federal securities laws (Twenty-Third Claim);

- bases multiple claims on the sole allegation that an individual affiliated with the Cyrus Defendants (Defendant Bordessa) sat on Sphere's board of directors, even though the Amended Complaint expressly alleges that Mr. Bordessa did not join Sphere's board of directors until months after the alleged claims arose (Twenty-First and Twenty-Third Claims);

- fails to meet the basic threshold requirements for bringing derivative breach of fiduciary duty claims under applicable Canadian law (where Sphere is incorporated) (Tenth Claim);

- contains improper group pleading that *all* of the Cyrus Defendants did *everything* wrong without any further detail or explanation (claims asserted against all of the Cyrus Defendants);

- seeks to equitably subordinate debt under the Bankruptcy Code issued by a non-debtor and that the Cyrus Defendants no longer hold (Eleventh Claim);

- seeks to equitably subordinate debt under the Uniform Commercial Code (UCC) even though the Amended Complaint contains no claims arising under the UCC (Eleventh Claim);

- asserts a time-barred claim for tortious interference with economic relations, even though no such claim exists under Delaware law (Twentieth Claim);

- asserts claims for tortious interference with contractual relations, unjust enrichment and constructive conversion, even though the applicable statute of limitations has long since expired for each claim (Twenty-First, Twenty-Second and Twenty-Sixth Claims);

- contains only two references to individual defendant Stephen Freidheim in the section of the Amended Complaint that describes the parties to the action, which section contains only basic biographical information and fails to allege *any* facts regarding *anything* he did wrong; and

- purports to seek emergency temporary and preliminary injunctive relief in connection with claims that arose more than five years ago, without any accompanying motion or other explanation (Twenty-Seventh Claim).

Plaintiff is not writing on a blank slate. Plaintiff filed the original complaint in this case more than four years ago. That original complaint did not allege any claims against the Cyrus Defendants. Yet, in the Amended Complaint, Plaintiff now claims that the Cyrus Defendants are liable for many of the same claims alleged in the original complaint, despite not alleging any new substantive facts against the Cyrus Defendants. The redline submitted by Plaintiff in

2

connection with its Amended Complaint tells the story.  The Amended Complaint adds the Cyrus Defendants as parties to the litany of claims brought against Sphere and the Director Defendants in the original complaint without explaining why they are being added.  Plaintiff also fails to explain why it is adding the Cyrus Defendants to these claims now—four years after V3 Systems, Inc.'s ("V3") bankruptcy effectively concluded and more than four years after it filed its original complaint in this action.

 None of Plaintiff's claims are viable.

 **First**, at least half of Plaintiff's claims against the Cyrus Defendants are time-barred. Specifically, Plaintiff alleges claims for violations of federal securities laws, tortious interference with economic relations, tortious interference with contractual relations, unjust enrichment, and constructive conversion.  The federal securities claims must be brought no later than five years after the alleged violation, and the violation alleged in the Amended Complaint occurred no later than March 21, 2014.  The securities claims against the Cyrus Defendants were first filed in this action in October 2019, more than five years later.  Each of the other claims referenced above (to the extent they exist; no claim called "tortious interference with economic relations" exists in Delaware) has a statute of limitations of three years from the date of the alleged tortious act.  The Amended Complaint alleges that the Cyrus Defendants committed each of these torts in 2014, well more than three years before it filed any claims against the Cyrus Defendants.

 **Second**, for the few claims that are not time-barred, Plaintiff's allegations contain fundamental legal errors.  For example, Plaintiff alleges that the Cyrus Defendants are liable for aiding and abetting violations of federal securities laws, even though the U.S. Supreme Court has held that civil aiding and abetting liability does not exist under federal securities laws.  Plaintiff also purports to bring a breach of fiduciary duty claim against the Director Defendants (and an

accompanying aiding and abetting breach of fiduciary duty claim against the Cyrus Defendants). But Canadian law (which applies here because Sphere is incorporated in Canada), much like Delaware law, requires a plaintiff bringing a derivative action to satisfy certain threshold requirements, such as providing notice to Sphere's directors and obtaining approval from the applicable Canadian court.  Plaintiff does not allege that it even attempted to meet these requirements.  Courts in the United States have held that a derivative plaintiff purporting to file a lawsuit on behalf of a Canadian entity is not absolved from its obligations under Canadian law simply because it files a lawsuit in the United States.

Plaintiff also makes fundamental legal errors in its claims arising under the Bankruptcy Code.  Among other things, Plaintiff improperly invokes the Bankruptcy Code to avoid alleged actual and constructive fraudulent transfers (i) by an entity that has never been in bankruptcy and (ii) for liens that no longer exist.  And Plaintiff's constructive fraudulent transfer theory has no rational basis whatsoever: that a creditor may only receive a security interest in property if the loan provided for that security interest equals at least the total enterprise value of the company. No court in Delaware or elsewhere has ever endorsed Plaintiff's bewildering and novel theory of "reasonably equivalent value."  Plaintiff also seeks to equitably subordinate debt issued by a non-debtor that no longer exists in connection with a bankruptcy that effectively concluded four years ago.

**Third**, Plaintiff has failed to plead facts sufficient to support a claim that any of the loans made by Cyrus-related entities to Sphere were constructively fraudulent.  In addition to the fundamental legal errors explained above, Plaintiff fails to plead that at the time of each relevant loan, Sphere was insolvent, borrowed funds that it believed, or should have believed, it could not repay, or that Sphere's remaining assets were unreasonably small in relation to the relevant debt

4

it incurred.  By failing to plead facts supporting those basic elements of a constructive fraudulent

transfer claim, Plaintiff has failed to state a claim for which this Court can grant relief.

**Fourth**, the Amended Complaint contains fundamentally inconsistent factual allegations

that form the entire basis of Plaintiff's claims for violations of federal securities laws and

interference with contractual relations.  Specifically, the Amended Complaint alleges that the

Cyrus Defendants violated federal securities laws "through its employee on Sphere's Board"

(Mr. Bordessa) in connection with a stock sale to Plaintiff's predecessor in May 2014.  Putting

aside the reality that the Cyrus Defendants cannot be liable for securities fraud simply because an

individual affiliated with them sat on a board of directors, the Amended Complaint alleges that

Defendant Bordessa did not join Sphere's board of directors until December 2014, at least eight

months *after* the alleged stock sale.  The same is true for Plaintiff's claim for interference with

contractual relations.  Plaintiff alleges that all defendants (except for one) interfered with its

contractual relationship with its broker and stock transfer agent in advance of V3's efforts to lift

the restrictive legend on certain Sphere shares issued to V3.  The legend was ultimately lifted in

October 2014.  As mentioned above, however, Mr. Bordessa did not join Sphere's board of

directors until December 2014, two months *after* the latest possible alleged interference

occurred.

**Fifth**, Plaintiff fails to satisfy the heightened pleading standard for its actual fraudulent

transfer and aiding and abetting breach of fiduciary duty claims.  Federal Rule of Civil Procedure

9(b) requires Plaintiff to plead with particularity its claims for actual fraudulent transfer and

aiding and abetting because such claims are based on fraud.  Plaintiff has not even come close to

satisfying Rule 9(b)'s heightened pleading requirement.  In addition to engaging in

impermissible group pleading, Plaintiff fails to allege, among other things, why each loan made

by the Cyrus-related entities constitutes a fraudulent transfer.  Plaintiff's aiding and abetting claim—brought against all Cyrus Defendants—fails to allege how each of the Cyrus Defendants somehow aided and abetted any breach of fiduciary duty.  Perhaps Plaintiff's most egregious omission is any facts whatsoever explaining why Mr. Freidheim should be liable for any alleged fraudulent transfer or how he purportedly aided and abetted any breach of fiduciary duty.

In summary, the Amended Complaint's allegations against the Cyrus Defendants contain egregious and baffling legal errors that require dismissal of all claims asserted against the Cyrus Defendants.  Plaintiff has failed to articulate any coherent claims against the Cyrus Defendants. Federal Rules of Civil Procedure 12(b)(6) and Rule 9(b) are designed precisely for situations like these, where a Plaintiff brings unsupported claims and loose allegations of fraud.  This Court should dismiss in their entirety and with prejudice all of Plaintiff's claims against the Cyrus Defendants.

## STATEMENT OF FACTS

The causes of action asserted against the Cyrus Defendants concern three separate agreements and their underlying transactions: (1) the Asset Purchase Agreement ("APA"), pursuant to which defendant Sphere 3D Corporation ("Sphere") purchased substantially all of V3 Systems, Inc.'s ("V3") assets in 2014 (the "V3 Asset Purchase"); (2) the Share Purchase Agreement (the "SPA"), pursuant to which Sphere sold defendant Overland Storage, Inc. ("Overland") to defendant Silicon Valley Technology Partners, LLC ("SVTP") in 2019; and (3) three separate transfers of debt that the Cyrus Defendants lent to Sphere in 2014 and 2016 that were consolidated into one debenture (the "December 2014 Debenture").

## I.    THE PARTIES AND THE PROCEDURAL BACKGROUND

Sphere is organized under the laws of Ontario, Canada.  Am. Compl. ¶ 9.  Sphere has been traded on the NASDAQ stock exchange since July 2014.  Am. Compl. ¶ 9.  Defendants

Peter Tassiopoulos, Jason D. Meretsky, Eric L. Kelly, Peter Ashkin, Daniel J. Bordessa, Glenn M. Bowman, Mario Biasini, and Vivekanand Mahadevan are all former or current members of Sphere's board of directors (the "Director Defendants").  Am. Compl. ¶¶ 12-20.

Defendant V3 Systems Holdings, Inc. ("Holdings"), is a wholly-owned subsidiary of Sphere that Sphere formed to execute the APA and purchase V3's assets.  Am. Compl. ¶ 10. Defendant Overland is a California corporation that is, as a result of the SPA, a wholly-owned subsidiary of defendant SVTP.  Am. Compl. ¶ 21.  Prior to the SPA, Overland was a wholly-owned subsidiary of Sphere.  Am. Compl. ¶ 21.  Defendant Eric L. Kelly ("Kelly") was formerly a Chief Executive Officer and a director of both Sphere and Overland.  Am. Compl. ¶ 15.

The Cyrus Entities comprise Cyrus Capital Partners, L.P. ("CCP") and certain of its affiliated private investment funds that have held investments in Overland and Sphere.  Am. Compl. ¶ 18.  Defendant Stephen C. Freidheim is the managing member and Chief Investment Officer of certain of the Cyrus Entities.  Am. Compl. ¶ 29.  Defendant Daniel J. Bordessa ("Bordessa"), an alleged affiliate of "Cyrus," served on Sphere's board of directors from December 2014 to December 2016 as an alleged designee of "Cyrus."  Am. Compl. ¶¶ 18, 91, 145.  The Amended Complaint does not specify for which Cyrus Entity Bordessa works or which Cyrus Entity had a designee on Sphere's board of directors.

Plaintiff UD Dissolution Liquidating Trust ("UD Dissolution Trust") is the successor in interest to UD Dissolution Corp., formerly known as V3.  Am. Compl. ¶ 1.  V3 filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on November 26, 2014, in the United States Bankruptcy Court for the District of Utah (the "Utah Bankruptcy Court"). Am. Compl. ¶ 3.  The Bankruptcy Court confirmed V3's plan of liquidation (the "Liquidation

7

Plan") and it became effective on July 27, 2015.  Am. Compl. ¶ 4-6.  The UD Dissolution Trust was created as part of the Liquidation Plan.  Am. Compl. ¶ 7.

