## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UD DISSOLUTION CORP.<br>    (fna, V3 Systems, Inc.),<br><br>Debtor.<br>_____<br>UD DISSOLUTION LIQUIDATING TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>SPHERE 3D CORPORATION, *et al.*,<br><br>    Defendants. | Utah Bankruptcy Case No. 14-32546<br>(Chapter 11)<br><br><br><br><br>Misc. Pro. No.:  18-00102 (MFW)<br><br><br>**Re: D.I. 28-30 & 33-35** |

## ANSWERING BRIEF IN OPPOSITION TO SPHERE DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

*Of Counsel*:
**FABIAN VANCOTT**
Kevin N. Anderson
215 South State Street, Suite 1200
Salt Lake City, UT 84111
Telephone: (801) 531-8900
Facsimile: (801) 59602814
E-mail: kanderson@fabianvancott.com


Dated: May 6, 2020

**MORRIS JAMES LLP**

Albert H. Manwaring, IV (DE Bar No. 4399)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
Telephone: (302) 888-6868
E-mail: amanwaring@morrisjames.com

*Attorneys for Plaintiff*
*UD Dissolution Liquidating Trust*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND AND STATEMENT OF RELEVANT FACTS .............. 3

ARGUMENT ...................................................................................................................... 5

    I.   Claims 12-27 Are Adequately Plead........................................................................... 5

        a.   The 10b-5 Claim (Claim 23) Meets the Requirements of the Statute..................... 6

        b.   The UD Trust Stated a Claim for Negligent and Intentional Misrepresentation
            (Claims 24 and 25)................................................................................................. 9

        c.   Interference Against Sphere Defendants (Claims 20 and 21) Survive. ................ 11

        d.   Constructive Conversion (Claim 22) is Properly Asserted.................................... 13

        e.   Turnover Claims 12 (Earn-Out) and 13 (Holdback) are Proper. .......................... 14

        f.   The UD Trust Has Stated APA-Related Claims Against Overland
            (Claims 20-23, 26). ............................................................................................. 16

    II.  The UD Trust Has Stated Claims for Fraudulent Transfers (Claims 7-8, 14)
       Under Federal and State Law...................................................................................... 17

    III. Breach of Fiduciary Duty (Claim 9) is Adequately Plead. ........................................ 19

    IV. UD Trust States a Claim for Equitable Subordination (Claim 11). ............................ 22

    V.  Breach of Contract Claims (Claim 15-19) are Proper as to Directors. ....................... 23

    VI. UD Trust States Unjust Enrichment (Claim 26) Against Sphere Defendants. ........... 25

    VII. The 27th Claim is Properly Asserted. ...................................................................... 27

    VIII. UD Trust Has Stated Claims against Directors Bordessa and Mahadevan............. 27

CONCLUSION.................................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*All. Data Sys. Corp. v. Blackstone Capital Partners V L.P.*,
  963 A.2d 746 (Del. Ch. 2009) ........................................................................... 24

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) .............................................................................. 16

*Beard Research, Inc. v. Kates*,
  8 A.3d 573, 605 (Del. Ch. 2010), *aff'd*, 11 A.3d 749 (Del. 2010) ................... 12

*Bowl-Mor Co. v. Brunswick Corp.*,
  297 A.2d 61 (Del. Ch. 1972), *aff'd*, 297 A.2d 67 (Del. 1972) ......................... 12

*Brown v. Colonial Chevrolet Co.*,
  249 A.2d 439 (Del. Super. Ct. 1968) ................................................................ 25

*Cantor Fitzgerald, L.P. v. Cantor*,
  1998 WL 326686, (Del. Ch. June 16, 1998) ............................................... 10, 26

*Carsanaro v. Bloodhound Techs., Inc.*,
  65 A.3d 618 (Del. Ch. 2013) ............................................................................. 20

*Craftmatic Secs. Litig. v. Kraftsow*,
  890 F.2d 628 (3d Cir. 1989) .............................................................................. 17

*Edinburgh Holdings, Inc. v. Education Affiliates, Inc.*,
  2018 WL 2727542  (Del. Ch. June 6, 2018) ..................................................... 21

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
  2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017) ......................................... 10

*Feresi v. The Livery, LLC*,
  232 Cal. App. 4th 419 (Cal. Ct. App. 2014), *as modified* (Jan. 8, 2015) ........ 22

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
  960 S.W.2d 41 (Tex. 1998) ........................................................................ 10, 26

*In re Abound Solar Mfg., LLC*,
  547 B.R. 611 (Bankr. D. Del. 2016) ............................................................ 10, 26

*In re Commercial Fin. Servs. Inc.*,
  251 B.R. 414 (Bankr. N. D. Okla. 2000) .......................................................... 15

*In re Kids World of Am. Inc.*,
  349 B.R. 152 (Bankr. W. D. Ky. 2006) ............................................................ 14

*In re Lambertson Truex, LLC*,
    458 B.R. 155 (Bankr. D. Del. 2011) ...................................................................... 19

*In re Nat'l Enters. Inc.*,
    128 B.R. 956 (E.D. Va. 1991)................................................................................ 14

*In re UD Dissolution Corp. v. Sphere 3D Corp.*,
    2016 WL 2903224 (D. Utah 2016) .......................................................................... 4

*In re Wayport, Inc. Litig.*,
    76 A.3d 296 (Del. Ch. 2013)................................................................................. 21

*Israel Disc. Bank of New York v. First State Depository Co., LLC*,
    2012 WL 4459802 (Del. Ch. Sept. 27, 2012) *aff'd*, 86 A.3d 1118 (Del. 2014) ................ 10, 14

*Jackson Nat. Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999)............................................................................... 26

*Kors v. Carey*,
    158 A.2d 136 (Del. Ch. 1960)............................................................................... 21

*Krupski v. Costa Crociere S.p.A.*,
    560 U.S. 538 (2010).......................................................................................... 17

*Lank v. Steiner*,
    224 A.2d 242 (Del. 1966) ................................................................................... 21

*Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*,
    245 F. Supp. 3d 639 (D. Del. 2017)........................................................................ 11

*McPadden v. Sidhu*,
    964 A. 2d 1262 (Del. Ch. 2008)............................................................................ 25

*Ohio Corrugating Co. v. Sec. Pac. Bus. Credit, Inc. (In re Ohio Corrugating Co.)*,
    70 B.R. 920 (Bankr. N.D. Ohio 1987) ............................................................... 18, 19

*Oldcastle Precast, Inc. v. VPMC, Ltd.*,
    2013 WL 1952090 (E.D. Pa. May 13, 2013) ....................................................... 24, 25

*Quarum v. Mitchell Int'l, Inc.*,
    2020 WL 351291 (Del. Super. Ct. Jan. 21, 2020) ...................................................... 24

*RLI Ins. Co. v. Indian River Sch. Dist.*,
    556 F. Supp. 2d 356 (D. Del. 2008)....................................................................... 10

*Ruggiero v. FuturaGene, plc.*,
    948 A.2d 1124 (Del. Ch. 2008).............................................................................. 23

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ................................................................................. 23

**Statutes**

11 U.S.C. § 542 ...................................................................................................................... 14

11 U.S.C. § 544 ................................................................................................................. 17, 18

11 U.S.C. § 550 ...................................................................................................................... 18

15. U.S.C. § 78u-4(b)(2)(A) .................................................................................................... 7

Cal. Comm. Code § 1102 ....................................................................................................... 22

Cal. Comm. Code § 1103 ................................................................................................... 22, 23

**Rules**

Fed. R. Civ. P. 15(c)(1)(B) .................................................................................................... 16

Fed. R. Civ. P. 9(b) .................................................................................................................. 9

**Treatises**

5 Collier on Bankruptcy (Alan N. Resnick & Henry J. Sommer
   eds., 16th ed. 2016) ...................................................................................................... 14, 15

Plaintiff, the UD Dissolution Liquidating Trust ("**UD Trust**") submits this Answering Brief in opposition to the motion to dismiss filed by defendants Peter Tassiopoulos, Jason Meretsky, Eric Kelly, Peter Ashkin, Daniel Bordessa, and Vivekanand Mahadevan (the "**Directors**"), Sphere 3D Corp. ("**Sphere**"), V3 Systems Holdings ("**Holdings**"), Overland Storage, Inc. ("**Overland**"), Silicon Valley Technology Partners, Inc. ("**SVTP**" and together with the Directors Sphere, Holdings, Overland, the "**Sphere Defendants**"), and requests that the Court deny the Sphere Defendants' Motion.