Plaintiff filed the original complaint (the "Complaint") in this action on October 6, 2015, in the Utah Bankruptcy Court against Sphere and the Director Defendants for claims based upon, among other things, the APA.  See UD Dissolution Liquidating Trust et al v. John Does I-X et al., 18-50951-MFW (Bankr. D. Utah), Dkt. No. 1; see also Am. Compl. ¶ 155.  None of the Cyrus Defendants were named in the Complaint.  The Utah Bankruptcy Court transferred the action to this Court.  See Plaintiff's Motion for Leave to Amend Complaint (Dkt. No. 15), at 2.

In March 2018, while this case was pending, Plaintiff filed a complaint in the Northern District of California against the Cyrus Defendants, Sphere, Overland, SVTP, and Kelly, asserting claims relating to the SPA and December 2014 Debenture.  See UD Dissolution Trust v. Sphere 3D Corporation, et al., 18-cv-01920-BLF (N.D. Cal.) (the "California Action").  The Cyrus Defendants and Sphere, Overland, SVTP, and Kelly filed motions to dismiss the California Action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See California Action, Dkt. Nos. 43, 45.  After the motions were fully briefed in the California Action, Plaintiff filed a motion to amend the complaint in this action seeking to, among other things, name the Cyrus Defendants as defendants in this action.  See Plaintiff's Motion for Leave to Amend Complaint, Dkt. No. 15.  The Amended Complaint asserts the same claims regarding the SPA and December 2014 Debenture that Plaintiff asserted in the California Action, as well as new claims against the Cyrus Defendants.  The new claims, which relate to the APA and other alleged conduct that occurred in 2014, had been previously asserted against Sphere and the Director Defendants in the Complaint, but had never been asserted against the Cyrus Defendants.

8

## II.    THE RELEVANT TRANSACTIONS

The Amended Complaint contains ambiguous and scattered allegations about numerous transactions, lawsuits, and agreements dating back to 2006.  Plaintiff attempts to link together these various transactions and events in a conclusory fashion, without explaining how they are related, or more importantly, relevant to the three transactions for which plaintiff brings claims against the Cyrus Defendants.  To make matters more confusing, the Amended Complaint is often unclear, and at times contradictory, as to which of the Cyrus Defendants were allegedly involved in the transactions.  For example, the Amended Complaint occasionally alleges that the "Cyrus Group," defined as all of the Cyrus Defendants, orchestrated the transactions, see, e.g., Am. Compl. ¶¶ 43, 117.  At other times, the Amended Complaint alleges that only certain "Cyrus Group Entities" or "Cyrus Affiliates," which terms the Amended Complaint does not define, held debt or equity in the relevant companies, see Am. Compl. ¶¶ 53, 144.  In yet other instances, the Amended Complaint alleges generally that "Cyrus" orchestrated the transactions without ever explaining to what the term "Cyrus" refers, see Am. Compl. ¶¶ 50, 52, 53, 91, 161.  Even worse, the Amended Complaint often refers to terms, entities, and events, without ever explaining to what they refer. [1]  At other times, as explained in more detail below, the Amended Complaint is unclear to the point of being unintelligible.

Below is the Cyrus Defendants' attempt to state a coherent summary of the facts alleged in the Amended Complaint.

---

[1] For example, Plaintiff's ninth claim for relief alleges that V3 was at a "disadvantage in negotiations with . . . Volker Wiora AG," but never explains what Volker Wiora is or its relationship with V3.  Am. Compl. ¶ 254. Similarly, the Amended Complaint also alleges that Sphere "made demands by and for and on behalf of [Peter] Bookman for settlement of claims," Am. Compl. ¶ 127, but the Amended Complaint never even alleges that Bookman asserted claims against V3 or the basis for any such claims.

9

### A.       Initial Transactions between Sphere, Overland and the Cyrus Defendants

In February 2013, Overland entered into a Note Purchase Agreement with "Cyrus"[2]—to which Cyrus entity the Amended Complaint does not specify—pursuant to which the Cyrus Defendants acquired $12 million of convertible promissory notes in Overland.  Am. Compl. ¶ 50. Plaintiff claims that Cyrus's purchase of $12 million in convertible promissory notes was "part of an orchestrated plan" for the Cyrus Defendants to "force [Overland] to enter into a transaction (i.e. the Merger)." Am. Compl. ¶ 52.  Plaintiff never explains to what the "Merger" refers.  On the same day, certain "Cyrus Group entities" entered into another note purchase agreement with Overland to acquire $13.25 million in convertible promissory notes in Overland.  Am. Compl. ¶ 53.  In connection with one of the February 12, 2013 note purchase agreements—the Amended Complaint fails to specify which one or explain how—Overland and Sphere entered into an agreement pursuant to which Overland became the exclusive distributor of Sphere products. Am. Compl. ¶ 54.

In November 2013, the Cyrus Defendants allegedly "exercised [their] control of Overland" and caused Overland to enter into an agreement with Tandberg Data Holdings S.A.R.L. ("Tandberg") and FBC Holdings, S.a.r.l. (one of the Cyrus Entities), pursuant to which Overland would acquire all of Tandberg's stock ("the Tandberg Acquisition").  The Amended Complaint never explains what the Cyrus Defendants did to facilitate the Tandberg Acquisition or how the Tandberg Acquisition relates to the transactions for which Plaintiff brings claims against the Cyrus Defendants in this action.

---

[2]  The Cyrus Defendants assume that allegations against "Cyrus" are allegations against all of the Cyrus Defendants.

IMPAC 6570287v.1

### B.    The V3 Asset Purchase and the March 2014 Debenture

In February 2014, Sphere, V3, and Holdings entered into the APA, pursuant to which Sphere agreed to purchase all of V3's assets for $14.7 million (the "V3 Asset Purchase").  Am. Compl. ¶ 65.[3]  The purchase price of $14.7 million was to be paid in a combination of cash and shares of common stock of Sphere (referred to by Plaintiff as the "Initial Shares").  Am. Compl. ¶ 86.  Specifically, V3 was to receive: (1) $4 million in cash; (2) $5.7 million in Initial Shares; and (3) an "Earn-Out" of up to $5 million, payable in stock or cash, based on revenues earned by Sphere originating from V3's businesses.  Am. Compl. ¶¶ 74, 86.  The APA provided that the Initial Shares would be legended and subject to a resale restriction of four months and one day from the date of issuance (the day on which the transaction closed), pursuant to the Canadian Securities Act and an applicable exemption under the United States securities laws.  Am. Compl. ¶ 87.  According to Plaintiff, all parties to the APA understood that the restrictive legend would be removed on July 22, 2014.  Am. Compl. ¶ 105.

In March 2014, the Cyrus Defendants allegedly "leveraged [their] control of Tandberg and Overland to exert control over Sphere and to facilitate the V3 Asset Purchase by agreeing to lend $5 million to Sphere in convertible loans" for, among other things, the V3 Asset Purchase.  Am. Compl. ¶ 66.  The $5 million in convertible loans that the Cyrus Defendants lent to Sphere is referred to by Plaintiff as the "March 2014 Debenture."  The Amended Complaint fails to explain how the Cyrus Defendants "extert[ed] control over Sphere" via the March 2014 Debenture.

The V3 Asset Purchase closed on March 21, 2014.  Am. Compl. ¶ 65.   After the V3 Asset

---

[3] Confusingly, the Amended Complaint refers to Sphere's purchase of all of V3's assets as both the "V3 Asset Purchase," see, e.g., Am. Compl. ¶¶ 58, 66, and "the Transaction," see, e.g., Am. Compl. ¶¶ 65, 78.  The Cyrus Defendants assume both terms refer to the same transaction.

IMPAC 6570287v.1

Purchase was completed, Daniel Bordessa was appointed to Overland's board of directors pursuant to the "Board Appointment Agreement." Am. Compl. ¶ 116. The Amended Complaint never explains what the Board Appointment Agreement is, to what it is related, or who the parties to the agreement are.

### C.  Sphere's Alleged Delay in Consenting to Remove the Legend on V3's Initial Shares and the October 10, 2014 Agreement

On July 22, 2014, after the four-month and one-day restriction period on V3's Initial Shares allegedly expired, "a separately certified 718,000 shares of stock was submitted to Sphere's transfer agent for removal of the restrictive legend." Am. Compl. ¶ 118. The transfer agent requested Sphere's consent for the removal of the restriction. Am. Compl. ¶¶ 114, 118. Sphere allegedly objected to the lifting of the legend and "falsely represented to V3 that Sphere's outside counsel" had advised Sphere that V3's Initial Shares were subject to a six-month holding period required by U.S. law. Am. Compl. ¶¶ 119, 120.

Plaintiff alleges that because of "false[] and improper objections and other actions taken by the Cyrus Group (through its employee on Sphere's Board)," V3 was unable to sell its Initial Shares for many months after the restrictive legend should have allegedly been removed. Am. Compl. ¶ 128. The Amended Complaint fails to allege what actions the Cyrus Defendants' affiliate on Sphere's board of directors took in connection with the restrictive legend. More fundamentally, as Plaintiff admits elsewhere in the Amended Complaint, Daniel Bordessa, the only affiliate of the Cyrus Defendants alleged to have served on Sphere's board of directors, was not appointed to Sphere's board of directors until December 2014—six months after V3 requested that Sphere remove the legend. See Am. Compl. ¶ 145.

On October 10, 2014, Sphere and V3 entered into an agreement (the "October 10, 2014 Agreement") that provided for, among other things, a "leak out restriction on the sale of V3's

12

Initial Shares, for direct cash funding by Sphere of certain amounts due to [V3's] creditors and professionals on an agreed schedule." Am. Compl. ¶ 138. V3's sale of its Initial Shares began at the end of October 2014, two months before Mr. Bordessa joined Sphere's board of directors. Am. Compl. ¶ 141.

### D.     Sphere's Acquisition of Overland and the December 2014 Debenture

In May 2014, Sphere announced that it was going to acquire Overland (the "Overland Acquisition"). Am. Compl. ¶ 117. According to Plaintiff, the Cyrus Defendants "leverage[ed] [their] control over both Overland and Sphere" in making that announcement. Am. Compl. ¶ 117. The Amended Complaint fails to explain what alleged control the Cyrus Defendants had over Sphere or Overland at that time or what the Cyrus Defendants allegedly did to leverage that control.

In December 2014, Sphere acquired Overland. Am. Compl. ¶¶ 144, 167. The Amended Complaint alleges that to "facilitate" the Overland Acquisition, the Cyrus Defendants consolidated the March 2014 Debenture, and "all" other outstanding debt that Sphere and its subsidiaries owed to the Cyrus Defendants into a new $19.5 million debenture (the "December 2014 Debenture") between Sphere and FBC Holdings, S.a.r.l., one of the Cyrus Entities. Am. Compl. ¶ 144. Daniel Bordessa was appointed to Sphere's board of directors after the Overland Acquisition closed. Am. Compl. ¶ 145.

### E.     The April 6, 2016 Credit Agreement

On April 6, 2016, the December 2014 Debenture was amended by a credit agreement (the "April 6, 2016 Credit Agreement") between Sphere and the Cyrus Defendants pursuant to which the Cyrus Defendants allegedly provided an additional $5 million in a convertible loan to Sphere. Am. Compl. ¶ 146. This loan was consolidated into the December 2014 Debenture, bringing the

13

new total outstanding principal to $24.5 million.  Am. Compl. ¶ 146.  At some point, the Credit

Agreement was amended and assigned to FBC, one of the Cyrus Entities.  Am. Compl. ¶ 146.