## INTRODUCTION

Sphere has been hiding the ball from the beginning of this case. The motions to dismiss have been fully briefed—for years. Yet, the Sphere Defendants take little of what UD Trust said in responding to their prior motions into account, and just regurgitate the same arguments. What this also means is that having previously been called out for excluding huge swaths of the Complaint from their arguments, they continue to fixate on the elements' allegations in the causes of action.

Four distinct events resulted in the need for this Adversary Proceeding:

1.      In March 2014, when Sphere was purchasing the assets of V3 Systems, Inc. ("**V3**") (the predecessor to Plaintiff UD  Trust),[1] Sphere paid a majority of the consideration with Sphere stock and contingent payments, which Sphere and the Directors knew V3 needed to pay its creditors. The rest was paid from money Sphere borrowed from the Cyrus Group ("**Cyrus**") (also not disclosed to V3). V3 later learned Sphere had withheld that it was planning to merge with Overland, and that Sphere had no intention of permitting the contingent payments come to pass. Had V3 known these facts, V3 would not have sold its assets to Sphere, or would have demanded a greater proportion of the consideration be paid up front in cash.

---

[1] The UD Trust is the successor to Debtor UD Dissolution Corp., formerly known as V3 and was created as part of V3's bankruptcy court approved Plan of Liquidation. UD Trust is a creditor and shareholder of Sphere, with over $10 million in claims against Sphere that it has raised in litigation initiated in the Utah bankruptcy court in 2015 that is now before the Court (the "**V3 Litigation**").

2.      After the asset purchased closed, Sphere prevented V3 from selling the shares of Sphere stock it had received by refusing to remove a restrictive legend. After the Directors and other insiders were able to sell some of their stock, and the value of Sphere's stock declined substantially, Sphere reversed itself, removed the restrictive legend, and admitted its prior decision was incorrect. The amount V3 received following this lock out period reduced the total consideration it received for the sale.

3.      Four years after Sphere acquired Overland (for roughly $85 million) in Fall 2018, Sphere sold Overland (now 90% of its assets and revenues) for $45 million to a related party (SVTP) run by Sphere's former CEO Eric Kelly. Cyrus, which had long standing ties to Kelly, was able to convert its predatory loans to Sphere and Overland into equity and significantly cash out. An appraiser with an established business relationship with Cyrus, disregarding Overland's increasing revenue and decreasing losses, and using other questionable techniques, undervalued Overland. This transaction left Sphere, which never had the ability to pay Cyrus' loans, with insufficient assets to satisfy the claims the UD Trust had asserted as part of the V3 Litigation.

4.      From 2014-2020, during the time that Plaintiff was restricted from selling stock, or had stock withheld by Sphere (for which various directors personally were involved in), the various Sphere and Cyrus Defendants benefitted directly or indirectly (through related parties) by selling Sphere stock at a higher price than UD Trust was able to sell its stock.

The sale of Overland to SVTP removed substantially all of Sphere's assets and at least 90% of Sphere's revenue. It benefited a few, select creditors (especially the Cyrus Group), and left Sphere insolvent – incapable of satisfying UD Trust's claims. The Cyrus Group – through director proxies and by other means – exerted sufficient control over Sphere for many years to orchestrate numerous transactions leading up to, and including the sale of Overland, all for its benefit.

The Sphere Defendants' Motion to Dismiss disregards and misapplies the proper pleading standards and ignores numerous pleaded factual allegations that clearly state valid causes of action under the applicable laws. Accordingly, the Court should deny the Sphere

Defendants' Motion and sustain the claims. In the event that the Court dismisses any claims, any dismissal should be without prejudice, with leave for the UD Trust to amend its pleading.

**PROCEDURAL BACKGROUND AND STATEMENT OF RELEVANT FACTS**

As authorized by the United States Bankruptcy Court for the District of Utah, UD Trust is organized under the laws of the State of Nevada, with its principal place of business at Salt Lake City, Utah.  (Am. Compl., ¶ 1.) (Adv. D.I. 18).  The UD Trust is the successor to Debtor UD Dissolution Corp., formerly known as V3 Systems, Inc. (*Id.*) The UD Trust has been a shareholder of defendant Sphere (or the successor in interest to a shareholder of Sphere) at all times since March 21, 2014, when Sphere acquired V3's assets. (*Id.* ¶¶ 9, 65, 67-115.) Over time, FBC and other Cyrus Defendants have amassed controlling stakes of equity and debt in Sphere, reporting holding at least $24.5 million in "secured" loans to Sphere and 16.6% of Sphere's Common Stock, as of May 2018. (*Id.* ¶¶ 144-157.)

As a consequence of various torts and breaches of contract committed in connection with Sphere's purchase of V3's assets, Sphere failed to pay V3 all it was due, and V3 filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, on November 26, 2014. (*Id.* ¶¶ 3, 149.) On April 6, 2015, Sphere and Holdings jointly filed a Proof of Claim No. 26-1 in the Utah Bankruptcy Case in an "undetermined" amount (the "**Sphere/Holdings Claim**").

On July 9, 2015, the Bankruptcy Court entered an Order confirming the Debtor's Plan of Liquidation Dated May 7, 2015 (the "**Plan**"). (Am. Compl., ¶¶ 4-6, Ex. B thereto). Under V3's Plan of Liquidation, all causes of action and claims of V3 and the bankruptcy estate were transferred to the UD Trust, which was given power and authority to prosecute and defend such causes of action. (*Id.* ¶ 7 Plan at ¶ 7.4.)

On October 6, 2015, that the UD Trust commenced an Adversary Proceeding against the Sphere, Holdings and the other Defendants, by filing its Complaint Objecting to Claim No. 26-1 and Seeking Other Relief. (Adv. Pro. 15-02196, D.I. 1.) The UD Trust claimed over $10 million

in damages based upon breach of fiduciary duty, breach of contract, securities fraud, and related claims arising from the V3 Asset Purchase (the "V3 Litigation"). (Am. Compl., ¶ 155.)

Only after UD Trust filed a Motion for Estimation of Claim on October 14, 2015 (Bankruptcy Case No. 14-32546, D.I. 165), did Sphere file an amended Proof of Claim (on November 6, 2015) asserting a general unsecured claim in the amount of $13,051,576, and a secured claim to the extent that Claimants have rights of setoff, offset and/or recoupment as to the Claims asserted by the UD Trust in the Adversary Proceeding. (Claim No. 26-2, Claims Docket in the Bankruptcy Case.) At a November 2015 hearing on the Motion for Estimation of Claim, the bankruptcy court informed the parties that rather than estimate the claims, it would conduct a trial on the merits of the UD Trust Adversary Proceeding in February 2016.