### F.    Sphere's Sale of Overland to SVTP

In January 2018, defendant Kelly formed SVTP.  Am. Compl. ¶ 163.  The Amended

Complaint alleges that Kelly, "apparently at the direction or with the knowledge and tacit

approval" of the Cyrus Defendants, formed SVTP for the purpose of effecting a sale of Overland

by Sphere.  Am. Compl. ¶ 163.  The Amended Complaint does not allege how or when the Cyrus

Defendants allegedly learned of Kelly's intentions for SVTP or what the Cyrus Defendants did to

"direct[]" Kelly or to give their "tacit approval."

In February 2018, Sphere and SVTP entered into the SPA, pursuant to which Sphere

agreed to sell Overland to SVTP for $45 million.  Am. Compl. ¶ 165.  The $45 million purchase

price was determined, in part, by a fairness opinion issued by Roth Capital Partners, LLC

("Roth") to Overland.  Am. Compl. ¶ 166.  Plaintiff claims that Roth's fairness opinion

undervalued Overland because it was done "at the behest and for the benefit of Kelly and

Cyrus."  Am. Compl. ¶ 167.  The Amended Complaint alleges that Roth issued an inaccurate

fairness opinion to benefit Kelly and the Cyrus Defendants because of the "long-standing history

of business dealings between . . . Kelly, Cyrus, and Roth."  Am. Compl. ¶ 167.  The Amended

Complaint does not state what the Cyrus Defendants did to command Roth to undervalue

Overland or what alleged benefit the Cyrus Defendants received.

Sphere's board of directors approved the SPA, Am. Compl. ¶ 171, and in April 2018,

Sphere filed a notice to its shareholders, announcing that a special meeting was going to be held

in May 2018 for the shareholders to vote on the SPA.  Am. Compl. ¶ 170.  The Amended

Complaint fails to state whether the shareholders approved the SPA, but they apparently did

14

because in November 2018 the SPA closed.  Am. Compl. ¶ 176.  Pursuant to the completion of

the SPA: (1) Sphere sold its outstanding shares of Overland to SVTP in exchange for the

issuance to Sphere of shares of preferred stock of SVTP; (2) FBC converted $6.5 million of the

$24.5 million outstanding under the December 2014 Debenture into non-voting preferred shares

of Sphere; and (3) FBC released Sphere and all of its remaining subsidiaries as obligors and

guarantors on the remaining $18.9 million outstanding under the December 2014 Debenture.

Am. Compl. ¶ 177.  Accordingly, after the SPA closed, none of the Cyrus Defendants held any

outstanding debt in Sphere under the December 2014 Debenture.

## III.    ALLEGATIONS REGARDING PETER BOOKMAN

Plaintiff's allegations regarding Peter Bookman are contradictory and virtually

incomprehensible.  Below is the Cyrus Defendants' attempt to piece together Plaintiff's

allegations.

Plaintiff alleges that Peter Bookman executed a separation agreement with V3 in

February 2013 pursuant to which Bookman agreed to a 24-month non-compete agreement.  Am.

Compl. ¶ 329.   The Amended Complaint never explains Bookman's relationship with V3 or why

a non-compete agreement was entered.  Despite negotiating for an agreement that Bookman

would not compete with V3, Plaintiff then alleges that during the negotiations over the V3 Asset

Purchase, V3 negotiated on Bookman's behalf for Sphere to hire Bookman.  Am. Compl. ¶ 330.

An employment agreement between Sphere and Bookman was reached and that agreement was

implemented under Section 8.10 of the APA.  Plaintiff claims that but for V3's consent and

advocacy for Sphere to hire him, Bookman's non-compete agreement with V3 would have

prohibited him from working for Sphere.  Am. Compl. ¶ 330.

Plaintiff also alleges that Sphere, the Director Defendants, and the Cyrus Defendants

"made demands by and for and on behalf of Bookman for settlement of claims . . . premised

15

upon false and pretextual claims of interference with" Bookman's employment agreement with

Sphere under the APA—the very employment agreement V3 claims it arranged for Bookman.

Am. Compl. ¶ 332, 333.  The Cyrus Defendants are unable to comprehend, and therefore

summarize, whatever claims Plaintiff alleges against the Cyrus Defendants in connection with

Mr. Bookman.

Finally, the Amended Complaint contains vague and confusing allegations regarding a

lawsuit initiated by Michael E. Anderer against V3 and Bookman alleging that they

misappropriated intellectual property from a company owned by Anderer and Bookman the

("Anderer Lawsuit").  Plaintiff alleges that Anderer used the Anderer Lawsuit to seek a

temporary restraining order in September 2014 to prevent V3 from removing the restrictive

legend on the Initial Shares and that the Cyrus Defendants conspired with Anderer in that pursuit.

The Amended Complaint does not clearly explain the basis for the Anderer Lawsuit, Anderer's

connection to V3, how the Anderer Lawsuit relates in any way to Sphere or the Initial Shares, or

what the Cyrus Defendants allegedly did to conspire with Anderer.

## ARGUMENT

Plaintiff asserts ten claims against the Cyrus Defendants: (1) actual fraudulent transfer

under the Bankruptcy Code and state law (seventh claim); (2) constructive fraudulent transfer

under the Bankruptcy Code and state law (eighth claim); (3) aiding and abetting breach of

fiduciary duty (tenth claim); (4) equitable subordination under the Bankruptcy Code and the

Uniform Commercial Code (eleventh claim); (5) interference with existing economic relations

(twentieth claim); (6) interference with existing contractual relations (twenty-first claim); (7)

constructive conversion of shares (twenty-second claim); (8) fraud in the offer and sale of

securities under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C § 78j(b), and

Securities Exchange Commission rule 10b-5, 17 C.F.R. § 240.10b-5 (twenty-third claim); (9)

16

unjust enrichment (twenty-sixth claim); and (10) temporary, preliminary and permanent injunctive relief (twenty-seventh claim).[4]

## I.    LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To state a plausible claim, a plaintiff must plead enough factual content to raise the "right to relief above the speculative level," and "reflect 'more than a sheer possibility that a defendant has acted unlawfully.'"  Oliver v. Roquet, 858 F.3d 180, 192 (3d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Facts that are "merely consistent with a defendant's liability" fail to satisfy the plausibility standard. Ashcroft, 556 U.S. at 678.

In general, factual allegations must be accepted as true on a Rule 12(b)(6) motion.  Id. However, a court should not consider bald assertions, legal or unsupported conclusions, or unwarranted inferences.  See Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) ("[A] court need not credit a plaintiff's bald assertions or legal conclusions when deciding a motion to dismiss."); In re SRC Liquidation LLC, 581 B.R. 78, 85 (D. Del. 2017) ("The Court is not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false.").

Courts in the Third Circuit conduct a two-part analysis on a motion to dismiss.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, the court separates the factual and legal elements of a claim, "accepting the facts and disregarding the legal

---

[4] The Amended Complaint explains that Plaintiff's claims are asserted "against all Defendants (unless otherwise specified)." Am. Compl. at pg. 40.  In this motion to dismiss, the Cyrus Defendants have therefore relied on the headings of each claim specifying against which defendants the claim is asserted to determine which claims Plaintiff has brought against the Cyrus Defendants.

conclusions." In re AgFeed USA, LLC, No. 13-11761, 2015 WL 9133627, at *4 (Bankr. D. Del. Dec. 15, 2015). Second, courts "determine whether the remaining well-pled facts sufficiently show that the plaintiff has a plausible claim for relief." Id. "Conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to prevent a motion to dismiss. In re OSC 1 Liquidating Corp., 529 B.R. 825, 830 n.17 (Bankr. D. Del. 2015) (quoting General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001); see also Oliver, 858 F.3d at 192 ("A plaintiff's bare assertions amounting to nothing more than a 'formulaic recitation' of the elements of a [claim] will not suffice.").

When a plaintiff's complaint involves claims of fraud, the fraud allegations must also meet the heightened pleading standard under Federal Rule of Civil procedure 9(b), made applicable herein by Federal Rule of Bankruptcy Procedure 7009. The pleading requirements of Rule 9(b) apply to all claims that "sound in fraud" even if fraud is not an element of the claim. See Travelers Indem Co. v. Cephalon, Inc., 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("Even when 'fraud is not a necessary element of a claim, claims that do sound in fraud must be pled with particularity.'") (quoting In re Westinghouse Sec. Litig., 90 F.3d 696, 717 (3d Cir. 1996)). Heightened pleading under Rule 9(b) requires a plaintiff to state with particularity the circumstances surrounding the fraud. Easton Technical Prods., Inc. v. FeraDyne Outdoors, LLC, No. 18-1222, 2019 WL 1513463, at *2 (D. Del. April 8, 2019) (To satisfy the "requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how . . . "). The Third Circuit has explained that the purpose of heightened pleading under Rule 9(b) is to give defendants "'notice of the precise misconduct with which they are charged" and to "safeguard defendants against spurious charges of immoral and fraudulent behavior.'"

MarkDutchCo I B.V. v. Zeta Interactive Corp., 411 F. Supp. 3d 316, 331 (D. Del. 2019) (quoting

Lum v. Bank of Am., 361 F.3d 217. 223-24 (3d Cir. 2004)).

## II.    PLAINTIFF HAS FAILED TO STATE A VALID CLAIM FOR ACTUAL OR CONSTRUCTIVE FRAUDULENT TRANSFER TO AVOID CERTAIN PROPERTY TRANSFERS BY SPHERE (SEVENTH AND EIGHTH CLAIMS)

In its seventh and eighth claims for relief, Plaintiff seeks avoidance of certain transfers of

property as actual and constructive fraudulent transfers under the Bankruptcy Code[5] and

applicable state law.  Specifically, Plaintiff seeks to avoid: (1) the liens granted in connection

with the December 2014 Debenture; and (2) the property transfers made pursuant to the SPA.

See Am. Compl. ¶¶ 180, 220-222.  Plaintiff's avoidance claims fail for the following reasons.

### A.    Plaintiff Cannot Assert Fraudulent Transfer Claims Under the Bankruptcy Code to Avoid the Liens Granted in Connection with the December 2014 Debenture and the Property Transferred Pursuant to the SPA Because Sphere is Not in Bankruptcy

Plaintiff cannot assert fraudulent transfer claims under the Bankruptcy Code to avoid the

liens granted in connection with the December 2014 Debenture and the property transfers made

pursuant to the SPA, both of which are transfers allegedly made by Sphere, because Sphere is not

in and, in fact, has never has been in bankruptcy.  See 11 U.S.C.  § 103(a) ("[C]hapters 1, 3, and

5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title . . . . ").  Plaintiff therefore

cannot state a valid claim for fraudulent transfer under the Bankruptcy Code to avoid transfers of

Sphere.