Sphere responded to the potential consideration of the merits of UD Trust's claims by filing a Motion for Withdrawal of Reference to the United States District Court for the District of Utah on December 22, 2015. (Adv. Pro. D.I. 7.) On December 23, 2015, Sphere filed a Motion to Dismiss (Adv. Pro. D.I. 18) and Partial Answer to claims not subject of the Motion to Dismiss (Adv. Pro. D.I. 15), later amended on January 13, 2016 to add a counterclaim (Adv. Pro. D.I. 23).[2]

The Motion to Withdraw the Reference was denied on May 18, 2016 (Adv. Pro. D.I. 34). *In re UD Dissolution Corp. v. Sphere 3D Corp.*, 2016 WL 2903224 (D. Utah May 18, 2016). At a June 27, 2016 status conference, the Utah Bankruptcy Court set the pending Motion to Dismiss for hearing on August 2, 2016, along with a separate Motion to Dismiss filed by Defendants Mario Biasini and Glenn M. Bowman. UD Trust filed its opposition to the motion to dismiss on July 6, 2016. (Adv. Pro. D.I. 40.) On July 22, 2016, Sphere filed a motion to transfer venue of

---

[2] On February 3, 2016, UD Trust filed a Motion to Strike Defendants' Amended Answer and Counterclaim as redundant of the Amended Notice of Claim. (Adv. Pro. D.I. 29.) That motion was fully briefed but not decided before the transfer of venue to Delaware. (Adv. Pro. D.I. 31 and 32.)

the Adversary Case to Delaware. (Adv. Pro. D.I. 46.) It later filed its Reply Memorandum in support of its Motion to Dismiss. (Adv. Pro. D.I. 53.)

The motion to transfer venue was granted by the Bankruptcy Court on August 30, 2016 (Adv. Pro. D.I. 66) and October 4, 2016 Bankruptcy Judge's ruling was adopted by the Utah District Court. (Adv. Pro. D.I. 73.) The case was formally transferred to the Delaware District Court on October 11, 2016. (Case No. 1:16-cv-00923.) The case was assigned to Judge Gregory M. Sleet and sat dormant for almost two years until, on September 20, 2018, the case was reassigned to Judge Colm F. Connolly. On November 13, 2018, Judge Connolly referred the case to the Delaware Bankruptcy Court. (Case No. 1:16-cv-00923 D.I. 20.)

On February 20, 2018, Sphere entered into the Share Purchase Agreement (the "**SPA**") whereby Sphere agreed to sell Overland to SVTP for $45 million (plus or minus any working capital adjustment) in cash. (Am. Compl., ¶ 165.) A publicly available copy of the SPA is attached as Exhibit G to the Amended Complaint. (*Id.*)

The Amended Complaint alleges various acts by Cyrus Defendants, dating back at least as early 2006, whereby Cyrus Defendants gained and exerted control of Sphere and orchestrated a series of transactions including the December 2014 Debenture and the Share Purchase Agreement. These allegations support the UD Trust's claims and withstand Cyrus Defendants' Motion to Dismiss.

## ARGUMENT

Dismissal of the Amended Complaint is improper at this stage of the litigation since the UD Trust alleges sufficient factual matter to state a plausible claim for relief.

## I.     Claims 12-27 Are Adequately Plead.

In their efforts to dismiss what they term the APA-Related Claims, Sphere Defendants conveniently omit key allegations, misstate the pleading standards, and fail to address issues the UD Trust has raised repeatedly. The Motion should be denied.

### a.  The 10b-5 Claim (Claim 23) Meets the Requirements of the Statute.

In their Motion, the Sphere Defendants assert that the 10b-5 must be dismissed on various grounds. Each argument falls apart upon closer inspection.

First, the Amended Complaint meets the "particularity" requirement of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Although the Sphere Defendants again chose to overlook the bulk of the allegations and focus on the summary assertions under the various causes of action, the Amended Complaint has particularized allegations concerning misrepresentations and omissions. For example:

- The Cyrus Group, Sphere, Holdings, Overland, and the Directors were aware of and concealed from V3 that Sphere did not have the financial resources needed to close the APA and pay the cash portion of the Purchase Price and would only be able to do so with $5 million in financing from the Cyrus Group. (Am. Compl., ¶¶ 90-91.)

- V3 was unaware of the Cyrus Group's role as puppeteer. (*Id*.) The Cyrus Group's method of acquiring control of companies, here starting with Tandberg, then Overland, and eventually Sphere, through a series of secured and convertible debt transactions that ultimately rendered the target entities insolvent, while ensuring graceful exits for the Cyrus Group and their favored officers and directors, laid out in detail in the Amended Complaint, also was not disclosed to V3. (Am. Compl., ¶¶ 43-64, 70, 82-83.) The Cyrus Group leveraged its control of Tandberg and Overland to exert control over Sphere, and to facilitate the V3 Asset Purchase by agreeing to lend $5 million to Sphere in convertible loans for the transaction. (Am. Compl., ¶ 66.) This information, which was material and necessary in order to make the statements made to V3 not misleading, was intentionally concealed and omitted from V3 (Am. Compl., ¶¶ 349, 352), or was otherwise required to be disclosed.  (Am. Compl., ¶ 359.)

- After the APA was closed, Defendant Meretsky, on behalf of Sphere, made false representations to V3 in connection with V3's effort to sell a security—V3's Initial Shares. Without any legal basis, Meretsky, Sphere, the Directors, and other representatives of Sphere objected to and refused to cooperate with removal of the restrictive legend they placed on V3's Initial Shares as a ploy to delay V3's right to sell its Initial Shares for their own individual benefit at the expense of V3 and its creditors, without regard for either. (Am. Compl., ¶¶ 119-128.)

- Cyrus had a designee, Bordessa, on Sphere's Board of Directors since the V3 Asset Purchase closed and had a long-standing relationship with Kelly that continued through the events alleged the complaint. (Am. Compl., ¶¶ 54, 91, 116-32, 144-147, 163, 167.) Through Mr. Bordessa, the Cyrus Defendants participated in the duplicitous post-closing efforts of Sphere, Holdings, and the Directors, to thwart the removal of the restrictive

legend on V3's Sphere Stock, all while Mr. Bordessa and other Directors were allowed to sell their personal shares. (Am. Compl., ¶¶ 123-128.)

• The same deceitful conduct drove V3 to a point of financial desperation and induced V3 to enter in to a "leak out" agreement with Sphere. (Am. Compl., ¶¶ 92-94, 135-143.)

• Undisclosed dealings with Overland and Cyrus, issuance of a large quantity of Sphere stock to various Cyrus Defendants, and other material omissions during the negotiations about Overland and the impact on Sphere and the agreement with V3. (Am. Compl., ¶¶ 54, 62, 64, 66, 82, 90-92, 119-28, 135, 144-47, 157, 159-163.)

• Representations made during negotiations concerning the amount of cash Sphere had available to fund V3's Business and meet Sphere's post-closing obligations to support the Earn Out. (Am. Compl., ¶ 90.) Sphere and the Directors also failed to disclose, and intentionally hid from V3, that Sphere and the Directors were motivated to interfere with the Earn Out in part to facilitate the Overland acquisition. And also misrepresentations concerning removal of the restrictive legend. (Am. Compl., ¶¶ 54, 62, 64, 66, 90-92, 101-28, 250-52.)

These allegations easily meet PSLRA's burden of particularized allegations concerning misrepresentations and omissions.