Even if the Bankruptcy Code could be used to avoid transfers of a company that is not in

bankruptcy, Plaintiff's fraudulent transfer claims under the Bankruptcy Code fail for four

---

[5] Plaintiff seeks relief on its avoidance claims under 11 U.S.C. § 550(a).  See Am. Compl. ¶¶ 226, 240.  Section 550(a), however, provides for recovery only to the "extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a)."  Plaintiff does not allege the provision of the Bankruptcy Code under which it seeks to avoid certain property transfers by Sphere as actual and constructive fraudulent transfers, but, for purposes of this motion, the Cyrus Defendants assume that Plaintiff's claims are brought pursuant to 11 U.S.C. §§ 544 and 548.

additional independent reasons.  First, the remedy for a fraudulently transferred securities interest is to declare the security interest "void."  11 U.S.C. § 506(d).  Plaintiff cannot seek to avoid the liens Sphere allegedly granted to the Cyrus Defendants in connection with the December 2014 Debenture because, as the Amended Complaint alleges, Sphere and all of its remaining subsidiaries have been released as obligors and guarantors under the December 2014 Debenture.  See Am. Compl. ¶ 177.   Plaintiff therefore cannot seek to avoid a lien that does not exist.  See In re Stillwater Asset Backed Offshore Fund Ltd., 559 B.R. 563, 609 (Bankr. S.D.N.Y. 2016) (holding that the plaintiff's fraudulent conveyance claim regarding the defendant's loan secured by property failed where the lien "ultimately was extinguished" and "never resulted in a transfer of [] property" to the defendant).

Second, 11 U.S.C. §§  544(b)(1) and 548(a) expressly limit claims to those brought by the trustee of the debtor seeking to avoid a transfer of the debtor.   Plaintiff, as the liquidating trust of UD Dissolution, has no power to avoid transfers made by Sphere, such as the liens associated with the December 2014 Debenture or the sale of Overland pursuant to the SPA.

Third, Plaintiff's section 544 and 548 claims are time-barred.  A fraudulent transfer claim under section 544 or 548 of the Bankruptcy Code must be brought before the later of the following two events: (1) two years after the entry of order for relief (meaning the date on which the voluntary petition was filed, see 11 U.S.C. § 301(b)); or (2) one year after the appointment or election of the first trustee under sections 702, 1104, 1163, 1202, or 1302 of the Bankruptcy Code.  11 U.S.C. § 546(a)(1).  The trustees of the UD Dissolution Trust were neither appointed nor elected under the specific sections of the Bankruptcy Code referenced in section 546(a)(1), which provide for the appointment of a trustee in bankruptcy.  The UD Dissolution Trust is a liquidation trust, not a trustee in a bankruptcy.  Accordingly, the UD Dissolutions Trust's

IMPAC 6570287v.1

section 544 claims must have been brought within two years of November 26, 2014—the date on which V3's voluntary petition was filed.  See Am. Compl. ¶ 3. Plaintiff's fraudulent transfer claims asserted against the Cyrus Defendants in the Amended Complaint filed on October 22, 2019 are therefore untimely.

Fourth, as explained in Sphere and the Director Defendants' motion to dismiss, even if the Bankruptcy Code applies to Plaintiff's fraudulent transfer claims to avoid the property transfer made pursuant to the SPA, SVTP is the only defendant from which Plaintiff could recover.  Pursuant to 11 U.S.C. § 550(a), the trustee may recover from only "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  Plaintiff does not allege that any of the Cyrus Defendants received the transfer of Overland pursuant to the SPA, nor does it adequately allege that the transfer of Overland was made for the Cyrus Defendants' benefit.

In addition, the Amended Complaint fails to state claims for actual and constructive fraudulent transfer under the Bankruptcy Code for the same reasons it fails to state claims for actual and constructive fraudulent transfer under state law.  The arguments in Section II.B below thus apply equally to Plaintiff's fraudulent transfer claims under the Bankruptcy Code.

**B.      Plaintiff has Failed to State a Valid Claim to Avoid Certain Property Transfers by Sphere as Actual or Constructive Fraudulent Transfers Under Applicable State Law**

In its seventh and eighth claims, Plaintiff also seeks to avoid the liens granted in connection with December 2014 Debenture and the property transfers pursuant to the SPA by asserting claims against the Cyrus Defendants for actual and constructive fraudulent transfer under state law.  In claim eight, the Amended Complaint asserts that Plaintiff is bringing a constructive fraudulent transfer claim under California law.  Am. Compl. ¶ 229.  However, in

21

claim seven, Plaintiff fails to specify the state law pursuant to which it is asserting its actual

fraudulent transfer claim and alleges generally a claim under "applicable law." The Cyrus

Defendants assume that Plaintiff is pursuing both actual and fraudulent transfer claims under

California law.[6] Like Plaintiff's claims under the Bankruptcy Code, Plaintiff has failed to state a

fraudulent transfer claim under California law for which this Court can grant relief.

>   i.   *Plaintiff Fails to State an Actual Fraudulent Transfer Claim Under*
>        *California Law*

Under the UFTA, a claim for actual fraudulent transfer exists only where the debtor made

a transfer or incurred an obligation "[w]ith actual intent to hinder, delay, or defraud any creditor

of the debtor." Cal. Civ. Code § 3439.04(a)(1). Section 3439.04(b) provides that the following

eleven factors are to be considered in determining whether "actual intent" exists for an actual

fraudulent transfer claim: (1) Whether the transfer was to an insider; (2) Whether the debtor

retained possession or control of the property transferred after the transfer; (3) Whether the

transfer was concealed; (4) Whether before the transfer was made, the debtor had been sued or

threatened with suit; (5) Whether the transfer was of substantially all of the debtor's assets; (6)

Whether the debtor absconded; (7) Whether the debtor removed or concealed assets; (8) Whether

the value of the consideration the debtor received was the reasonable equivalent to the value of

the asset transferred; (9) Whether the debtor was insolvent or became insolvent shortly after the

transfer was made; (10) Whether the transfer occurred shortly before or after a substantial debt

was incurred; and (11) Whether the debtor transferred the essential assets of the business to a

lienholder who then transferred the assets to an insider of the debtor.

---

[6] Even if Delaware law, as opposed to California law, applies to Plaintiff's actual and constructive fraudulent transfer claims, the analysis and outcome is the same. California and Delaware have both adopted the Uniform Fraudulent Transfers Act ("UFTA"), see Cal. Civ. Code § 3439, *et seq.*; 6 Del. C. § 1301, *et seq.*, and Delaware's and California's statutory language on fraudulent transfers is substantially identical.

IMPAC 6570287v.1

To survive a motion to dismiss, Plaintiff's actual fraudulent transfer claims must satisfy the heightened pleading standard required by Federal Rule of Civil Procedure 9(b).  See, e.g., In re Circle Y of Yoakum, Texas, 354 B.R. 349, 356 (Bankr. D. Del. 2006) (dismissing plaintiff's actual fraudulent transfer claims under the Bankruptcy Code and state law for failure to plead with the particularity required under Federal Rule of Civil procedure 9(b)).  Plaintiff has failed to adequately plead an actual fraudulent transfer claim against the Cyrus Defendants to avoid either the transfers pursuant to the SPA or the liens transferred pursuant to the December 2014 Debenture.

First, Plaintiff has failed to allege how each of the Cyrus Defendants was involved in the allegedly fraudulent transfer related to the SPA or the three alleged fraudulent transfers comprising the December 2014 Debenture.  The Amended Complaint impermissibly groups all of the Cyrus Defendants together and asserts a majority of the allegations against "the Cyrus Group," which is defined as all of the Cyrus Defendants.  See Am. Compl. ¶ 23.  In other instances, the Amended Complaint asserts allegations against "other Cyrus Group entities," without identifying to which specific entities it is referring.  This type of ambiguous group pleading is insufficient to state a claim for fraud.

Second, Plaintiff has failed to plead with particularity the alleged fraudulent transfer surrounding the December 2014 Debenture or the SPA.   As explained above, Plaintiff alleges that the December 2014 Debenture comprises three separate consolidated transfers.  Plaintiff's allegations, however, are limited to general allegations that the December 2014 Debenture, as a whole, was fraudulent.  Plaintiff fails to allege sufficient and particularized facts suggesting how any of the three transfers that comprise the December 2014 Debenture was completed with an actual intent to defraud, hinder, or delay.

23

Plaintiff also fails to allege particularized facts detailing why the December 2014 Debenture, as a whole, qualifies as a fraudulent transfer.  For example, Plaintiff alleges, in conclusory fashion without any explanation, that the December 2014 Debenture qualifies as a fraudulent transfer because the additional $5 million the Cyrus Defendants provided to Sphere in April 2016 occurred after Plaintiff commenced this litigation against Sphere in 2015.  Am. Compl.  ¶ 223(c).  Plaintiff ignores—and fails to allege—how the remaining $19.5 million of the December 2014 Debenture, which debt was issued prior to the initiation of this lawsuit, constituted fraudulent transfers.

Plaintiff's fraudulent transfer claim with respect to the December 2014 Debenture is also fundamentally inconsistent.  Plaintiff alleges that the December 2014 Debenture was made to insiders, Am. Compl. ¶ 223(a), but, Mr. Bordessa—the only person potentially associated with the Cyrus Defendants who could have been considered an alleged insider of Sphere—was not a member of Sphere's board of directors when the March 2014 Debenture and December 2014 Debenture were issued.  See Am. Compl. ¶¶ 18, 145.

Similarly, Plaintiff has not alleged any particular facts supporting its allegation that the SPA was a fraudulent transfer.  Plaintiff relies on threadbare recitals of the § 3439.04(b) factors without alleging any facts in support of those allegations.  For example, Plaintiff alleges that Sphere "is insolvent and/or will be rendered insolvent" from the sale of Overland to SVTP, but it fails to plead any information regarding Sphere's "financial data" or to provide any "analysis . . . so that the court can infer [Sphere's] liabilities exceed its assets at the time the transfer[] in question took place."  In re Liquid Holdings Grp. Inc., No. 16-10202, 2018 WL 2759301, at *19 (Bankr. D. Del. June 6, 2018) (dismissing plaintiff's fraudulent transfer claims and holding that plaintiff failed to plead insolvency where the complaint did not include allegations regarding the

24

debtor's "financial data" or any "financial information indicating that [the debtor] could not meet any financial obligations").

Apart from conclusory statements and formulaic recitations, Plaintiff fails to state how any of the remaining § 3439.04(b) factors evidencing an "actual intent to delay, hinder, or defraud" are present here as to either the December 2014 Debenture or the SPA.  The Court should therefore dismiss Plaintiff's actual fraudulent transfer claims under California law.  See, e.g., In re Oakwood Homes Corp., 325 B.R. 696, 699 (Bankr. D. Del. 2005) (dismissing fraudulent transfer claims where plaintiff "alleged no facts or other supporting information which would establish the fraudulent nature of [the] alleged transfers and . . . essentially recited only the statutory language").

> ii.    *Plaintiff Fails to State a Constructive Fraudulent Transfer Claim Under California Law*

Under California's UFTA, a transfer is constructively fraudulent if the debtor did not receive "a reasonably equivalent value in exchange for the transfer or obligation," and the debtor either: (1) was engaged or about to engage in a business or transaction for which the remaining of its assets were unreasonably small in relation to the business or transaction; or (2) believed or should have believed that it would incur debts beyond its ability to pay.  Cal. Civ. Code. § 3439.04(a)(2)(A)-(B).[7]  Accordingly, to state a constructive fraudulent transfer claim to avoid the liens granted in connection with the December 2014 Debenture, Plaintiff must allege that for each of the three transfers comprising the December 2014 Debenture: (1) Sphere did not receive a reasonably equivalent value for that loan amount and (2) Sphere's remaining assets were

---

[7] Under the Bankruptcy Code, a constructive fraudulent transfer may also exist where the debtor: (1) was insolvent on the date that the transfer was made or became insolvent as a result of the transfer; or (2) made the transfer for the benefit of an insider under an employment contract and not in the ordinary course of business.  11 U.S.C. § 548(a)(1)(B)(ii)(I), (IV).  Here, Plaintiff fails to plead sufficient facts to support either of these theories.

unreasonably small in relation to the loan or Sphere believed that it would incur debts beyond its ability to pay.