Second, Sphere Defendants assert the UD Trust has failed to allege any misstatement or omission with particularity. The facts alleged regarding the misrepresentations and material omissions do identify a particular speaker, where known, and attribute the statements to "Defendants" or "Directors" generally where they were adopted by the Board of Directors as a group. The UD Trust is still gathering facts and Defendants have not cooperated with the UD Trust's efforts to conduct discovery.

Third, in asserting no scienter, the Sphere Defendants overlook allegations that allege an intent to deceive, manipulate, or defraud, thereby satisfying the 10b-5 scienter requirement. Numerous allegations in the Amended Complaint show "a strong inference that the [D]efendant[s] acted with the required state of mind." 15. U.S.C. § 78u-4(b)(2)(A). Sphere and Cyrus Defendants (through Mr. Bordessa) were aware that V3 needed every penny of the promised cash to pay its debts. In addition to the financial review they performed as part of their

7

own due diligence (Am. Compl., ¶¶ 76-78), Lindstrom told the Directors the state of V3's financial affairs in some detail, including that its debts exceeded the amount of cash it was going to receive from Sphere, provided by the Cyrus Group. (Am. Compl., ¶¶ 88, 91-94.) Peter Tassiopoulos, Sphere's Chief Executive Officer and a Board member at the time, negotiated a purchase price that was to be paid mostly with Sphere stock. (Am. Compl., ¶ 70.) Defendants left undisclosed Cyrus Group's growing ownership and influence over Sphere and Overland, the predatory loans the Cyrus Entities were entering into with Sphere and Overland, thereby setting the stage for further control, Sphere's dealings with Overland and Cyrus Funds, Sphere's inability to uphold its end of the V3 Transaction (or any of the Cyrus Entities' loans), and the undisclosed plan to merge Overland into Sphere then strip it for parts once Sphere could not pay those loans. (Am. Compl., ¶¶ 47-60, 81, 82, 90-94, 144-47, 159-189.) Thus, deception—with "intent to deceive, manipulate, or defraud"—was crucial to get V3 to accept a lower percentage of cash, and has been adequately pleaded. (Am. Compl., ¶ 90.) This is sufficient factual predicate for the allegations that Defendants acted intending to deceive, manipulate, and defraud V3 into agreeing that 73% of the consideration would be deferred and would depend upon the value of Sphere's stock. (Am. Compl., ¶¶ 111, 113, 351-52, 347-348, 351, 354.)

Fourth, the Sphere Defendants proclaim there are no allegations to support economic loss and loss causation, ignoring the numerous allegations regarding the restrictive legend, the Earn-Out, and the "leak out," and that these caused economic loss to V3, necessitating its bankruptcy filing. (Am. Compl., ¶¶ 88, 90-94, 105-49.) Despite assertions to the contrary, the Amended Complaint clearly alleges that the Cyrus Group's predatory lending and control over Overland and Sphere resulted in Overland's and then Sphere's rapid deterioration in value such that the

stocks were on verge of being delisted from NASDAQ. (Am. Compl., ¶¶ 59, 82, 116-29, 161-62, 173, 178-79.)

Fifth, the argument that there is no claim for aiding and abetting or conspiracy to commit a violation of securities law is a straw man. This paragraph (Am. Compl., ¶ 349) explains how Sphere and Directors worked together with the Cyrus Group to make material misstatements and omissions in connection with sale of securities that defrauded and injured V3. It is not an assertion of a separate cause of action.

### b. The UD Trust Stated a Claim for Negligent and Intentional Misrepresentation (Claims 24 and 25).

Sphere Defendants assert two grounds to dismiss claims 24 and 25: (1) they are inadequately pled under Rule 9(b), and (2) the economic loss rule bars such claims. Both melt away under the magnifying glass.

First, Sphere Defendants fixate on element allegations in both claims 24 and 25, ignoring the litany of facts detailing the who, what, when, why, and how of the representations at issue as discussed in detail with regard to the 10b-5 claim. (Am. Compl., ¶¶ 47-60, 81, 82, 90-94, 110-13, 144-47, 159-189 344, 349, 352.)

Second, Sphere Defendants ignore the economic loss rule's important qualifications and exceptions. Although the rule generally prohibits a party from recovering in tort for economic losses where the entitlement flows only from contract, under Delaware law,[3] it does not apply to

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

---

[3] The APA provides that it "will be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the Laws that might otherwise govern under principles of conflict of laws thereof." (Am. Compl., Ex. D § 11.6.)

9

exercise reasonable care or competence in obtaining or communicating the information.

*RLI Ins. Co. v. Indian River Sch. Dist.*, 556 F. Supp. 2d 356, 361 (D. Del. 2008) (internal quotation marks omitted). This fraud exception has been pled with respect to the negligent misrepresentation claim.[4] (Am. Compl., ¶¶ 71-72, 82-94, 110-28, 135-143, 344, 349, 352, 360-63, 365-68.)

Likewise, the economic loss rule does not bar recovery where the breached duty is independent of the contract. *See Israel Disc. Bank of N.Y. v. First State Depository Co., LLC*, 2012 WL 4459802, at *14 (Del. Ch. Sept. 27, 2012), *aff'd*, 86 A.3d 1118 (Del. 2014) (denying defendants' motion to dismiss conversion claim based on economic loss rule). "[T]he legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself[.]" *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998); *accord In re Abound Solar Mfg., LLC*, 547 B.R. 611, 625 (Bankr. D. Del. 2016); *Cantor Fitzgerald, L.P. v. Cantor*, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998). The UD Trust's negligent misrepresentation claim falls squarely outside the scope of the economic loss rule because the claim here is based on an independent duty.[5]

Sphere Defendants essentially argue that their actions in failing to disclose their discussions with Overland, plans to issue a large quantity of Sphere stock to Overland shareholders, and other material omissions about Overland *during the negotiations* were all in

---

[4] Sphere Defendants also cite to *EZLinks Golf, LLC v. PCMS Datafit, Inc.,* 2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017), for the proposition that the economic loss rule also requires that a plaintiff must allege tort damages distinct from contract damages. This is a requirement independent of the economic loss rule. *See id.*, at *6. In any event, Sphere Defendants have not and cannot so allege since the damages associated with the misrepresentation is entering into the contract in the first place, they are necessarily distinct.

[5] The economic loss rule does not apply to the UD Trust's negligent misrepresentation claim as to the Directors since they had no contractual relationship with V3.

10

performance of the contract. This does not make sense. These omissions occurred before there was a contract. They led V3 to believe—incorrectly—that the pricing structure it was considering was based on market factors, and not the product of Defendants' manipulation of the market price of its stock. The same is true of the express representations, also made before there was a contract, concerning the amount of cash Sphere would have available to fund its post-closing obligations. "[I]ntentional torts such as fraudulent inducement have been carved out of the economic loss doctrine." *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 646 (D. Del. 2017). In short, economic loss rule simply does not apply to the UD Trust's misrepresentation claims. Sphere Defendants' attempts to dismiss the intentional and negligent misrepresentation claims necessarily fail.

### c.   Interference Against Sphere Defendants (Claims 20 and 21) Survive.

In their attempt to eliminate the interference claims, Sphere Defendants engage in more sleight of hand. Their three arguments are equally unavailing.

First, they falsely assert that "it is not clear that Delaware recognizes a claim for tortious interference with economic relations if there is no specific contract." No authority for this position is provided. To plead a claim for tortious interference with economic relations under Delaware law, UD Trust must allege:

    (1)    "existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy";

    (2)    about which the interferer knew;

    (3)    an intentional act that is a significant factor inducing or causing a breach or termination of the relationship or expectancy; and

    (5)    resultant damage to the party whose relationship or expectancy has been disrupted.