To support the first requirement, Plaintiff alleges only a single conclusory allegation: "the consideration that Sphere and/or Overland received in exchange for pledging all of its assets to the Cyrus Group as part of the December 2014 Debenture is less than the reasonably equivalent value of Sphere and/or Overland."  Am. Compl. ¶ 233.  This conclusory allegation is insufficient because Plaintiff incorrectly compares the value of the loan to the total value of Sphere.  To state a constructive fraudulent transfer claim to avoid the liens granted to the Cyrus Defendants in connection with the December 2014 Debenture, Plaintiff must plead why the $24.5 million loan that Sphere received is less than the reasonably equivalent value of the liens that the Cyrus Defendants received.  The Amended Complaint fails to do that (nor can it).

In an effort to meet the second requirement, Plaintiff alleges that: (1) "Since entering into its loans with the Cyrus Group, Sphere has consistently been unable to make payments due on the loans as they have become due,"  Am. Compl. ¶ 158, and (2) "Sphere's assets were unreasonably small in relation to the amount of the December 2014 Debenture," Am. Compl. ¶ 144.  These conclusory allegations are insufficient to survive a motion to dismiss. See In re Global Link Telecom Corp., 327 B.R. 711, 718 (Bankr. D. Del. 2005) (dismissing constructive fraudulent transfer claims because plaintiff "simply allege[d] the statutory elements of a constructive fraud action" and failed to plead any facts on the debtors' "financial status or the value of what was received").  The Amended Complaint also does not contain any allegation that each time Sphere loaned money from the Cyrus Defendants, Sphere *believed or should have believed* that it would not be able to pay its debts.

Plaintiff also fails to state a constructive fraudulent transfer claim with respect to the

property transfers made pursuant to the SPA.  To state a constructive fraudulent transfer claim to avoid the transfers made pursuant to the SPA, Plaintiff must allege that (1) the $45 million Sphere received was not a reasonably equivalent value for Overland and (2) Sphere's remaining assets were unreasonably small in relation to the transfer of Overland or Sphere believed that it would incur debts beyond its ability to pay.  As to the first element, Plaintiff alleges that "the consideration that Sphere received for Overland under the SPA is less than the reasonably equivalent value of Sphere and/or Overland."  Am. Compl. ¶ 232.  Plaintiff's allegation that the value of Overland was less than the reasonably equivalent value of Sphere is irrelevant, and Plaintiff's conclusory allegation that Sphere received less than the equivalent value for Overland is insufficient.  In an attempt to satisfy the second element, Plaintiff alleges, "Sphere was be left [sic] with assets (if any) that are unreasonably small in relation to the business that Sphere has stated it would engage in after the sale."  Am. Compl. ¶ 237.  This conclusory allegation is also insufficient.  Plaintiff fails to allege what business Sphere will engage in after the sale or any explanation as to why Sphere's remaining assets are unreasonably small in relation to that business.

For all of the above reasons, Plaintiff's seventh and eighth claims to avoid certain transfers as actual and constructive fraudulent transfers under the Bankruptcy Code and state law should be dismissed.

### III.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR SECURITIES FRAUD UNDER § 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SECURITIES EXCHANGE COMMISSION RULE 10b-5 (TWENTY-THIRD CLAIM)

Plaintiff's securities fraud claim against the Cyrus Defendants is based on the following allegations: (1) a director on Sphere's board of directors who was an affiliate of the Cyrus Defendants; (2) made material misrepresentations and omissions to V3 that Sphere's shares

"were honestly traded and priced by legitimate public market factors"; (3) V3 relied on those representations in agreeing to the APA purchase price and to accept the Initial Shares as part of the purchase price; and (4) as a result of the alleged misrepresentations and omissions, Sphere's stock was "inflated artificially at the time of the closing of the APA." See Am. Compl. ¶¶ 18, 346-355.  Plaintiff's claim fails for at least three independent reasons.

First, Plaintiff's securities fraud claim against the Cyrus Defendants under Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b) and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 is time-barred.  Securities fraud claims under these provisions are subject to the statute of limitations period in 28 U.S.C. § 1658(b), which provides that such claims must be filed "not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  See, e.g., McCullough v. Advest, Inc., 754 F. App'x 109 (3d Cir. 2018) (citing Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 638, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010)).  Plaintiff's claim is time-barred because it was filed more than two years after Plaintiff discovered the facts constituting the alleged violation *and* more than five years after the alleged violation.

Plaintiff filed the Complaint in this action on October 6, 2015, asserting securities fraud claims against Sphere and the Director Defendants based on the same facts and alleged misrepresentations for which Plaintiff now alleges the Cyrus Defendants are also liable.  See Original Compl. ¶¶ 222-231.  In fact, the only change that Plaintiff made to its securities fraud claim in the Amended Complaint was to assert the claim against the Cyrus Defendants in addition to Sphere and the Director Defendants.  See Exhibit A-2 to Plaintiff's Motion for Leave to Amend Complaint, Dkt. No. 15-3 (redline comparing the Amended Complaint with the Complaint).  The Complaint therefore establishes definitively that Plaintiff had discovered the

28

facts constituting the alleged securities fraud, at the latest, by October 6, 2015.  Plaintiff's

assertion of its securities fraud claim against the Cyrus Defendants in the Amended Complaint on

October 22, 2019, more than four years later, is therefore untimely.

Even assuming Plaintiff was not aware of the facts constituting the alleged securities

fraud by October 2015, which it was, Plaintiff's claim is still time-barred.  Although the

Amended Complaint fails to allege when the alleged misrepresentations forming the securities

fraud claim were made (which, as explained below, is an independent reason why Plaintiff fails

to state a claim), Plaintiff bases its securities fraud claim on alleged misrepresentations on which

V3 relied in executing the APA, which closed on March 21, 2014.  Am. Compl. ¶ 65.

Accordingly, the alleged securities fraud must have occurred on or before March 21, 2014.

Under 28 U.S.C. § 1658(b), Plaintiff was required to bring its securities fraud claim against the

Cyrus Defendants, at the absolute latest, by March 21, 2019, five years after the alleged

violation.  Plaintiff's securities fraud claim asserted against the Cyrus Defendants in October

2019 is therefore barred by the statute of limitations.

Second, the two theories of liability on which Plaintiff seeks to hold the Cyrus

Defendants liable are inapplicable here.  Plaintiff does not allege that any of the Cyrus

Defendants committed acts that constitute securities fraud.  Rather, Plaintiff first alleges the

Cyrus Defendants are liable for securities fraud "through its employee on Sphere's Board."  Am.

Compl. ¶¶ 347-49.  The Amended Complaint is unclear, but the Cyrus Defendants assume

Plaintiff is seeking to hold the Cyrus Defendants vicariously liable for securities fraud for the

actions of an affiliate of the Cyrus Defendants pursuant to the doctrine of respondeat superior.

To the extent this is the basis for Plaintiff's claim, it fails.  Except for narrow exceptions not

applicable here, respondeat superior cannot be used to "impose vicarious liability under the

securities laws." <u>Duncan v. Vantage Corp.</u>, C.A. No. 18-288, 2019 WL 1349497, at *4 (D. Del. Mar. 26, 2019); <u>see also Gould v. American-Hawaiian Steamship Co.</u>, 535 F.2d 761, 778-79 (3d Cir. 1976) ("[O]rdinary agency principles are not applicable in determining secondary liability in securities violation cases."); <u>Rochez Bros., Inc. v. Rhoades</u>, 527 F.2d 880, 886 (3d Cir. 1975) ("[A]gency principles—respondeat superior—are not applicable to determine secondary liability in a securities violation case.").  Plaintiff's securities fraud claim to hold the Cyrus Defendants liable for the alleged actions of an affiliate should be dismissed.

Even if Plaintiff could invoke the doctrine of respondeat superior on a securities fraud claim, which it cannot, the Amended Complaint fails to allege any basis for such liability.  As explained above, Plaintiff alleges that the Cyrus Defendants committed securities fraud "through its employee on Sphere's Board."  However, Daniel Bordessa, the only director on Sphere's board of directors alleged to be an affiliate of one of the Cyrus Entities, was not appointed to Sphere's board of directors until December 2014—at least eight months after the V3 Asset Purchase was completed and therefore the alleged misrepresentations and omissions could have been made.  <u>See</u> Am. Compl. ¶ 18.  Accordingly, based on Plaintiff's own rendition of the facts, the Cyrus Defendants cannot be vicariously liable for securities fraud.

Second, Plaintiff alleges that the Cyrus Defendants are liable for securities fraud because they "defrauded V3" by "aiding and abetting" Sphere and the Director Defendants who committed securities fraud.  Am. Compl. ¶ 349.  Plaintiff, however, cannot hold the Cyrus Defendants liable for securities fraud on this basis because there is no aiding and abetting liability under the federal securities law.  <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164, 191 (1994) (holding that a private plaintiff "may not maintain an aiding

and abetting suit under § 10(b)").  Therefore, to the extent the Amended Complaint seeks to hold the Cyrus Defendants liable for securities fraud for aiding and abetting, such claim fails.

Third, the Amended Complaint utterly fails to meet the heightened pleading requirements under the Private Securities Litigation Reform Act ("PSLRA").  To state a claim for securities fraud under Section 10(b), a plaintiff must demonstrate: "(1) a material misrepresentation (or omission); (2) scienter (a wrongful state of mind); (3) a connection between the misstatement and the purchase or sale of a security; (4) reliance upon the misstatement; (5) economic loss; and (6) loss causation."  Fan v. StoneMor Partners LP, 927 F.3d 710, 714 (3d Cir. 2019).  Pursuant to the "exacting and distinct pleading requirements" of the PSLRA, a complaint must "'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, . . . all facts on which that belief is formed.'"  In re Aetna, Inc. Sec. Litig., 617 F.3d 272, 277 (3d Cir. 2010) (quoting 15 U.S.C. § 78u–4(b)(1)).  In other words, allegations of securities fraud must "set out the 'who, what, when, where, and how' of the events at issue."  In re Rockefeller Center Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002).  The PSLRA also imposes heightened pleading standards on allegations of scienter, requiring plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  In re Aetna, Inc. Sec. Litig., 617 F.3d at 277-78 (quoting 15 U.S.C. § 78u–4(b)(2)).  A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

Plaintiff's boilerplate allegations do not come close to meeting this standard.  The only potential misrepresentations and omissions contained in the Amended Complaint are alleged in

conclusory and general terms: "V3 . . . relied upon the representations of the Cyrus Group (through its employee on Sphere's Board), Sphere, and the Directors that Sphere's shares were honestly traded and priced by legitimate public market factors and were not subject to any manipulation . . . ."  Am. Compl. ¶¶ 347, 348.  Plaintiff does not identify a particular speaker of any of the statements, when the statements were made, to whom the statements were made, or any particular misrepresentation.  The Amended Complaint also does not allege the reasons why the alleged general statements were misleading.  See Fan, 927 F.3d at 714.  Plaintiff's securities fraud claim should be dismissed because the Amended Complaint does not establish the primary element of a securities fraud claim: a material misstatement or omission. See, e.g., Klein v. General Nutrition Cos., Inc., 186 F.3d 338, 345 (3d Cir. 1999) (holding that pleading with particularity "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements" and dismissing the plaintiffs' claim because they failed to attribute the allegedly fraudulent statements to a "specific member" of the defendant company's management); Schwartz v. Perseon Corp., 175 F. Supp. 3d 390, 399 (D. Del. 2016) (holding that the plaintiff's allegations did not "satisfy the particularity requirements of the PSLRA" because the plaintiff's "[g]eneralized claims" that individual defendants "touted impressive revenue figured and sales" did not "identify any specific statement").