*See Bowl-Mor Co. v. Brunswick Corp.*, 297 A.2d 61, 65 (Del. Ch. 1972), *aff'd*, 297 A.2d 67

(Del. 1972). The only difference between a claim for interference of economic relations and for

interference of contractual relations is the existence of a contract. *See Beard Research, Inc. v.*

*Kates*, 8 A.3d 573, 605 (Del. Ch. 2010), *aff'd*, 11 A.3d 749 (Del. 2010). Sphere Defendants do

not and cannot contend any of these elements are missing.

Second, Sphere Defendants assert the factual allegations do not "articulate a

comprehensible, much less plausible" claim, that "the UD Trust does not allege interference

with" the Separation Agreement V3 entered into with Mr. Bookman that agreement, and that

Plaintiff "similarly fails to explain *how* the Defendants interfered with any of V3's economic

relationships." Once again, Sphere Defendants ignore the allegations as pleaded. The Amended

Complaint alleges that Defendants interfered with V3's efforts to settle claims with Mr.

Bookman in the Anderer Lawsuit, extracting onerous conditions in the leak out agreement after

preventing V3 from selling its shares in Sphere. (Am. Compl., ¶¶ 72, 107, 116-27, 133-34, 138,

329-31 (alleging valid business relation or expectancy about which the interferer knew.)) This

interference was alleged to be intentional and without justification. (Am. Compl., ¶¶ 133-34.)

Using the Anderer Lawsuit to suborn perjury and their knowledge that V3 was in dire economic

straits, Defendants interfered "under threat of withholding liquidity from V3 and premised upon

false, pretextual claims of interference with the Bookman employment arrangements under

Section 8.10 of the APA." (Am. Compl., ¶¶ 94, 127, 332-33, 335)[6] The Amended Complaint

---

[6] Sphere and Overland contend they could not have interfered with their own contract. This proposition is inapposite. The UD Trust has stated a claim for two reasons. First, their contention misapprehends the allegations against Sphere and Overland—that the employment arrangements Sphere reached with Bookman were a direct result of their meddling in the Anderer Lawsuit. Second, this necessarily means that the rest of the Sphere Defendants could interfere with the APA.

puts Sphere Defendants on notice of their acts of interference with V3's economic relationship with Mr. Bookman. V3 was damaged "by being placed at a disadvantage in negotiations with Bookman," (Am. Compl., ¶ 336 (alleging interference)), and by "being forced to expend attorney's fees, dispute costs, and possibly excess payments to Bookman." (*Id.*)

There is no doubt that the Amended Complaint alleges V3 was entitled to sell its Sphere Stock in July 2014, and tried to. (Am. Compl., ¶¶ 114, 118.) At the time, Sphere's shares had increased in value and, if liquidated, would have provided sufficient funds for full payment of all V3's creditor claims, administrative expenses in its wind-up and dissolution—and also provide a significant return to V3's shareholders. (Am. Compl., ¶¶ 131-32, 135-37.) As had been discussed during the negotiations and planned all along, V3 sent one of its stock certificates to the transfer agent for removal of the restrictive legend. (Am. Compl., ¶¶ 114, 118.) Defendant Meretsky, Sphere's legal counsel and member of Sphere's Board of Directors, interfered with that transaction with an outright lie. (Am. Compl., ¶¶ 114, 118-26, 139-41, 340.)

Sphere Defendants' argument that Claim 21 is just a recasting of a breach of contract claim requires the Court to view Defendants' duplicitous efforts to thwart the removal of the restrictive legend on V3's Sphere Stock as simply performance of the contract. Rather, such conduct, as alleged, evidences intentional tort claims—for fraud, interference, breach of fiduciary duties. Further, the allegations of such conduct, even if only negligent, is actionable outside of the performance of the contract. This is because the *duties* allegedly violated here arise independent of the contract and sound in tort. The Motion should be denied.

### d. Constructive Conversion (Claim 22) is Properly Asserted.

Sphere Defendants raise two objections to Constructive Conversion, neither of which have merit. First, Sphere Defendants baldly assert that "this claim is barred by the economic loss rule." Their lack of citation to authority is likely because "[n]o Delaware court ever has barred a

13

claim for conversion based upon the economic loss doctrine." *Israel Disc. Bank of N.Y.*, 2012 WL 4459802, at *14 (internal quotation marks omitted).

Second, the Directors' perceived lack of control over V3's property overlooks allegations regarding their dominion and control over the Sphere stock at issue. (Am. Compl., ¶¶ 113-27, 284, 301, 312, 317.) The Motion should be denied.

### e. Turnover Claims 12 (Earn-Out) and 13 (Holdback) are Proper.

Under the Bankruptcy Code, an action to compel an entity to turn over to the trustee (or its equivalent) a debt that is "property of the estate and that is matured, payable on demand, or payable on order." 11 U.S.C. § 542(b). Sphere Defendants make several arguments against these claims, none of which are availing.

First, Sphere Defendants baldly assert that turnover under 11 U.S.C. § 542 cannot lie "when the ownership of the asset is in dispute." To the contrary, "an action may be a turnover proceeding even if the defendant disputes the validity or existence of the debt, as long as the . . . allegations state the existence of a mature debt." 5 Collier on Bankruptcy ¶ 542.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) (internal quotation marks omitted). The fact that Defendants dispute these allegations does not change the character of this claim as involving a matured debt. *See In re Kids World of Am. Inc.*, 349 B.R. 152, 163 (Bankr. W. D. Ky. 2006) ("The fact that a defendant may deny the existence of a debt is irrelevant as long as . . . allegations state the existence of a mature debt." (internal quotation marks omitted)); *In re Nat. Enters. Inc.*, 128 B.R. 956, 959 (E.D. Va. 1991) ("[F]or an action to be a turnover proceeding, it is not relevant that the defendant disputes the existence of the debt by . . . denying the complaint's allegations, as long as those allegations state the existence of a mature debt."). This is because § 542(b) "is clear and unambiguous that the debt need only be matured, payable on

14

demand, or payable on order—it contains no requirement that the debt be undisputed or liquidated." *In re Commercial Fin. Servs. Inc.*, 251 B.R. 414, 423 (Bankr. N. D. Okla. 2000).

Second, Sphere asserts that turnover is inappropriate as to the Directors "because the Directors do not possess or control the property at issue." UD Trust's claims are based upon the acts of Directors and their control of Sphere. While pursuing a corporation's directors to turnover property the entity controls may not always be necessary, it is here. The Amended Complaint is replete with allegations of the Directors' interference with V3's efforts to achieve the Earn-Out, have the restrictive legend removed, and refusing to release the Holdback Shares at the time and under the conditions required by the APA. (Am. Compl., ¶¶ 113-27, 284, 301, 312, 317.) Under these circumstances, ordering the Directors of Sphere to turnover the value of the maximum Earn-Out Amount of $5 million payable either by Earn-Out Shares or in cash and turnover of the Holdback Shares is justified.

Third, there also is a contractual basis for holding the Sphere Defendants responsible for their efforts to reduce the amount of the Earn-Out to be paid to V3. The APA's Section 4.3(e)(iii) provides a mechanism for V3 to be deemed to have earned and achieved the maximum amount of the Earn-Out amount, as if during the Earn-Out Period the business had achieved Earn-Out revenue equal to $12.5 million. As alleged, the conditions for the maximum Earn-Out amount exist, and the maximum amount of the Earn-Out Amount due to V3 is payable either by Earn-Out Shares or in cash. (Am. Compl., ¶¶ 276-280.) The same is even more true for the Holdback Shares as a turnover action. In addition to the mature debt aspect, Defendants essentially hold the Holdback Shares in trust for UD Trust. Monies held in trust or in escrow commonly are considered to be included within Section 542's turnover power. *See* 5 Collier on Bankruptcy ¶ 542.03. The Motion should be denied.