Plaintiff also fails to plead with particularity that the Cyrus Defendants acted with scienter.  To establish scienter, a plaintiff must plead with particularity that the Cyrus Defendants acted with "a mental state embracing intent to deceive, manipulate or defraud." In re Ikon Office Solutions, Inc., 277 F.3d 658, 667 (3d Cir. 2002) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)).  The Amended Complaint contains no factual allegations demonstrating that the Cyrus Defendants knew the alleged misrepresentations were false, let alone that they

acted with an intent to deceive, manipulate, or defraud V3.  Indeed, the Amended Complaint

contains only one conclusory allegation on scienter, claiming that all of the defendants who are

alleged to have committed securities fraud "knew or should have known [the alleged

misrepresentations] to be false when made."  Am. Compl. ¶ 352.  This single group pleading

allegation fails to meet the PSLRA's heightened pleading requirements for scienter.  See Winter

Family Trust v. Queen, 503 F.3d 319, 337 (3d Cir. 2007) (holding that "the group pleading

doctrine is no longer viable in private securities actions after the enactment of the PSLRA"); In

re Rockefeller Center Props., Inc. Sec. Litig., 311 F.3d 198, 224 (3d Cir. 2002) ("[F]raud

allegations should be analyzed individually to determine whether each alleged incident of fraud

has been pleaded with particularity").

      In addition, Plaintiff fails to plead an economic loss and loss causation.  To withstand a

motion to dismiss, a complaint must give the defendant "notice of . . . the relevant economic

loss" and "the causal connection . . . between that loss and the misrepresentation."  Dura Pharm.,

Inc. v. Broudo, 544 U.S. 336, 346-47 (2005).  To establish an economic loss on a 10b-5 claim, a

plaintiff must allege that it suffered some "pecuniary" harm because of the alleged

misrepresentation.  In other words, "if no injury is occasioned by the lie, it is not actionable."

Id. at 344 (internal quotations and citation omitted).  To establish loss causation, a plaintiff must

allege that "the fraudulent misrepresentation or omission actually caused the loss suffered," and

that the defendant "misrepresented or omitted the very facts that were a substantial factor in

causing the plaintiff's economic loss."  McCabe v. Ernst & Young, LLP, 494 F.3d 418, 425 (3d

Cir. 2007).

      The Amended Complaint fails to establish that V3 suffered an actionable economic loss.

For example, Plaintiff does not allege that the alleged misrepresentation caused the value of V3's

stock in Sphere to drop.  To the contrary, Plaintiff alleges that Sphere's stock actually increased in price:  "After the Closing Date [of the APA], Sphere's shares *increased* in value on the TSX." Am. Compl. ¶ 131 (emphasis added).  With regard to economic loss, the Amended Complaint alleges only that the alleged misrepresentations caused "Sphere securities . . . to be inflated artificially at the time of the closing of the APA . . . . "  Am. Compl. ¶ 354.  The Supreme Court has held allegations, standing alone, that the plaintiff paid an "artificially inflated purchase price" for the subject securities is not a "relevant economic loss" for a 10b-5 claim.  Dura Pharm., Inc., 544 U.S. at 342.  The Amended Complaint also alleges that "the value of the stock in possession of V3" was "destroyed," because the Cyrus Defendants, Sphere, and the Cyrus Defendants "conspired with Anderer to support Anderer's malicious attempts to enjoin sale of V3's shares of Initial Shares."  Am. Compl. ¶ 351.  Plaintiff does not allege that the value of Sphere stock held by V3 was destroyed as a result of the alleged misrepresentations.  This allegation is therefore irrelevant to Plaintiff's securities fraud claim.  Even if Plaintiff alleged that the misrepresentations "destroyed the value" of V3's Sphere stock, which it did not, this vague allegation would still be insufficient to establish an economic loss under the heightened pleading requirements of the PSLRA.

The Amended Complaint also fails to establish loss causation because it contains no facts showing a causal connection between the alleged misrepresentations and the alleged artificially inflated stock price or any alleged loss.   Without pleading any causal nexus between the alleged misrepresentations and a drop in stock price or another actionable economic loss, Plaintiff cannot state a claim for securities fraud under Section 10(b).

For all of these reasons, this Court should dismiss Plaintiff's securities fraud claim against the Cyrus Defendants.

IV.  **PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (TENTH CLAIM)**

Plaintiff's tenth claim alleges that the Cyrus Defendants aided and abetted the Director Defendants' breaches of fiduciary duty, which are asserted in Plaintiff's ninth claim.  Plaintiff fails to articulate clearly which alleged breaches of fiduciary duty the Cyrus Defendants allegedly aided and abetted.  The Cyrus Defendants therefore assume that Plaintiff is alleging the Cyrus Defendants aided and abetted all of the alleged breaches by the Director Defendants asserted in claim nine.

Plaintiff's allegations of breaches of fiduciary duty in claim nine fall within two categories: (1) alleged breaches relating to the SPA; and (2) alleged breaches relating to the APA.

A.  **Plaintiff Fails to State a Valid Claim that the Cyrus Defendants Aided and Abetted Breaches of Fiduciary Duties in Relation to the SPA**

Plaintiff's breach of fiduciary duty and aiding and abetting claims relating to the SPA are based on the following allegations: (1) the UD Dissolution Trust is a shareholder of Sphere, Am. Compl. ¶ 245; (2) the Director Defendants, as directors of Sphere, owed fiduciary duties to Sphere's shareholders, Am. Compl. ¶ 245; (3) the Director Defendants breached those fiduciary duties because the Director Defendants: (a) with the alleged knowledge and approval of the Cyrus Defendants, formed SVTP for the purpose of removing Sphere's assets so that it could avoid paying the potential debts owed to Plaintiff; and (b) directed Roth to render an inaccurate valuation of Sphere's assets, Am. Compl. ¶¶ 163, 247(a)-(c); (4) the Cyrus Defendants facilitated the Director Defendants' alleged breaches by taking debt and equity positions in Sphere that allowed them to benefit from onerous loan agreements that Sphere cannot afford, Am. Compl. ¶ 259; and (5) the proceeds from the sale of Overland may be insufficient for Sphere to pay its outstanding debts, including Plaintiff's claims against Sphere asserted in this action, Am. Compl.

¶¶ 248, 239.  Plaintiff's aiding and abetting claim relating to the SPA suffers from at least two fatal defects.

> i.      *Plaintiff's Aiding and Abetting Claim Does Not Comply with Canadian Law*

Plaintiff's breach of fiduciary duty and aiding and abetting claims are classic shareholder derivative claims that belong to Sphere.  An action is derivative, or in the corporate right, "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets."  12B Fletcher, Cyclopedia of Corporations, § 5911 (2017).  The alleged injury that Plaintiff claims it suffered as a result of Sphere's transfer of Overland to SVTP—namely that Sphere may not be able to pay its debt—is an injury that flows to the corporation itself, not Sphere's shareholders individually and directly.

Plaintiff's right to assert a derivative claim for aiding and abetting is governed by the laws of Ontario, Canada, where Sphere is incorporated.  See, .e.g., Kostolany v. Davis, No. 13299, 1995 WL 662683, at *2 (Del. Ch. Ct. Nov. 7, 1995) (explaining that under the internal affairs doctrine a stockholder's right to pursue a derivative action is governed by the law of the place where the company is incorporated); Levine v. Milton, 219 A.2d 145, 147 (Del. Ch. Ct. 1996) ("[T]he right of a stockholder to bring a derivative action is a question of substantive law to be determined by the law of the state or country of incorporation."); see also Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A., 34 A.3d 1074, 1082 (Del. 2011) (holding that Spanish law governed a shareholder's ability to pursue a derivative action); Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC, No. CIV.A. 8652-VCN, 2014 WL 2964076, at *5 (Del. Ch. Ct. June 30, 2014) (explaining that claims for breach of fiduciary duty and aiding and abetting are subject to the internal affairs doctrine).

To bring a derivative claim on behalf of an Ontario corporation, a plaintiff must comply with the Ontario Business Corporations Act (the "OBCA").  Under Part XVII, § 246(2) of the OBCA, no derivative action may be brought unless: (1) "the complainant has given fourteen days' notice to the directors of the corporation . . . of the complainant's intention to apply to the court [for leave to bring such action]"; and (2) the Ontario Superior Court of Justice has granted that application and given the complainant judicial authorization to bring such a claim.

Here, Plaintiff has alleged neither that it provided Sphere with notice nor that it has received permission from the Ontario Superior Court of Justice to bring its derivative claims. This Court should therefore dismiss Plaintiff's aiding and abetting claim.  See Charas v. Sand Tech. Sys. Int'l, Inc., No. 90 Civ. 5638, 1992 WL 296406, at *7-8 (S.D.N.Y. Oct. 7, 1992) (explaining that the application for judicial authorization to bring a derivative suit under Canadian law "is not a mere formality" and dismissing the plaintiff's derivative claims for failure to obtain such authorization); Fleeger v. Clarkson Co. Ltd., 86 F.R.D. 388, 394 (N.D. Tex. 1980) ("The Supreme Court of Ontario expressly forbids a [derivative] suit  . . . without obtaining leave of that court.").  Moreover, even if Plaintiff had permission to pursue its derivative claims, Plaintiff's aiding and abetting claim still fails under the laws of Ontario because under such laws there is no claim called aiding and abetting breach of fiduciary duty.

In addition, for the reasons stated in Sphere, Overland, SVTP, and the Director Defendants' motion to dismiss, Plaintiff has failed to state a claim for breach of fiduciary duty against the directors.  Because Plaintiff's underlying breach of fiduciary duty claim fails, Plaintiff's aiding and abetting breach of fiduciary duty claim against the Cyrus Defendants must also fail.  See, e.g., In re Our Alchemy, LLC, No. 16-11596, 2019 WL 4447519, at *9 (Bankr. D.

37

Del. Sept. 16, 2019) ("A court will only address a claim for aiding and abetting if the plaintiff first establishes that an underlying breach of fiduciary duty occurred.").

> ii.    *Plaintiff Has Not Pled its Aiding and Abetting Claim with Particularity*

Even if Canadian law does not apply, Plaintiff has still failed to state an aiding and abetting breach of fiduciary duty claim under California law.[8]  Plaintiff's aiding and abetting breach of fiduciary duty claim must be pled with particularity as required by Federal Rule of Civil Procedure 9(b) because it is "grounded in fraud."  In re Liquid Holdings, 2018 WL 2759301, at *12.  "Even though a plaintiff may plead fiduciary duty claims generally, if the allegations are grounded in fraud the standard shifts and the plaintiff must plead any claims with specificity."  Id. (citing In re Pitt Penn Holding Co., 484 B.R. 25, 53 (Bankr. D. Del. 2012)).[9]

Under California law, to state a claim for aiding and abetting an intentional tort, such as breach of fiduciary duty, a plaintiff must allege that the defendant: (1) knew the primary

---

[8] In its opposition to the Cyrus Defendants' motion to dismiss in the California Action, Plaintiff claimed that California law, rather than Canadian law, applies to its aiding and abetting breach of fiduciary duty claim regarding the SPA against the Cyrus Defendants.  See California Action, Dkt. No. 46 at 16.