15

### f. The UD Trust Has Stated APA-Related Claims Against Overland (Claims 20-23, 26).

In their Motion, Overland asserts two reasons it should be dismissed from the APA-related claims. Both fall flat upon close inspection.

First, Overland asserts the claims against it are time barred because the complaint was originally filed on October 6, 2015 did not include Overland. This argument neglects to address the fact that an amended complaint relates back to the date of an earlier pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). There are

> three distinct prerequisites for an amendment to relate back to the original complaint: (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity.

*Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006). All three are present here. As for the first, the allegations against Overland in the Amended Complaint are based on the same facts and alleged misrepresentations asserted against the remaining Sphere Defendants for which now the UD Trust asserts against Overland. The second is met as well. Mr. Bordessa and Mr. Kelly were defendants in the original complaint and who were alleged to have served on both Sphere's and Overland's board. (Compl., ¶¶ 15, 18, 50.) In addition, as a wholly owned subsidiary of Sphere (Am. Compl., ¶ 21), Overland was well aware of the claim in 2015. Moreover, the UD Trust brought a complaint against them in the Northern District of California on March 28, 2018 for this same claim. (*See* Manwaring Decl., Ex. A). Undoubtedly Overland was on notice by then. As for the third,

16

> a plaintiff might know that the prospective defendant exists but nonetheless harbor
> a misunderstanding about his status or role in the events giving rise to the claim at
> issue, and she may mistakenly choose to sue a different defendant based on that
> misimpression. That kind of deliberate but mistaken choice does not foreclose a
> finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549 (2010). This is what occurred here.

Second, Overland asserts that there are no individualized allegations against it and, without authority, asserts this entitles Overland to a dismissal. This also is wrong – on both counts. Overland overlooks a plethora of allegations regarding its involvement from the beginning of the events described in the case that relate to fraudulent inducement to enter into the APA, the securities fraud, interference claims, conversion, and unjust enrichment. (Am. Compl., ¶¶ 15, 18, 47-64, 66, 72, 82-83, 90, 108-32.) Besides, "courts have relaxed the rule [9(b)] when factual information is peculiarly within defendant's knowledge or control." *Craftmatic Secs. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).

## II.     The UD Trust Has Stated Claims for Fraudulent Transfers (Claims 7-8, 14) Under Federal and State Law.

In their Motion, Sphere Defendants assert a series of reasons why the UD Trust cannot unwind the APA, the December 2014 Debenture, and the SPA. Each of them falls flat.

First, they argue that the claim cannot succeed because Sphere is not in bankruptcy. While section 544 refers specifically to avoidance of "any transfer of *property of the debtor* or any obligation incurred by the debtor," 11 U.S.C. § 544(a) (emphasis added), it does not expressly limit that actions may be brought only against a debtor in bankruptcy. After all, the through line of the Amended Complaint is that Sphere was rendered judgment proof as to the UD Trust's claims against Sphere due to Defendants' conduct. Those legal claims, and the money judgment that would result, is the property of the V3 bankruptcy estate at issue. Sphere Defendants cite no authority to support their blinkered view of the statute.

17

Second, Sphere Defendants claim the UD Trust cannot state a claim under § 544(b) to avoid the APA because it has failed to allege that V3 was insolvent. This ignores the allegations that clearly indicate the precarious financial state of V3 at the time was negotiating and entered into the APA, V3 was desperate for the deal to come to fruition as promised so that V3 could pay off its creditors, and that without being able to quickly sell the Initial Shares and receive the million Earn-Out funds, V3 had no hope of paying its debts. (Am. Compl., ¶¶ 71, 78, 88, 92-94, 213, 300, 306.)

Likewise, with respect to Sphere, there are ample facts alleged to support the element that Sphere is insolvent and/or rendered insolvent due to the SPA, including "Since entering into its loans with the Cyrus Group, Sphere has consistently been unable to make payments due on the loans as they have become due" such that from June 2014 to the present Cyrus Group "accept[ed] transfers of equity from Sphere in lieu of interest payments." (Am. Compl., ¶¶ 158-59.) Indeed, that is exactly why the December 2014 Debenture got rolled up into the SPA.

Third, Sphere Defendants also assert 11 U.S.C. § 550(a) prevents a claim against the Directors because there is no allegation that any of them received the transfers at issue. To the contrary, that section provides for recovery of an avoided fraudulent transfer from not only the initial transferee of the transfer, but also from "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). A fraudulent transfer may be recovered from an officer, shareholder, or director who acted other than in the normal course of business, not just individuals who are guarantors or whose personal debts were paid by the transfer. In *Ohio Corrugating Co. v. Security Pacific Business Credit, Inc.* (*In re Ohio Corrugating Co.*), 70 B.R. 920 (Bankr. N.D. Ohio 1987), the court denied a motion for summary judgment brought by an individual officer and shareholder with respect to a fraudulent transfer claim. The court held that

the officer and shareholder could be an "entity for whose benefit the transfer was made" if the individual "acted outside the normal course of business" of the entities for which he was an officer and shareholder. *Id.* at 925. This is because a "transferee" is whomever has "dominion and control" over transferred property. *See, e.g., In re Lambertson Truex, LLC*, 458 B.R. 155, 158 (Bankr. D. Del. 2011).

In the present case, the Amended Complaint contains numerous allegations that the Directors acted for their own personal benefit and outside the normal course of business throughout the transaction in question. (Am. Compl., ¶¶ 123-126, 250-52.) The Amended Complaint contains allegations of omissions relating to the Cyrus Group, Overland and other material facts, all while Cyrus had a designee, Defendant Bordessa, on Overland's and Sphere's Boards of Directors, was heavily invested in Overland, and had repeated dealings with Defendant Eric Kelly, an officer, member (and chairman) of Sphere's Board of Directors, and an officer and a director of Overland. (Am. Compl., ¶¶ 15, 18, 91, 115-16, 144-45, 177, 180).

UD Trust seeks to avoid and recover from the Directors not simply because they were directors of Sphere. Rather, it is seeking to recover from the Directors as entities for whose benefit the transfer was made because of the pervasive actions the Directors took for their own personal benefit. A claim for avoidance of a constructively fraudulent transfer against both Sphere and the Directors has been stated. The Court should deny the Motion.

### III.    Breach of Fiduciary Duty (Claim 9) is Adequately Plead.

The Sphere Defendants' make four arguments against the UD Trust's breach of fiduciary duty claim. Each are inapposite.

First, it is properly brought as a direct, rather than a derivative, action. The Sphere Defendants offer no authority for the proposition that a claim for aiding and abetting a breach of fiduciary duty claim brought by a shareholder of a Canadian corporation is a derivative action.

19

> To determine whether a claim is derivative or direct, this Court must consider (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)? Although each question is framed in terms of exclusive alternatives (either the corporation or the stockholders), some injuries affect *both* the corporation *and* the stockholders. If this dual aspect is present, a plaintiff can choose to sue individually.

*Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 655 (Del. Ch. 2013) (abrogated on other grounds).  The answer to both questions favors direct action.