[9] Although there is caselaw in this district holding that heightened pleading under Rule 9(b) does not apply to state law claims of breach of fiduciary duty, see In re Am. Bus. Fin. Servs., 361 B.R. 747, 757-58 (Bankr. D. Del. 2007), the Court should apply the heightened pleading requirements under Rule 9(b) to Plaintiff's aiding and abetting claim according to Third Circuit precedent that "[e]ven when 'fraud is not a necessary element of a claim[,] claims that do sound in fraud must be plead with particularity." Travelers Indem Co. v. Cephalon, Inc., 620 F. App'x 82, 85 n.3 (quoting In re Westinghouse Sec. Litig., 90 F.3d 696, 717 (3d Cir. 1996)).  Although the Third Circuit has not specifically addressed Rule 9(b)'s application to aiding and abetting or breach of fiduciary duty claims, numerous Circuit Courts of Appeals have held that breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims must meet Rule 9(b)'s heightened pleading requirements where the claim is based on fraud.  See, e.g., Cornielsen v. Infinium Capital Mgmt., LLC, 916 F.3d 589, 604 (7th Cir. 2019) (holding that plaintiff's breach of fiduciary duty claim under Delaware law was "subject to Rule 9(b)'s heightened pleading requirements as [it is] premised on allegations that the defendants knowingly mislead Plaintiffs"); Krys v. Pigott, 749 F.3d 117, 129 (2d Cir. 2014) ("In asserting claims of fraud—including claims for aiding and abetting fraud or breach of fiduciary duty that involves fraud—a complaint is required to plead the circumstances that allegedly constitute fraud 'with particularity.'"); North Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) ("[O]ne might think that negligent misrepresentation and fiduciary duty were not on their face subject to Rule 9(b), but the case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud.").  Here, Plaintiff's aiding and abetting claim alleging, among other things, that the Cyrus Defendants "facilitat[ed] the ***fraudulent*** transfers" and "masterminded" the SPA "with the ***intent*** to quickly force a sale of an asset at an unreasonably low value," is clearly grounded in fraud and thus should be pled with particularity.  Am. Compl. ¶ 259-60 (emphasis added).

violator's conduct constituted a breach of duty to a third party and (2) gave substantial assistance or encouragement to the primary violator to commit the breach and the defendant's own conduct, separately considered, constituted a breach of duty to the third party.  Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010) (quoting Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1559 (2009)).  To be liable for aiding and abetting, the defendant must have had "actual knowledge of the specific primary wrong the defendant substantially assisted."  In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig., Nos. C-05-04726, C-06-00537, 2007 WL 486367, at *8 (N.D. Cal. Feb. 12, 2007) (quoting Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1147 (2005)).

First, as previously explained in Section II.B.ii supra, the Amended Complaint fails to meet Rule 9(b)'s heightened pleading requirement because, inter alia, Plaintiff relies on insufficient group pleading allegations.  The allegations in support of plaintiff's aiding and abetting claim are asserted against the Cyrus Defendants generally.  Plaintiff fails to allege specific allegations demonstrating that each of the Cyrus Defendants actually knew of the Director Defendants' intentions in forming SVTP and engaged in conduct that facilitated the Director Defendants' breach.  Without being advised of what each of the Cyrus Defendants allegedly did to aid and abet the Director Defendants, the Cyrus Defendants cannot possibly defend themselves against this claim.  Consequently, this Court should dismiss the aiding and abetting claim against the Cyrus Defendants.  See Hawk Mountain LLC v. Mirra, No. 13-2083-SLR-SRF, 2016 WL 3182778, at *16 (D. Del. June 3, 2016) (holding that the complaint contained "improper group pleading pursuant to Rule 9(b)" because it was "unclear which defendants [were] precisely charged" with the alleged fraudulent conduct); Fountain v. United States, 605 F. Supp. 2d 608, 613 (D. Del. 2009) (dismissing the complaint pursuant to Rule

12(b)(6) because the plaintiff's "very broad allegations" did "not give[] defendant fair notice as to the grounds under which plaintiff commence[d] this action").

Second, even attributing the group pleading allegations to each of the Cyrus Defendants, the allegations in the Amended Complaint are still woefully inadequate to support a reasonable inference that the Cyrus Defendants knew that the Director Defendants' alleged conduct constituted a breach of fiduciary duty.  Plaintiff alleges that the Cyrus Defendants knew and "tacit[ly] approved" of Defendant Kelly forming SVTP for the purpose of effectuating a sale of Overland, Am. Compl. ¶ 163, and that Roth rendered an inaccurate fairness opinion "at the behest" of Defendant Kelly and "Cyrus," Am. Compl. ¶ 167.  The Amended Complaint fails to support these conclusory allegations with *any* facts, such as how or when the Cyrus Defendants gained knowledge of Defendant Kelly's intentions, what actions they took to imply that they approved of Defendant Kelly's plan, or what they did to direct Roth to change its fairness opinion.

### B.    Plaintiff Fails to State a Valid Claim that the Cyrus Defendants Aided and Abetted Breaches of Fiduciary Duties in Relation to the APA

Plaintiff alleges that the Director Defendants, as directors and officers of Sphere, breached their fiduciary duties to V3 because they failed to provide full disclosures to V3 during Sphere and V3's negotiations over the APA.  Am. Compl. ¶ 250-53.  Plaintiff's breach of fiduciary duty claim suffers from a fatal flaw: the Director Defendants' alleged failure to provide V3 with full disclosures occurred ***before*** V3 became a shareholder of Sphere.

V3 was not a shareholder of Sphere prior to the V3 Asset Purchase when the alleged misrepresentations and omissions were made.  V3 only became a shareholder of Sphere pursuant to the APA, which provided that V3 was to be paid in cash and shares of Sphere.  It is black-letter law that for a shareholder plaintiff to assert a breach of fiduciary duty claim, it must have been a

40

shareholder of the corporation at the time at which the alleged breach occurred.  See Omnicare,

Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169-70 (Del. Ch. 2002) ("[O]nly persons who

were stockholders at the time of an alleged wrongdoing have standing to sue corporate directors

for breach of fiduciary duty.").  Plaintiff's breach of fiduciary duty claim regarding the APA for

alleged acts that occurred before V3 was a shareholder therefore fails.

Because Plaintiff's breach of fiduciary duty claim against the Director Defendants fails,

its aiding and abetting breach of fiduciary claim against the Cyrus Defendants regarding the APA

necessarily fails.  See, e.g., In re Our Alchemy, LLC, 2019 WL 4447519, at *11 (dismissing the

plaintiff's aiding and abetting claim because the underlying breach of fiduciary duty claims were

also dismissed).  Even if Plaintiff has stated a breach of fiduciary duty claim against the Director

Defendants regarding the APA, Plaintiff's aiding and abetting claim against the Cyrus

Defendants still fails because the Amended Complaint does not assert a single factual allegation

as to what the Cyrus Defendants did to "aid and abet" the Director Defendants' failure to disclose

information to V3.

Moreover, as explained more fully above in connection with Plaintiff's claim regarding

the SPA, Plaintiff's aiding and abetting claim regarding the APA is a derivative claim governed

by Canadian law.  Like Plaintiff's claim regarding the SPA, Plaintiff's aiding and abetting claim

regarding the APA fails under applicable Canadian law because: (1) Plaintiff has alleged neither

that it provided Sphere with notice nor that it has received permission from the Ontario Superior

Court of Justice to bring its derivative claim; and (2) aiding and abetting breach of fiduciary duty

claims do not exist under applicable Canadian law.  See supra, at IV.A.i.  In addition, any similar

claim to aiding and abetting that Plaintiff could pursue against the Cyrus Defendants under

Canadian law is time-barred.  Except for specific claims not applicable here, Ontario applies a

41

two-year statute of limitations.  Ontario Canada Limitations Act 2002 § 4 ("[A] proceeding shall not be commenced in respect of a claim after the second anniversary of the day on which the claim was discovered.").  Any potential allegations in the Amended Complaint that could form the basis of a claim against the Cyrus Defendants for the Director Defendants' alleged breaches of fiduciary duty regarding the APA would have occurred in 2014.  Plaintiff's assertion of its aiding and abetting claim against the Cyrus Defendants in 2019—five years after the alleged tortious conduct occurred—is time-barred.

**V.    PLAINTIFF FAILS TO STATE A VALID CLAIM FOR EQUITABLE SUBORDINATION UNDER THE BANKRUPTCY CODE OR THE UNIFORM COMMERCIAL CODE (ELEVENTH CLAIM)**

Equitable subordination is a remedy that is used "to undo or to offset any inequality in the claim position of a creditor . . . ."  In re Optim Energy, LLC, 527 B.R. 169, 175 (D. Del. 2015) (quoting In re Winstar Commc'ns, Inc., 554 F.3d 382, 411 (3d Cir. 2009)).  Plaintiff's equitable subordination claim against the Cyrus Defendants fails because the Cyrus Defendants no longer hold debt in Sphere.  The only debt that the Amended Complaint alleges the Cyrus Defendants held in Sphere was the December 2014 Debenture.  The December 2014 Debenture, however, is no longer an obligation of Sphere.  The Amended Complaint admits that pursuant to the SPA, "FBC converted $6.5 million of the [$24.5 million] outstanding principal amount of the December 2014 Debenture was [sic] into 6,500,000 non-voting preferred shares of Sphere," and "Sphere and all of its remaining subsidiaries were released as obligors and guarantors" on the remaining $18.9 million "under the December 2014 Debenture and under the April 6, 2016 Credit Agreement."  Am. Compl. ¶ 177.  There is thus no claim to subordinate.

Even if the Cyrus Defendants still held a claim in Sphere, Plaintiff's cause of action for equitable subordination under the Bankruptcy Code fails because Sphere is not in bankruptcy.

42

Without a pending bankruptcy, with Sphere as the debtor, Plaintiff cannot state a valid claim for relief under the Bankruptcy Code in connection with loans made to Sphere.

Similarly, Plaintiff is not entitled to equitable subordination under the Uniform Commercial Code.  First, Delaware's adoption of the Uniform Commercial Code, 6 Del. C. § 1-101, *et* seq., does not provide for equitable subordination.  Second, even if Plaintiff could seek equitable subordination under the Uniform Commercial Code, equitable subordination is not a separate claim; it is a potential equitable remedy.  Plaintiff has not asserted any claims under the Uniform Commercial Code in this case.  Its provisions, and potential remedies, are thus not applicable here.

## VI.  PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH ECONOMIC RELATIONS (TWENTIETH CLAIM)

Plaintiff fails to articulate any coherent claim for interference with existing economic relations.  Plaintiff's claim appears to be based on two events that occurred in 2014: (1) V3's non-compete agreement with Peter Bookman executed in 2013 and Bookman starting to work for Sphere in March 2014, Am. Compl. ¶¶ 329-332; and (2) the execution of the October 10, 2014 Agreement between V3 and Sphere providing for a leak-out.  Am. Compl. ¶¶ 138, 333.  Plaintiff's interference with economic relations claim against the Cyrus Defendants fails for at least three different reasons.