Here, the injury at issue in this action clearly is an injury to the UD Trust—an individual shareholder—and not to the corporation as a whole. The UD Trust's status as a creditor ultimately arose from the UD Trust becoming a shareholder of Sphere by virtue of the 2014 Asset Purchase, as well as from the Sphere Defendants' tortious conduct toward it. Sphere's failure to perform under that agreement resulted in the UD Trust suffering damages exclusive to V3. For example, the Amended Complaint alleges that the Directors dumped the stock for personal benefit while V3 was prevented from selling due to the restrictive legend that was improperly maintained.

Besides, Canadian law—including any OBCA compliance requirements—are inapplicable. Section 10.7 of the SPA makes clear that the agreement "shall be governed by and construed in accordance with the laws of the State of California, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof." (Am. Compl., Ex. G.) Likewise, the APA provides in section 11.6 that it "will be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the Laws that might otherwise govern under principles of conflict of laws thereof." (Am. Compl., Ex. D.) Sphere Defendants offer no authority why a breach of fiduciary duty is a derivative action under California or Delaware law, either. Nor can they for the first time in their reply brief.

Second, Sphere Defendants' argument that the Directors cannot have violated any fiduciary duty because they weren't board members at the time blithely ignores the factual allegations. The Amended Complaint points to breaches that occurred after March 21, 2014 when V3 obtained shares in Sphere. For example, the intentional and bad faith interference with V3's rights under the APA to freely trade its Initial Shares and to achieve the Earn Out all occurred after March 21, 2014. (Am. Compl., ¶¶ 116-32.)

Third, the Directors claim their breaches of fiduciary duty are merely breaches of contract, pointing to *Edinburgh Holdings, Inc. v. Education Affiliates, Inc.,* 2018 WL 2727542, at *15 (Del. Ch. June 6, 2018). Once again, this ignores that factual allegations actually pled that relate to misrepresentations, omissions, and outright falsehoods perpetrated by the Directors before and after the APA was entered into. (Am. Compl., ¶¶ 71-72, 82-94, 110-28, 135-143, 340, 344, 349, 352, 360-63, 365-68.) Perhaps more fundamentally, this argument makes no sense, since they were not parties to the APA, the allegations of breaches of duties against them cannot be subsumed into the contract.

Fourth, Sphere Defendants argue that while they owe fiduciary duties to shareholders as a whole, they do not owe a fiduciary duty to any one shareholder, like V3, citing *Kors v. Carey*, 158 A.2d 136, 143 (Del. Ch. 1960). Conveniently omitted is the exception within *Kors*, that applies "when a director is possessed of special knowledge of future plans or secret resources *and* deliberately misleads a stockholder who is ignorant of them." *Lank v. Steiner*, 224 A.2d 242, 244 (Del. 1966) (emphasis added).. If this standard is met, the director has a duty to disclose, and the director can be held liable for failing to impart material information. *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 315 (Del. Ch. 2013). That is precisely what is alleged here with respect to

the Overland Acquisition, for example. The UD Trust's breach of fiduciary claim states a

plausible cause of action and should be sustained.

### IV.    UD Trust States a Claim for Equitable Subordination (Claim 11).

In an effort to dismiss the Equitable Subordination claim against them, Sphere

Defendants make arguments that fail to hold up to scrutiny. Sphere's failure to file for

bankruptcy in no way precludes the UD Trust's equitable subordination claim. Sphere

Defendants offer nothing to support their bald assertions. Even if they had authority to bolster

their argument, it would be improper to dismiss the equitable subordination claim on this ground

because the claim is clearly predicated on both the Bankruptcy Code and the Uniform

Commercial Code. (Am. Compl., ¶ 268.)

Nothing in Cal. Comm. Code § 1103(b) of the California Commercial Code or elsewhere

expressly limits a party from bringing a state law equitable subordination claim outside of the

context of "claims brought pursuant to the Commercial Code." While another section states

"[t]his division applies to a transaction to the extent that it is governed by another division of this

code," Cal. Comm. Code § 1102, the SPA was clearly governed by the Commercial Code,

among other California and federal laws. For example, sections 2.20 and 3.7 of the SPA provide,

in the relevant part, "EXCEPT AS SET FORTH IN THIS ARTICLE II and ARTICLE III,

NEITHER SELLER NOR THE ACQUIRED COMPANY MAKES ANY REPRESENTATION

OR WARRANTY, EXPRESS OR IMPLIED (INCLUDING THOSE REFERRED TO IN THE

UNIFORM COMMERCIAL CODE[.]" (Am. Compl., Ex. G.)

Equitable subordination "has deep common law roots." *Feresi v. The Livery, LLC*, 232

Cal. App. 4th 419, 427 (Cal. Ct. App. 2014), *as modified* (Jan. 8, 2015). The Uniform

Commercial Code plainly states it shall be "liberally" construed and applied to promote

underlying purposes and policies "(1) to simplify, clarify, and modernize the law governing

commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and (3) to make uniform the law among the various jurisdictions" Cal. Comm. Code § 1103(a) (emphasis added).

Here, numerous allegations about various commercial transactions, including the SPA and December 2014 Debenture, are at the heart of the Amended Complaint. Cyrus Defendants' attempt to dismiss the equitable subordination claim is unavailing since Sphere Defendants do not (and cannot) make any showing, other than inadequately vague conclusions, of why the UD Trust's allegations about these commercial transactions are insufficient to state a claim for equitable subordination under the liberal pleading standards of the Federal Rules.

The Amended Complaint states a plausible cause of action for equitable subordination, which withstands Sphere Defendants' attempted dismissal.

## V.    Breach of Contract Claims (Claim 15-19) are Proper as to Directors.

Sphere Defendants assert the breach of contract claims cannot lie against the Directors because they are not parties to the contracts at issue. There are two reasons the Directors should not be dismissed from the breach of contract claims.

First, as recognized in the cases Sphere Defendants cited, officers of a corporation can be liable on corporate contracts when they purport to bind themselves individually. *See Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).

Here, the Directors purport to bind themselves individually under the APA provisions at issue to a negative covenant.[7] The breach of contract claims pleaded are based upon a contractual provision that binds the Directors. Section 4.3(e)(iii) of the APA precludes actions to reduce the amount of the Earn Out to be paid to V3, and to reduce the operational ability of the "Business" that Sphere took over. This section binds Purchaser, defined as Holdings, Sphere, and "of their respective Affiliates or successors." An "Affiliate" is defined to include individuals who "directly or indirectly" control the corporate entities—specifically, those who "direct or cause the direction of the management and policies of" the entity.[8] APA § 1.1 (definitions of "Affiliate" and "Person"). The UD Trust alleges that the Directors come within the definition of Affiliates through conduct whereby they undertook affirmative steps that prevented V3 from realizing the Earn-Out Shares. (Am. Compl., ¶¶ 74, 86, 90, 93, 101-02, 125, 188, 271-81, 296-305.)

Second, Directors should not be dismissed from the breach of contract claims is the potential applicability of the participation theory of liability. "Participation theory, in simple terms, is a theory which imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation." *Oldcastle Precast, Inc. v. VPMC, Ltd.*, 2013 WL 1952090 at *14 (E.D. Pa. May 13, 2013). Under Delaware law, officers of corporations are liable on corporate contracts if they act and purport to bind themselves

---

[7] Delaware law makes a "distinction between affirmative covenants and negative covenants. The former requires the bound party to take action, while the latter forbids action. Because liability from a negative covenant only arises from action, allegations that the bound party failed to do certain things cannot state a breach of a negative covenant." *Quarum v. Mitchell Int'l, Inc.*, 2020 WL 351291, at *3 (Del. Super. Ct. Jan. 21, 2020) (footnotes omitted) (citing *All. Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 766 (Del. Ch. 2009)).