First, Delaware does not recognize a claim for interference with existing economic relations.[10]  Second, even if Plaintiff could state a claim for interference with existing economic relations under Delaware law, it is time-barred.  In Delaware, any claim "to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the

---

[10] In Plaintiff's opposition to Sphere, Holdings, and certain of the Director Defendants' motion to dismiss the Complaint in this matter, Plaintiff asserted that Delaware law applies to its tort claims of intentional interference with existing economic relations, interference with contractual relations, unjust enrichment, and conversion.

43

defendant" is subject to a three-year statute of limitations.  10 Del. C. § 8106; see also Albert v. Alex. Brown Mgmt. Servs., Inc., No. Civ. A. 762-N, 2005 WL 1594085, at *12 (Del. Ch. June 29, 2005) (noting a three-year limitations period applies to claims sounding in tort or contract when the harm alleged is not a personal injury); cf. E.I. Du Pont de Nemours & Co. v. Monsanto Co., No. CIV.A. 00–359–SLR, 2001 WL 652019, at *1 (D. Del. Feb. 14, 2001) (holding that the three-year statute of limitations under 10 Del C. § 8106 is applicable to tortious interference with contract claims).  As explained above, two events that occurred in 2014 form the basis of Plaintiff's claim.  Plaintiff's assertion of its intentional interference with economic relations claim against the Cyrus Defendants in the Amended Complaint filed in 2019—more than five years after these events allegedly occurred—is therefore untimely.

Third, Plaintiff fails to articulate a comprehensible, much less plausible, statement of a claim for interference with existing economic relations.  Plaintiff alleges that the Cyrus Defendants interfered with V3's economic relations because: (1) "the Cyrus Group, Sphere, and the Directors assisted with and made demands by and for and on behalf of Bookman . . . premised upon false pretextual claims of interference with the Bookman employment arrangements," Am. Compl. ¶ 332; and (2) "Sphere used the Anderer lawsuit and perjured testimony by Bookman to obtain a new leak-out provision," Am. Compl. ¶ 333.  The Amended Complaint, however, fails to provide a coherent explanation of V3's relationship with Peter Bookman, the alleged demands the Cyrus Defendants made on Bookman's behalf, or how Bookman or the Anderer Lawsuit relate to the leak-out provision in the October 10, 2014 Agreement.  More fundamentally, these allegations do not even identify the economic relationship with which the Cyrus Defendants allegedly interfered, or the tortious actions that the

44

Cyrus Defendants took.  Plaintiff's interference with existing economic relations claim should be dismissed.

## VII.  PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH CONTRACTUAL RELATIONS (TWENTY-FIRST CLAIM)

Plaintiff's claim for interference with contractual relations against the Cyrus Defendants is based on the following allegations: (1) V3 had an "economic relationship" with its "securities broker and transfer agent concerning V3's efforts to lift the restrictive legend on the Initial Shares," Am. Compl. ¶ 338; (2) "the Cyrus Group (through its employee on Sphere's Board)" had "communications . . . with the transfer agent concerning the lifting of the restrictive legend," Am. Compl. ¶ 340; (3) those communications "wrongfully disrupted" and "the Cyrus Defendants (through its employee on Sphere's Board) . . . intended to disrupt the business relationship between V3 and its broker and transfer agents," Am. Compl. ¶ 340; and (4) Plaintiff suffered "economic injury from its inability to liquidate its shares" in Sphere, Am. Compl. ¶ 341.  This claim fails for at least two independent reasons.

Like its interference with economic relations claim, Plaintiff's claim against the Cyrus Defendants for interference with contractual relations is time-barred.  A claim for interference with contractual relations is subject to a three-year limitations period.  See E.I. Du Pont, 2001 WL 652019, at *1.  The Cyrus Defendants' alleged involvement with the restrictive legend on V3's Initial Shares must have occurred, at latest, in October 2014 when the restrictive legend was lifted and V3 began to sell shares.  Am. Compl. ¶ 138.  Plaintiff's assertion of its interference with contractual relations claim against the Cyrus Defendants in the Amended Complaint in October 2019—five years later—is untimely.

In addition, the Amended Complaint fails to plead a plausible claim.  To state a claim for interference with contractual relations under Delaware law, Plaintiff must allege the following

elements: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." Bhole, Inc. v. Shore Invests., Inc., 67 A.3d 444, 453 (Del. 2013). The Amended Complaint does not even identify a contract with which the Cyrus Defendants allegedly interfered, let alone sufficient facts to establish the other elements of a claim.

Moreover, even assuming Plaintiff had alleged adequate facts to support an interference with contract claim, which it hasn't, there is no basis for holding the Cyrus Defendants liable. The Amended Complaint does not allege that the Cyrus Defendants did anything to interfere with a contract. Rather, it alleges that the Cyrus Defendants are liable for interference with contractual relations because of actions taken by "its employee on Sphere's Board." Am. Compl. ¶ 339. However, Daniel Bordessa, the only director on Sphere's board of directors that is alleged to be an affiliate of one of the Cyrus Entities, was not appointed to Sphere's board of directors until December 2014—at least two months after the alleged tortious conduct occurred. Am. Compl. ¶ 18. Plaintiff's interference with contract claim against the Cyrus Defendants fails based on its own allegations.

## VIII. PLAINTIFF FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT (TWENTY-SIXTH CLAIM)

Plaintiff's claim for unjust enrichment against the Cyrus Defendants is based on V3's transfer of assets to Sphere under the APA in 2014: "V3 conferred a benefit upon Defendants by transferring its valuable assets having a transaction value of $14.7 million." Am. Compl. ¶ 370. This claim fails for multiple reasons. First, like Plaintiff's other tort claims, its unjust enrichment claim is time-barred. Unjust enrichment claims under Delaware law are subject to a three-year statute of limitations pursuant to 10 Del. C. § 8106. See, e.g., Genrette v. Bank of New York Mellon Tr. Co., N.A., No. CV 19-936 (MN), 2019 WL 4917890, at *4 (D. Del. Oct. 4, 2019)

46

("Under Delaware law, the statute of limitations for a claim of unjust enrichment is three years . . . ."). Plaintiff's unjust enrichment claim against the Cyrus Defendants asserted in the Amended Complaint in October 2019—more than five years after the APA closed—is thus untimely.

Second, Plaintiff's unjust enrichment claim fails because Plaintiff has an adequate remedy at law. Unjust enrichment is a "quasi-contract theory of recovery" that provides a remedy in the absence of a formal contract. <u>Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.</u>, 42 F. Supp. 2d 423, 439 (D. Del. 1999). "It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim." <u>Vichi v. Koninklijke Philips Elecs. N.V.</u>, 62 A.3d 26, 58 (Del. Ch. 2012). Here, Plaintiff has asserted the existence of a binding contract between the parties—the APA—that adequately addresses each party's rights and duties regarding the V3 Asset Purchase. Accordingly, Plaintiff cannot recover under the quasi-contractual theory of unjust enrichment.

Third, Plaintiff has failed to plead adequately its entitlement to unjust enrichment against the Cyrus Defendants. The Amended Complaint's unjust enrichment allegations group together all but one of the defendants named in this action, claiming that V3 conferred a benefit upon *all* of these defendants by transferring its assets to Sphere under the APA. Am. Compl. ¶ 370. The Cyrus Defendants, however, were not a party to the APA nor has Plaintiff alleged that the Cyrus Defendants received any of V3's assets or any benefit that caused them to be unjustly enriched.

## IX. PLAINTIFF FAILS TO STATE A CLAIM FOR CONSTRUCTIVE CONVERSION (TWENTY-SECOND CLAIM)

Plaintiff's twenty-second claim is for constructive conversion of its Initial Shares. Conversion is an "act of dominion wrongfully exerted over the property of another, in denial of

47

his right, or inconsistent with it." Arnold v. Society for Savings Bancorp, Inc., 678 A.2d 533, 536 (Del. 1996). The Amended Complaint fails to allege the basis for Plaintiff's conversion claim and is devoid of any factual allegation regarding what the Cyrus Defendants allegedly did to exert wrongful control over Plaintiff's Initial Shares. The conversion claim should therefore be dismissed for failure to state a claim.

In addition, any allegation in the Amended Complaint that could potentially form the basis of a conversion claim regarding V3's Initial Shares must have occurred in or before October 2014—when the legend was removed and V3 started selling its shares. In Delaware, a claim for conversion is subject to a three year statute of limitations under 10 Del. C. § 8106. See Webster v. Brosman, No. N19C-04-179, 2019 WL 5579489, at *2 (Del. Super. Ct. Oct. 29, 2019). Plaintiff's conversion claim, first asserted against the Cyrus Defendants five years later in October 2019, is therefore time-barred.

## X. PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION AGAINST STEPHEN FREIDHEIM

In addition to all of the reasons above as to why each claim asserted against the Cyrus Defendants fails, the Amended Complaint should be dismissed against individual defendant Stephen C. Freidheim because Plaintiff has failed to allege *any* facts supporting its claims against him. The Amended Complaint does not allege that Mr. Freidheim was involved in, or even aware of, any of the alleged events in the Amended Complaint. In fact, the Amended Complaint only asserts two allegations against Mr. Freidheim: (1) Mr. Freidheim is the managing member of certain of the Cyrus Entities and he is the Chief Investment Officer of defendant CCP, which is the alleged investment manager of the Cyrus Entities; and (2) Freidheim has entered into an "investment management agreement" with CCP pursuant to which CCP has "voting and disposition power over the Common Shares held by the [Cyrus Entities]." Am. Compl. ¶¶ 29-30.

48

These allegations, standing alone, are woefully insufficient to support any claim against Mr. Freidheim. The Amended Complaint should therefore be dismissed in its entirety as to Mr. Freidheim.

**XI.    PLAINTIFF'S CAUSE OF ACTION FOR A TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF IS IMPROPER (TWENTY-SEVENTH CLAIM)**

Plaintiff attempts to assert a claim for a temporary, preliminary, and permanent injunction. This claim is improper because temporary, preliminary, and permanent injunctions are forms of relief; they are not separate causes of action. More importantly, Plaintiff has not moved this court for a temporary or preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Plaintiff is therefore not entitled to this relief.

## <u>CONCLUSION</u>

For the foregoing reasons, the Cyrus Defendants respectfully request that the Court enter an order dismissing, with prejudice, each of the claims in the Amended Complaint brought against the Cyrus Defendants and granting such other and further relief to the Cyrus Defendants as the Court deems just and proper.

IMPAC 6570287v.1

Dated: February 10, 2020

**POTTER ANDERSON & CORROON LLP**

*Of Counsel*:
**AKIN GUMP STRAUSS**
**HAUER & FELD LLP**
Brian T. Carney
Kristen Diane White
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
E-mail: bcarney@akingump.com
E-mail: kristen.white@akingump.com

*/s/ L. Katherine Good*
Matthew F. Davis (DE Bar No. 4696)
L. Katherine Good (DE Bar No. 5101)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-mail: mdavis@potteranderson.com
E-mail: kgood@potteranderson.com

*Attorneys for Cyrus Capital Partners, L.P.,*
*Crescent 1, L.P., CRS Master Fund, L.P., Cyrus*
*Opportunities Master Fund II, Ltd., Cyrus Select*
*Opportunities Master Fund, Ltd., Cyrus Capital*
*Partners GP, L.L.C., Cyrus Capital Advisors,*
*L.L.C., FBC Holdings, S.A.R.L., and Stephen*
*Cyrus Freidheim*