[8] If not apparent that the Board of Directors controls "the direction of the management and policies of" corporation, the APA specifically provides that performance of the APA "has been duly authorized by the Board of Directors of Purchaser and Sphere 3D." APA § 7.2.

individually. *See Brown v. Colonial Chevrolet Co.*, 249 A.2d 439, 441 (Del. Super. Ct. 1968). As discussed above, the UD Trust has alleged just that.

Here, the facts as pleaded establish that the Directors personally took part in the actions constituting the breaches of the APA pleaded in Claims 15-19. They "took actions that avoided or reduced the Earn-Out Payments and reduced the operational ability of the Business to achieve the maximum Earn-Out Revenue." (Am. Compl., ¶ 301). They "failed to take agreed upon actions to support the Earn-Out covenant." *Id*. Those actions included, among other things, not funding or staffing the operation of V3's Business in a manner consistent with the covenants in the APA, or maintaining V3's Business as an independent stand-alone business unit. (Am. Compl., ¶ 113.) They also breached the provisions relating to removal of the restrictive legend (Am. Compl., ¶¶ 114-21, 312), and refusing to release the Holdback Shares at the time and under the conditions required by the APA. (Am. Compl., ¶¶ 317.)

These are but allegations at the earliest stages of litigation. Rather than dismissing for any lack of precision, this Court should adhere to the ruling in *Oldcastle*, 2013 WL 1952090 at *15, and allow UD Trust the opportunity to develop this issue in discovery. Accordingly, the Court should reject Sphere Defendants' argument that the Directors cannot be liable for any breach of contract claims.

## VI.    UD Trust States Unjust Enrichment (Claim 26) Against Sphere Defendants.

In an effort to avoid the unjust enrichment claim against them, Sphere Defendants assert several defenses, each of which fall flat. First, they argue the existence of the APA precludes an unjust enrichment claim. This is not a per se rule, and may be pled alternatively at the pleadings stage. *See McPadden v. Sidhu*, 964 A. 2d 1262, 1276 (Del. Ch. 2008).  But more importantly, the enrichment alleged in this claim—V3's "transferring [of] its valuable assets having a transaction

value of $14.7 million," (Am. Compl., ¶ 370)—did not arise from the APA itself but, rather,

arose out of Defendants' fraudulently inducing V3 to enter into the APA under false pretenses.

UD Trust clearly alleges this in the Amended Complaint, alleging that "V3 . . . was . . . induced

to enter into and perform the APA," based on various misrepresentations and omissions. (Am.

Compl., ¶¶ 82, 90, 110-13, 344, 349, 352, 360-63, 366-67.) "[T]he legal duty not to fraudulently

procure a contract is separate and independent from the duties established by the contract itself."

*Formosa Plastics Corp. USA*, 960 S.W.2d at 46; *accord In re Abound Solar Mfg., LLC*, 547 B.R.

at 625; *Cantor Fitzgerald, L.P.*, 1998 WL 326686, at *6. Since the enrichment arose from their

breach of this independent duty and not from the contractual provisions themselves, Sphere

Defendants cannot use the APA to shield themselves against the unjust enrichment claim.

      Nor can the existence of the breach of fiduciary duty claim save Sphere Defendants. In

*Jackson National Life Insurance Co. v. Kennedy*, 741 A.2d 377 (Del. Ch. 1999), a corporation

and its preferred stockholder sued the corporation's former president and sole director of the

corporation and other entities, alleging breach of fiduciary duty, aiding and abetting breach of

fiduciary duty, and unjust enrichment. *Id.* at 381. Addressing defendants' argument that plaintiffs

failed to state a claim for unjust enrichment, the court held that, because plaintiffs sufficiently

pleaded an aiding and abetting/breach of fiduciary duty claim, "it [was] axiomatic that

[p]laintiffs . . . likewise pleaded sufficiently the allegations that [d]efendants were enriched by

their actions, to the impoverishment of [plaintiffs]." *Id.* at 394. The court also noted that, "[i]f

[p]laintiffs succeed on the merits of their breach of fiduciary duty and aiding and abetting claims,

it is likely they will also be able to prove that [neither defendant] can retain any benefit resulting

from the disputed transaction 'justifiably' or in accordance with 'the fundamental principles of

justice or equity and good conscience.'" *Id.* at 394. The Motion should be denied.

## VII.    The 27th Claim is Properly Asserted.

Without citation to any authority, Sphere Defendants contend that the 27th claim fails because it "is a type of relief, not a separate cause of action." Even if true, this could easily be remedied by amendment through folding in injunctive relief into various causes of action where appropriate. More importantly, Sphere Defendants conveniently overlook the fact that the plain language of the APA foresees and validates the UD Trust's right to plead for injunctive relief, stating that, "Notwithstanding anything else set forth in this Section 11.8, <u>in the event that a Party breaches this Agreement, any non-breaching party may apply to a court of competent jurisdiction for emergency injunctive relief</u> during or prior to the invocation of the dispute resolution procedures set forth in this Section 11.8." (Am. Compl., Ex. D (emphasis added).) The SPA provides similar rights to Sphere (of which UD Trust is a shareholder), Overland, and SVTP. (Am. Compl., Ex. G §§ 10.6, 10.7.)

Next, the Sphere Defendants imply injunctive relief is no longer available because the UD Trust has yet to file a Rule 65 motion since the original complaint was filed. This overlooks the procedural history of this case, where Sphere Defendants fought to have the referenced removed when the adversary proceeding was pending before Bankruptcy Court for the District of Utah, fought to have the case transferred to the District Court for the District of Delaware, that Defendants filed Rule 12 motions to dismiss that sat pending before the District Court for years before being transferred to the Court. Even if true, this argument is premature and is more appropriately made at a later date. Accordingly, dismissal of the 27th claim is inappropriate.

## VIII.   UD Trust Has Stated Claims against Directors Bordessa and Mahadevan.

Sphere Defendants claim that Bordessa and Mahadevan should be dismissed from the case before they joined Sphere's board in December 2014. This ignores the fact that the Amended Complaint states that Mr. Bordessa was on the board of Sphere from December 2014

to December 2016 and on Overland's Board in March 2014 (Am. Compl., ¶¶ 18, 145, 115-16), while Mahadevan was on Overland's Board since 2012 and has been on Sphere's since December 2014. (Am. Compl., ¶ 19.) More importantly, this argument sidesteps the myriad of ways, after each joined the boards of Overland and Sphere, that those companies (through their boards) colluded to harm V3 and how they had direct knowledge of V3's precarious financial condition. (Am. Compl., ¶¶ 50-66, 82-94, 115-117, 123-32, 144-146, 157-180.) The Court should deny the Motion as to Bordessa and Mahadevan.

## CONCLUSION

Based on the foregoing, the UD Trust alleges sufficient facts to state a plausible claim for relief against each and every one of the Sphere Defendants. The Court should therefore deny their Motion to Dismiss.

DATED: May 6, 2020
   Wilmington, Delaware

           **MORRIS JAMES LLP**

           /s/  *Albert H. Manwaring, IV*
*Of Counsel*:         Albert H. Manwaring, IV (DE Bar No. 4339)
**FABIAN VANCOTT**      500 Delaware Avenue, Suite 1500
Kevin N. Anderson      Wilmington, DE 19801
215 South State Street, Suite 1200  Telephone: (302) 888-6868
Salt Lake City, UT 84111    Facsimile:  (302) 571-1750
Telephone: (801) 531-8900   E-mail: amanwaring@morrisjames.com
Facsimile: (801) 59602814
E-mail: kanderson@fabianvancott.com *Attorneys for Plaintiff UD Dissolution*
           *Liquidating Trust*