IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UD DISSOLUTION CORP. | ) | |
|     (f/k/a, V3 Systems, Inc.) | ) | |
| | ) | Utah Bankruptcy Case |
|     Debtor. | ) | No. 14-32546 |
| | ) | |
| _____ | ) | |
| | ) | |
| UD DISSOLUTION LIQUIDATING | ) | |
| TRUST, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Misc. Pro. |
| | ) | No.: 18-00102 (MFW) |
| SPHERE 3D CORP., V3 Systems | ) | |
| HOLDINGS, INC., PETER TASSIOPOULOS, | ) | |
| JASON D. MERETSKY, ERIC L. KELLY, | ) | |
| PETER ASHKIN, MARIO BIASINI, GLENN | ) | |
| M. BOWMAN, DANIEL J. BORDESSA, | ) | |
| VIVEKANAND MAHADEVAN, OVERLAND | ) | |
| STORAGE, INC., SILICON VALLEY | ) | |
| TECHNOLOGY PARTNERS, LLC, CYRUS | ) | |
| CAPITAL PARTNERS, L.P., FBC | ) | |
| HOLDINGS, S.A.R.L., CRESCENT 1, | ) | |
| L.P., CRS MASTER FUND, L.P., CYRUS | ) | |
| OPPORTUNITIES MASTER FUND II, LTD., | ) | |
| CYRUS SELECT OPPORTUNITIES MASTER | ) | |
| FUND II, LTD., CYRUS CAPITAL | ) | |
| PARTNERS GP, L.L.C., CYRUS CAPITAL | ) | |
| ADVISORS, L.L.C., STEPHEN C. | ) | |
| FREIDHEIM, and JOHN DOES I-X, | ) | Rel. Docs. 18, 23, 28, |
| | ) | 33, 42, 45, 46, 56, |
|     Defendants. | ) | 59, 60 |

**<u>MEMORANDUM OPINION</u>**

TABLE OF CONTENTS

I.   BACKGROUND                                              1
II.  JURISDICTION                                            7
III. DISCUSSION                                              9
     A.   Personal Jurisdiction                             9
          1.   Standard of Review                           9
          2.   Application                                 12
               a.   minimum contacts                       12
               b.   fair and reasonable                    16
     B.   Statute of Limitations                           18
     C.   Failure to State a Claim                         20
          1.   Standard of Review                          20
               a.   Rule 12(b)(6)                          20
               b.   Rule 9(b)                              21
          2.   Application                                 22
               a.   Counts 7 and 8: Fraudulent Transfer
                    Counts                                 22
                    i.   Under the Bankruptcy Code         22
                    ii.  Under applicable state law        24
                         a.   Actual fraud                 26
                         b.   Constructive fraud           30
               b.   Counts 9 and 10: Breach of Fiduciary
                    Duty/Aiding and Abetting Such Breach   32
                    i.   No fiduciary duty                 32
                    ii.  Duplicative of contract claims    33
                    iii. Special circumstance rule         35
                    iv.  Prior approval                    36
                    v.   Rule 9                            39
               c.   Count 11: Equitable Subordination      40
               d.   Counts 12 and 13: Turnover             43
               e.   Count 14: Constructively Fraudulent
                    Transfer                               47
                    i.   Applicable state law              47
                    ii.  Insolvency                        47
                    iii. Benefit to the Defendants         48
                    iv.  Duplicative of contract claims    49
               f.   Counts 15-19: Breach of Contract       50
               g.   Count 21:  Interference with Contractual
                    Relations                              52
                    i.   Sphere Defendants                 53
                    ii.  Cyrus Defendants                  55
               h.   Count 20: Interference with Existing
                    Economic Relations                    56
               i.   Count 22: Constructive Conversion      59
               j.   Count 23: Securities Fraud             62
                    i.   Cyrus Defendants                  63

|  |  | a. | Vicarious Liability | 63 |
|  |  | b. | Liability for APA misrepresentations | 65 |
|  |  | c. | Aiding and abetting | 66 |
|  | ii. | All Defendants |  | 67 |
|  |  | a. | Specificity | 67 |
|  |  |  | 1. Misrepresentation | 68 |
|  |  |  | 2. Scienter | 72 |
|  |  |  | 3. Loss causation | 74 |
| k. | Counts 24 and 25: Negligent and Intentional Misrepresentation |  |  | 76 |
| l. | Count 26: Unjust Enrichment |  |  | 79 |
|  | i. | Duplicative of contract claim |  | 79 |
|  | ii. | No benefit received |  | 81 |
| m. | Count 27: Injunctive Relief |  |  | 82 |
| n. | Claims against Stephen Freidheim |  |  | 84 |
| IV. CONCLUSION |  |  |  | 85 |

Before the Court are Motions by numerous Defendants to Dismiss several Counts of the Amended Complaint filed by UD Dissolution Liquidating Trust (the "Plaintiff").  For the following reasons, the Court will grant in part and deny in part the Motions to Dismiss.

I.   BACKGROUND[1]

The Amended Complaint asserts various contract, tort, and equitable claims against the Defendants for actions related to the sale of the assets of V3 Systems, Inc. ("V3") to V3 Systems Holdings, Inc. ("Holdings") and its parent, Sphere 3D Corporation ("Sphere"), and the subsequent transfer of the V3 business to Overland Storage, Inc. ("Overland") and ultimately to Silicon Valley Technology Partners ("SVTP").  These transactions were allegedly orchestrated by the Cyrus Defendants[2] through a series of transactions involving the other Defendants.[3]  (D.I. 18 at ¶

---

[1]   The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Instead, the facts recited are those averred in the Amended Complaint, which must be accepted as true for the purposes of these Motions to Dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2]   The Cyrus Defendants are Cyrus Capital Partners, L.P., Cyrus Select Opportunities Master Fund, Ltd., Cyrus Capital Partners GP, L.L.C., Cyrus Capital Advisors, L.L.C., Crescent 1, L.P., CRS Master Fund, L.P., Cyrus Opportunities Master Fund II, LTD.,  FBC Holdings, S.A.R.L., and Stephen Cyrus Freidheim.

[3]   The other Defendants include Peter Tassiopoulos, Jason D. Meretsky, Eric L. Kelly, Peter Ashkin, Mario Biasini, Glenn M.

43.)[4]  The Cyrus Defendants began this scheme with their
acquisition of Tandberg Data Holdings S.a.r.l. ("Tandberg") in
2009.  (Id. at ¶ 45.)  In 2013, the Cyrus Defendants gained
control of Overland, through a series of loans, and caused
Overland to acquire Tandberg from them.  Beginning in the summer
of 2013, Overland began discussions with Sphere to acquire its
assets for stock in Overland.  In July 2013, Overland became the
exclusive distributor of Sphere products, and the Chairman of
Overland, Eric Kelly, became the Chairman of Sphere.  (Id. at ¶¶
56-57.)  In December 2013, Overland received notifications from
NASDAQ that its stock would be delisted; as a result, Overland
and Sphere started discussing a joint venture ownership of V3.
(Id. at ¶¶ 59-60.)

At that same time, without disclosing its discussions with
Overland, Sphere entered into a letter of intent on December 4,
2013, to purchase V3's assets for $14.7 million.  (Id. at ¶ 73.)
During negotiations of that sale, Sphere caused V3 to enter into

---

Bowman, Daniel J. Bordessa, and Vivekanand Mahadevan
(collectively, "the Directors") who together with Sphere,
Holdings, Overland, and SVTP, are referred to herein as the
"Sphere Defendants."

[4]    References to the record are: "D.I. #" for pleadings filed
in the instant proceeding, "Utah D.I. #" for references to the
Utah bankruptcy court docket in adversary proceeding no. 15-
02196, and "Utah D.Ct. D. I. #" for references to the Utah
District Court docket no. 2:16-cv-00959-RJS.

an agreement to transfer V3's sales to Overland to increase Overland's revenues.  (Id. at ¶ 61.)  While Sphere was doing due diligence on the sale, V3 had problems paying its operating costs and Sphere began filling orders for V3, which was treated as a loan against the cash portion of the sale price due to V3.  (Id. at ¶ 78.)

On February 11, 2014, the Asset Purchase Agreement (the "APA") was signed for the sale of V3's assets to Sphere and Holdings, which closed on March 21, 2014.  (Id. at ¶¶ 37, 65.) The Cyrus Defendants lent $5 million to Sphere to facilitate that transaction.  (Id. at ¶ 66.)  The APA provided that the sale price would be paid as follows: (1) $4 million in cash, (2) $5.7 million in common stock of Sphere ("the Initial Shares") based on a share price of $5.23, and (3) an earn-out of up to $5 million payable in cash or Sphere stock ("the Earn-out") based on sales achieved over a period of 15 months by Sphere originating from V3 business.  (Id., Ex D.)  The Initial Shares contained a legend restricting their resale for four months and one day from the date of issuance.  (D.I. 18 at ¶ 87.)  In accordance with the APA, Sphere was authorized to hold back 95,603 of the Initial Shares until July 6, 2015 (the "Holdback Shares") and an additional 95,603 shares and $200,000 of the cash price until certain litigation pending against V3 was resolved (the

3

"Litigation Holdback"). (<u>Id.</u> at ¶¶ 96-99.) Sphere agreed that, during the Earn-out period, it would maintain the V3 business as a separate business unit, maintain separate accounts for that business, and pay the monthly costs to operate that business in a viable manner. (<u>Id.</u> at ¶ 101.) After closing on the sale, V3 filed for dissolution premised on the expectation it would be able to use sale proceeds from the Initial Shares and the Earn-out to repay its creditors in full. (<u>Id.</u> at ¶ 106.)

Less than two months after closing on the V3 transaction, Sphere announced its agreement to merge with Overland. (<u>Id.</u> at ¶ 108.) As part of that merger, Sphere announced it would issue an additional 8.5 million shares to Overland shareholders, thereby diluting the Initial Shares that had just been issued to V3 as partial compensation for the sale of the V3 business to Sphere. (<u>Id.</u> at ¶ 109.)

In July 2014, V3 sought to remove the restrictive legend on the Initial Shares, so it could sell them and pay its creditors. (<u>Id.</u> at ¶ 118.) Sphere refused to agree to the release of the restrictive covenant as required by the APA, and Sphere and various Directors misrepresented to V3's broker and regulators that the legend could not be removed. (<u>Id.</u> at ¶¶ 119-24.) In the interim, Sphere's Directors sold stock they owned individually. (<u>Id.</u> at ¶ 126.) Sphere also took actions to

4

reduce the Earn-out due to V3 under the APA, by not supporting the V3 business, not paying its debts, and breaching an agreement to allow the business to be managed by Eric Lindstrom.  (Id. at ¶¶ 113, 133-34.)  As a result of the actions of the Defendants, V3 was unable to pay its creditors and was forced to enter into an additional agreement with Sphere on October 14, 2014, in which it agreed to further restrictions on its ability to sell the Initial Shares (the "Leak-out Agreement") in exchange for a release of $100,000 from the Litigation Holdback and payment by Sphere of some of V3's creditors.  (Id. at ¶¶ 135-39.)

In December 2014, the Cyrus Defendants consolidated the debt owed by Sphere and Overland into a new $19.5 million obligation (the "December 2014 Debenture").  (Id. at ¶ 144.)  The Cyrus Defendants continued to lend funds to Sphere and acquire stock in Sphere from June 2014 through 2018.  (Id. at ¶¶ 144-47, 157-62.)  On February 20, 2018, Sphere entered into an agreement to sell Overland's stock to SVTP for $45 million (the "SPA").  (Id. at ¶¶ 165-78.)  The sale closed on November 13, 2018, and Sphere received $1 million in cash, 19.9% of the preferred stock of SVTP, and the assumption by SVTP of $41.7 million of Sphere's debt (principally held by the Cyrus Defendants).  (Id. at ¶ 176.)  As a result of the divestiture of Overland, Sphere lost 90% of its revenues and was unable to pay its obligations to V3 and its other creditors.  (Id. at ¶¶ 178-81.)

The shares V3 was able to sell under the Leak-out Agreement yielded insufficient funds to pay creditors. (Id. at ¶¶ 142-43.) On November 26, 2014, the successor to V3, UD Dissolution Corp., commenced a chapter 11 bankruptcy case in the Bankruptcy Court for the District of Utah. (Id. at ¶ 3.) On April 6, 2015, Sphere and Holdings filed a proof of claim in that case. (Id. at ¶ 152.) On July 9, 2015, the Bankruptcy Court confirmed V3's Plan of Liquidation which transferred all causes of action held by the estate to the Plaintiff. (Id. at ¶¶ 5-7.)

On October 6, 2015, the Plaintiff filed a complaint (the "Original Complaint") against the Sphere Defendants. (Utah D.I. 1.) On July 22, 2016, the Sphere Defendants filed a motion to transfer venue of the adversary proceeding to the District of Delaware. (Utah D.I. 46.) On August 30, 2016, the Bankruptcy Court entered a Report and Recommendation recommending transfer of venue. (Utah D.I. 66.) The District Court accepted the Report and Recommendation, and the adversary proceeding was transferred to the District Court for the District of Delaware on October 11, 2016. (Utah D.Ct. D.I. 3, 5.) On November 16, 2018, the case was referred to this Court. (D.I. 1.)

On October 22, 2019, the Plaintiff filed an amendment to the Original Complaint (the "Amended Complaint") which added claims against the Cyrus Defendants. (D.I. 18.) The Amended Complaint

6

contains twenty-seven Counts against the various Defendants, including objections to the Sphere/Holdings proof of claim (Counts 1-6); avoidance of fraudulent conveyances (Counts 7-8, 14), breach of fiduciary duty and aiding and abetting such breach (Counts 9-10), equitable subordination (Count 11), turnover of estate property (Counts 12-13), breach of contract (Counts 15-19), interference with existing economic and contractual relations (Counts 20-21), constructive conversion (Count 22), securities fraud (Count 23), misrepresentation (Counts 24-25), unjust enrichment (Count 26), and injunctive relief (Count 27). (D.I. 18.)

On February 10, 2020, the Defendants filed their Motions to Dismiss the Amended Complaint along with an accompanying brief.[5] (D.I. 23, 28, 33.)  On May 6 and 22, 2020, the Plaintiff filed its Answering Briefs.  (D.I. 42, 45, 46.)  On June 18 and 24, 2020, the Defendants filed their Reply Briefs. (D.I. 56, 59, 60.) The matter is ripe for decision.  (D.I. 66, 67, 69.)

II.  <u>JURISDICTION</u>

Each of the Counts in the Amended Complaint is a core

---

[5]    Sphere and Holdings also filed an Answer and Counterclaim to which the Plaintiff has filed a Motion to Strike.  (D.I. 22.) That matter has been fully briefed and a decision on it is being issued contemporaneously herewith.

proceeding over which the bankruptcy court may preside.    28
U.S.C. § 157(b)(2)(A), (B), (C), (E), (H), and (O).

Most of the parties[6] have impliedly consented to this
Court's ability to enter a final order on the Motions by not
objecting to the Court doing so.  Wellness Int'l, Ltd. v. Sharif,
575 U.S. 665, 683-85, 685 n.13 (2015) (holding that bankruptcy
court may adjudicate claims over which it may not have
constitutional jurisdiction if the parties voluntarily and
knowingly consent, expressly or impliedly); In re Tribune Media
Co., 902 F.3d 384, 395 (3d Cir. 2018) (holding that a litigant
impliedly consents to jurisdiction where the litigant joins a
case and files multiple documents without raising the issue).
See also Del. Bankr. L.R. 7008-1, 7012-1.

The Court has the power to enter a final order on a motion
to dismiss, however, even without consent and without authority
to enter a final order on the merits.  See, e.g., Welded Constr.,
L.P. v. Prime NDT Servs., Inc. (In re Welded Constr., L.P.), 605
B.R. 35, 37 (Bankr. D. Del. 2019); Burtch v. Owlstone, Inc. (In
re Advance Nanotech, Inc.), Adv. No. 13-51215 (MFW), 2014 WL
1320145, at *2 (Bankr. D. Del. Apr. 2, 2014); O'Toole v.
McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 739-40
(Bankr. S.D.N.Y. 2012).

---

[6]    Bowman and Biasini, however, do not consent to entry of a
final order.  (D.I. 24 at n.3.)

III. <u>DISCUSSION</u>

A.   <u>Personal Jurisdiction</u>

Two of the Defendants who are former Board members of Sphere (Glenn Bowman and Mario Biasini) filed a Motion to Dismiss the entirety of the Amended Complaint under Rule 12(b)(2) asserting that the Court lacks personal jurisdiction over them.

1.   <u>Standard of Review</u>

For a Court to exercise specific personal jurisdiction over a defendant, (i) the defendant must have sufficient contacts with the forum that he should reasonably anticipate being hauled into court there and (ii) the exercise of personal jurisdiction must not offend traditional notions of fair play and substantial justice.  <u>See, e.g.</u>, <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 451 (3d Cir. 2003).  Furthermore, personal jurisdiction exists only if the controversy that is the subject of the complaint arises from the defendant's contacts with the forum. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985).

In a bankruptcy case, Rule 7004(d) provides for nationwide service of process for an adversary complaint.  Rule 7004(f) provides that, so long as it is "consistent with the Constitution and laws of the United States," service of process under that Rule establishes personal jurisdiction if the defendant has minimum contacts with the United States as a whole.  <u>See, e.g.</u>,

9

Zazzali v. Swenson (In re DBSI, Inc.), 451 B.R. 373, 376-77
(Bankr. D. Del. 2011).  Cf. In re Auto. Refinishing Paint
Antitrust Litig., 358 F.3d 288, 298-99, 299 n.14 (3d Cir. 2004)
(holding that personal jurisdiction for antitrust litigation
purposes also depends only on the defendant's minimum contacts
with the United States as a whole).

In the Amended Complaint, the Plaintiff alleges various
contract and tort claims against Bowman and Biasini.  With
respect to contract claims, the Plaintiff must show that the
actions of Bowman and Biasini were instrumental in the formation
or the breach of the contract.  Danziger & De Llano, LLP v.
Morgan Verkamp LLC, 948 F.3d 124, 130 (3d Cir. 2020).  For tort
claims, the Plaintiff acknowledges that personal jurisdiction
over a defendant cannot be established solely on his/her status
as an officer or director of a corporation which commits a tort
in the United States.  In re Royal Dutch/Shell Transp. Sec.
Litig., 380 F. Supp. 2d 509, 550 (D.N.J. 2005).  Rather, the
Plaintiff must establish that the Defendants purposefully
directed their tortious conduct towards an entity in the United
States.  See, e.g., Burger King, 471 U.S. at 476; O'Connor v.
Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).
"[P]urposeful direction" is established where there is an
intentional act, expressly aimed at the forum, with knowledge

10

that the brunt of the injury will be felt in the forum.  Calder
v. Jones, 465 U.S. 783, 789 (1984) (finding personal jurisdiction
in California over Florida defendants who published an allegedly
libelous story in California about a California resident);
Newsome v. Gallacher, 722 F.3d 1257, 1262, 1268-69 (10th Cir.
2013) (finding personal jurisdiction over Canadian defendants who
were directors and officers of Canadian parent and its US
subsidiary who allegedly conspired to shift debt to US
corporation to improve the value of their equity in the Canadian
company).  Furthermore, it is not necessary that a defendant
physically enter the forum.  See, e.g., D'Jamoos v. Pilatus
Aircraft Ltd., 566 F.3d 94, 103 (3d Cir. 2009).

The ultimate burden of proof is on the Plaintiff to
establish these contacts with "reasonable particularity."
Danziger, 948 F.3d at 129-30; O'Connor, 496 F.3d at 317.  The
Plaintiff argues that at this stage it need establish only a
prima facie case that Bowman and Biasini have sufficient contacts
with the United States to satisfy Due Process concerns.  Miller
Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004);
Leonard A. Feinberg, Inc. v. Central Asia Cap. Corp., 936 F.
Supp. 250, 253-54 (E.D. Pa. 1996) ("until [an evidentiary]
hearing is held, a prima facie showing suffices, notwithstanding
any controverting presentation by the moving party, to defeat [a

11

12(b)(2)] motion") (internal citation omitted).

    2.  <u>Application</u>
       a.  <u>Minimum contacts</u>

    Bowman and Biasini contend that the Plaintiff has not established that they have sufficient connections to the United States to warrant the Court's exercise of personal jurisdiction over them because they are Canadian citizens, residing in Ontario.  (D.I. 25, A0010 at ¶ 3 & A0013 at ¶ 3.)[7]  Sphere is a corporation organized under the laws of Ontario, Canada, with its principal place of business in Mississauga, Ontario.  (D.I. 18 at ¶ 9.)  Biasini founded Sphere in 2009, was president from 2009 until 2011, and was a member of the Board from 2009 until 2016.  (D.I. 25, A0013 at ¶ 6.)  Bowman served as an independent member of Sphere's Board from January 2012 until December 12, 2017.  (<u>Id.</u>, A0010 at ¶ 6 & A0007.)

    Bowman and Biasini both contend that they had no involvement with the V3 transaction or communications with anyone regarding it, except as members of the Sphere Board.  (<u>Id.</u>, A0013 at ¶ 8 & A0011 at ¶ 9.)  They assert that all Board meetings on the V3 transaction occurred in Canada and that neither traveled to the

---

[7]    Bowman and Biasini filed an appendix in support of their motion which includes their declarations.  (D.I. 25.)  In response, the Plaintiff filed the Declarations of Eric E. Lindstrom and Christopher Chabot.  (D.I. 47, Ex. B & C.)

United States in connection with that transaction.  (Id., A0013-14 at ¶ 9 & A0011 at ¶ 10.)  They finally assert that neither of them was a Sphere Board member at the time Sphere sold its shares in Overland to SVTP.  (Id., A0007.)

The Plaintiff argues that it has met its burden of establishing personal jurisdiction over Bowman and Biasini through the allegations in the Amended Complaint (which must be taken as true at this stage).  The Amended Complaint alleges that while Bowman and Biasini were directors of Sphere, Sphere organized Holdings under Delaware law which maintained offices in the United States for the purpose of acquiring the V3 assets. (D.I. 18 at ¶¶ 1-2, 10, 16-17.)  While Sphere shares were traded on the Toronto Stock Exchange when the APA closed, they began trading on the NASDAQ Global Market shortly thereafter.  (Id. at ¶ 9.)  Further, the Amended Complaint alleges that the directors of Sphere made misrepresentations in negotiations of the APA with V3 and interfered with performance of the APA, including removal of the restrictive legend on the Initial Shares.  (Id. at ¶¶ 60, 92-04, 123-28, 132, 199, 242, 249-54, 277-78, 284, 301-05, 312-14, 317-18, 320, 325, 332, 334, 339-41, 347-54, 357-63, 365-68.)

Bowman and Biasini respond that those allegations apply to all Sphere Directors as a group and are too general to establish that they individually took any intentional act, expressly aimed

13

at the forum, with knowledge that the brunt of the injury would
be felt in the United States.  See, e.g., Calder, 465 U.S. at
789; IMO Indus. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir.
1998) (dismissing case for lack of personal jurisdiction due to
lack of evidence that defendant aimed its actions at the forum).

Bowman and Biasini further contend that allegations of their
participation in the specific intentional torts, alone, are
insufficient to establish minimum contacts.  Instead, they argue
that the Plaintiff must allege additional contacts with the
United States beyond those torts to establish personal
jurisdiction over them.  See, e.g., IMO Indus., 155 F.3d at 261-
63; Far West Cap., Inc. v. Towne, 46 F.3d 1071, 1079 (10th Cir.
1995).

The Court disagrees.  The cases cited by Bowman and Biasini
are distinguishable because they merely hold that it is
insufficient to allege that the plaintiff resided in the forum
and the defendant committed a business tort against it.  Id.
Further, the Supreme Court explained in Burger King that personal
jurisdiction is premised, not on contacts that the defendants
have generally with the forum, but on the specific contacts that
form the basis of the complaint.  Burger King, 471 U.S. at 472
(citations omitted).

In this case, the Court finds that the Amended Complaint
alleges that the actions taken by Bowman and Biasini were focused

14

on V3 in the United States and that both clearly understood that any injury to V3 would occur in the United States.  For example, the Plaintiff alleges that both served as Sphere Directors, traveled to the United States in connection with the V3 transaction, participated in Sphere Board meetings held in the United States either personally or by phone, and interfered with V3's efforts to remove the restrictive legend on the Initial Shares in order to protect the value of their own shares, thereby causing harm to V3.  (D.I. 18 at ¶¶ 16, 17, 123-24, 250-51.) Further, it alleges that Biasini directed emails and calls to persons in the United States (i) organizing participation by Sphere and V3 in a conference in Florida and (ii) relating to the transfer of V3 operations to Sphere.  (Id. at ¶ 17.)

While the Movants assert that all Board meetings relating to the V3 transaction or subsequent events related to it occurred in Canada and that neither traveled to the United States in connection with that transaction, those facts are disputed by the Plaintiff.[8]  The Court need not resolve these disputed facts at this stage.  Even if Bowman and Biasini never left Canada, the

_____

[8]    Lindstrom's declaration states that both Bowman and Biasini traveled to the US in June 2015 for a Sphere investor briefing. (D.I. 47, Ex. B at ¶¶ 23-25.)  Although Bowman and Biasini contend that this meeting was after the negotiation and closing on the V3 transaction, it is at a time relevant to performance of the APA.  (D.I. 18 at ¶¶ 97, 150-55, 284; D.I. 47, Ex. B at ¶¶ 24-26, 32-34.)

allegations in the Amended Complaint are sufficient to establish
that each took actions as Directors of Sphere (and for their own
personal benefit) that were directed at V3 in the United States
with knowledge that the brunt of the injury would be felt in the
United States.[9]  These allegations are sufficient to establish
minimum contacts with the United States.  See Calder, 465 U.S. at
789; Miller Yacht Sales, 384 F.3d at 97.

> b.    Fair and Reasonable

Because minimum contacts with the forum have been
established, the burden shifts to Bowman and Biasini.  Zazzali v.
1031 Exch. Group LLC (In re DBSI, Inc.), 467 B.R. 309, 315
(Bankr. D. Del. 2012).  They must show that the Court's exercise
of jurisdiction over them will make it "so gravely difficult and
inconvenient that [they are] at a serious disadvantage in
comparison to [their] opponent."  Id.  Factors considered
include:

> the burden on the defendant, the forum State's interest
> in adjudicating the dispute, the plaintiff's interest
> in obtaining convenient and effective relief, the
> interstate judicial system's interest in obtaining the
> most efficient resolution of controversies, and the

---

[9]    Lindstrom's declaration states that he had specific
conversations with Biasini regarding removal of the restrictive
legend and that both Bowman and Biasini sold personal shares of
Sphere stock during the period when Sphere refused to remove the
restrictive legend on the Initial Shares.  (D.I. 47, Ex. B at ¶¶
33-34.)  Bowman and Biasini admit that the restrictive legend on
the Initial Shares was discussed at Sphere Board meetings in
which they participated.  (D.I. 25, A0010 at ¶ 9, A0013 at ¶ 8.)

shared interest of the several States in furthering
fundamental substantive social policies.

Burger King, 471 U.S. at 477 (internal quotations and citations

omitted).  Courts should also consider the "procedural and

substantive interests of other nations."  O'Connor, 496 F.3d at

312 (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S.

102, 113 (1987)).

Bowman and Biasini assert that their contacts with the

United States are minimal making it highly inconvenient for them

to appear and defend this suit in Delaware.

The Plaintiff disagrees.  It notes that Bowman and Biasini

are already represented by counsel in Delaware who have

participated in this case, including filing the instant motion.

It contends that continuation of the action against Bowman and

Biasini in Delaware, where the suit is proceeding against the

other Defendants on the same claims, would be the most convenient

and effective forum for resolving those claims.

The Court concludes that Bowman and Biasini have failed to

establish that the Court's exercise of jurisdiction over them is

unfair or unreasonable.  The burden on them to litigate the case

in Delaware is not excessive because they already have counsel

here (who is representing the other Sphere Defendants as well)

and travel to this forum from Canada is not inconvenient.

17

Further, the judicial systems of the United States and Canada are rooted in similar common law traditions, which ensure that the procedural and substantive interests of both nations are not offended.  See, e.g., O'Connor, 496 F.3d at 312; Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd., 138 F.3d 624, 629 (6th Cir. 1998).  Finally, resolving all interrelated claims against all Defendants in the same forum promotes judicial economy.

The Court concludes that Bowman and Biasini have sufficient minimum contacts with the United States and that the interest of the Plaintiff and the forum in exercising jurisdiction over this suit outweighs the potential burden on them.  Asahi, 480 U.S. at 114.  Consequently, the Court will deny the Motion of Bowman and Biasini to dismiss the case against them under Rule 12(b)(2) for lack of personal jurisdiction.

B.   Statute of Limitations

The Cyrus Defendants contend that the claims against them must be dismissed because they were filed beyond the applicable two- or four-year statute of limitations.  Although the Original Complaint was filed on October 6, 2015, less than two years after the APA was executed, the Cyrus Defendants argue that they were not named as defendants in that Complaint.  The Cyrus Defendants contend that the first claims asserted against them were in the Amended Complaint that was not filed until October 22, 2019,

18

almost seven years after the letter of intent was signed between Sphere and V3 and almost five years after the Petition Date.

The Plaintiff responds that an amended complaint relates back to the date of the earlier complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Third Circuit has stated that there are:

> three distinct prerequisites for an amendment to relate back to the original complaint: (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within [the time provided by Rule 4(m)], and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity.

Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006). The Plaintiff asserts it has met the standard for relation back of the Amended Complaint.

The Court agrees that the Amended Complaint properly relates back because (1) the allegations against the Cyrus Defendants in the Amended Complaint are based on the same facts set forth in the Original Complaint, (2) the Cyrus Defendants had timely notice of the Original Complaint which named their representative on Sphere's Board as a defendant, and (3) the Cyrus Defendants

19

should have known that the Plaintiff would have named them had it been aware of the extent of their control over the other Defendants in connection with the transactions that form the basis of the action.  Thus, the Court concludes that the Amended Complaint relates back to the original filing date of October 6, 2015.

      C.   <u>Failure to State a Claim</u>

Motions to dismiss the Amended Complaint were filed by the Sphere Defendants and the Cyrus Defendants, contending that the Amended Complaint fails to state a claim for relief as to them. Because many of the Counts assert claims against both groups of Defendants and the Motions filed by each raise similar alleged deficiencies, the Court considers both Motions together.

      1.   <u>Standard of Review</u>
        a.   <u>Rule 12(b)(6)</u>

A Rule 12(b)(6) motion challenges the sufficiency of the factual allegations in the complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v.
Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at
556). The court must draw all reasonable inferences in favor of
the plaintiff. <u>See, e.g.</u>, <u>Alpizar-Fallas v. Favero</u>, 908 F.3d
910, 914 (3d Cir. 2018).

In weighing a motion to dismiss, the court should undergo a
three-part analysis. "First, the court must take note of the
elements needed for a plaintiff to state a claim." <u>Santiago v.
Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (citing <u>Iqbal</u>,
556 U.S. at 675). Second, the court must separate the factual
and legal elements of the claim, accepting all of the complaint's
well-pled facts as true and disregarding any legal conclusions.
<u>Id.</u>; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009)
(citing <u>Iqbal</u>, 556 U.S. at 679). Third, the court must determine
whether the facts alleged in the complaint are sufficient to show
that the plaintiff has a plausible claim for relief. <u>Santiago</u>,
629 F.3d at 130.

b.   <u>Rule 9(b)</u>

Several of the claims in the Amended Complaint are based on
alleged fraudulent conduct. Pleadings alleging actual fraud are
analyzed under Rule 9(b) rather than Rule 12(b)(6). <u>Beskrone v.
OpenGate Cap. Grp. (In re Pennysaver USA Publ'g, LLC)</u>, 587 B.R.
445, 459-60 (Bankr. D. Del. 2018). Under Rule 9(b), fraud "must

be pled with particularity." Rosener v. Majestic Mgmt. (In re

OODC, LLC), 321 B.R. 128, 140 (Bankr. D. Del. 2005); Fed. R. Civ.

P. 9(b); Fed R. Bankr. P. 7009.  "To state a claim for fraud,

however, all the plaintiff need do is inform the defendant of the

particular conduct which is alleged to have been fraudulent."

Majestic Mgmt., 321 B.R. at 140.

    2.   <u>Application</u>
      a.  <u>Counts 7 and 8: Fraudulent Transfer Counts</u>

Counts 7 and 8 are asserted against all Defendants and seek

to avoid as actual or constructively fraudulent the following

transfers: (1) the incurrence of debt and grant of liens by

Sphere to the Cyrus Defendants in connection with the December

2014 Debenture and April 2016 amendment of it and (2) Sphere's

transfer of its interest in Overland to SVTP on February 20,

2018.  The Plaintiff alleges that these transfers are avoidable

under the Bankruptcy Code and applicable state law.  The

Plaintiff also seeks to recover from the Defendants the property

transferred or its value.  11 U.S.C. § 550(a).  The Plaintiff

asserts that its claims for avoidance are based on its status as

a contingent creditor of Sphere as a result of its APA-related

claims against Sphere.

        i.  <u>Under the Bankruptcy Code</u>

The Defendants argue that the Plaintiff has failed to state

a claim under the Bankruptcy Code to avoid the transfers because all of the transfers in question were transfers of property of Sphere.  They argue that the transfers are not avoidable under the Bankruptcy Code because the transferor, Sphere, is not a debtor in a bankruptcy case and there was no transfer of property of a debtor or bankruptcy estate.

The Plaintiff responds that it can avoid the transfer of Sphere's ownership interest in Overland to SVTP because it is pursuing the claim of a debtor in bankruptcy (UD Dissolution) against Sphere.  It contends that the transfers by Sphere rendered Sphere insolvent and judgment proof, thereby adversely affecting a property interest of the Plaintiff.

The Court disagrees with the Plaintiff's contention. Sections 544, 548 and 549 by their express terms allow only the avoidance of a transfer of property of a debtor or its estate.[10] The transfers at issue in Counts 7 and 8 are transfers of property of Sphere and the grant of liens in property of Sphere, not property of UD Dissolution or its predecessor, V3.  The

---

[10]    11 U.S.C. §§ 544(a) (power to avoid "any transfer of property of the debtor or any obligation incurred by the debtor" that is avoidable under applicable state law by a creditor of the debtor), 548 (power to "avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor"), 549 ("a trustee may avoid a transfer of property of the estate").

Plaintiff's assertion that V3 had an interest in the property transferred because it had a claim against Sphere is without merit.  Even if the Court assumes that the claims the Plaintiff asserts against Sphere are meritorious and it is a creditor of Sphere, that does not change the fact that the property transferred was owned by Sphere.  Even if the Court assumes, as the Plaintiff alleges, that the transfers reduced the value of its claims against (and the shares it held in) Sphere, that is not enough to state a legal or equitable interest in any specific property owned by Sphere.  See 11 U.S.C. § 541(a)(1).

Thus, the Court concludes that the Plaintiff fails to state a claim for transfer of an interest in property of a debtor or bankruptcy estate that is avoidable under any provision of the Bankruptcy Code.  Accordingly, the Court will grant the Defendants' Motions to Dismiss the Plaintiff's claims to the extent they seek to avoid fraudulent transfers under the Bankruptcy Code.[11]

### ii.    Under applicable state law

The Defendants also contend that the Plaintiff has failed to state a claim under state law to avoid either the grant of liens

---

[11]    As a result, the Court finds it unnecessary to address the Defendants' other arguments that the claims are time-barred or fail to state a claim under specific provisions of the Bankruptcy Code.

in connection with the December 2014 Debenture or the transfer of Sphere's interest in Overland to SVTP.

First, they contend that the Plaintiff cannot rely on section 544 of the Bankruptcy Code for such a claim because the transfers involved only property of Sphere, not property of the Debtor's estate.  The Court agrees with the Defendants that neither transaction resulted in a transfer of any property of a debtor in a bankruptcy proceeding and, therefore, section 544 is not applicable.  However, that is not dispositive.  Applicable state law allows a creditor of a company to bring a claim to avoid a transfer of that company's property if the transfer was actually or constructively fraudulent, even if that company is not in bankruptcy.  Cal. Civ. Code §3439 et. seq. (West 2021).[12]

The Plaintiff alleges that it is a creditor of Sphere as a result of the claims it has asserted in the Amended Complaint. (D.I. 18 at ¶¶ 219, 224, 228 & 238.)  Therefore, it argues that it has standing to avoid the transfers by Sphere under applicable

---

[12]   Although the Defendants note that it is unclear on which state law the Plaintiff is relying (referring in Count 7 to "applicable state law" and in Count 8 to California law), the Court concludes that it is not necessary to decide that question. Both California and Delaware have adopted the Uniform Fraudulent Transfer Act, and consequently the law is the same in both states.  Del. Code Ann. tit. 6, §§ 1304-05 (West 2021); Cal. Civ. Code §3439 et. seq. (West 2021).  For ease of reference, the Court cites to the California statute.

state law as fraudulent transfers.    (Id. at ¶¶ 219-40.)

The Defendants respond that, even if state law does permit such a suit, the Plaintiff has failed to state a claim as a creditor for avoidance of those transfers as either actually fraudulent or constructively fraudulent.

a.    Actual fraud

Under California law, a transfer may be avoided as fraudulent if made with "actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code at § 3438.04(a)(1).  Eleven factors are to be considered in determining whether actual intent to defraud is established: (1) whether the transfer was to an insider, (2) whether the debtor retained possession or control of the property transferred after the transfer, (3) whether the transfer was concealed, (4) whether before the transfer was made, the debtor had been sued or threatened with suit, (5) whether the transfer was of substantially all of the debtor's assets, (6) whether the debtor absconded, (7) whether the debtor removed or concealed assets, (8) whether the value of the consideration the debtor received was reasonably equivalent to the value of the asset transferred, (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made, (10) whether the transfer occurred shortly before or after a substantial debt was incurred, and (11)

26

whether the debtor transferred the essential assets of the business to a lienholder who then transferred the assets to an insider of the debtor.  Id. at § 3439.04(b).

The Defendants contend that the allegations in the Amended Complaint are merely conclusory allegations of the legal standard for fraudulent transfers, without stating the factual bases for those claims with the particularity required by the heightened pleading standards of Rule 9.  See OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.), 325 B.R. 696, 698-99 (Bankr. D. Del. 2005).  In particular, they contend that the Plaintiff fails to specify which Defendants were insiders of Sphere to whom the transfers were made or how the transfers were for the benefit of any of the Defendants.

The Plaintiff responds that it does plead sufficient factual bases for its allegations.  The Plaintiff alleges in the Amended Complaint that: (1) the transfers were made to or for the benefit of the Defendants and (2) were made with actual intent to hinder or defraud the Plaintiff as a creditor of Sphere.

The Court agrees that the Plaintiff has met its burden of pleading sufficient detail to allege the transfers are actually fraudulent.  With respect to the benefit to the Defendants from the transfers, the Amended Complaint alleges that the Cyrus Defendants were the beneficiaries of the December 2014 Debenture

27

because it resulted in the Cyrus Defendants being able to control Sphere and, through that control, to acquire Overland and the V3 business for a price less than its worth.  (D.I. 18 at ¶¶ 91, 117, 144, 157-59).  It further alleges how the transfers benefitted the other Defendants.  (Id. at ¶¶ 163, 165, 166, 180, 183-85).

The Defendants contend, however, that the Plaintiff has improperly collapsed three transfers into one in seeking to avoid the December 2014 Debenture.  Specifically, they argue that the Plaintiff asserts the December 2014 Debenture is a fraudulent transfer only because of the amendment of the Debenture in April 2016, which occurred after the Original Complaint was filed.

The Court disagrees.  The Amended Complaint alleges that the December 2014 Debenture itself constituted a transfer, because it was the incurrence of debt at a time when Sphere was insolvent and unable to pay its debts and made with an intent to hinder, delay or defraud its creditors.  (Id. at ¶ 223.)

The Defendants also contend that the allegations about solvency are pled without any reference to Sphere's financial data as is required.  See, e.g., Guiliano v. Ferdinand (In re Liquid Holdings Grp., Inc.), Adv. No. 17-50622, 2018 WL 2759301 (KG), at *19 (Bankr. D. Del. June 6, 2018) (dismissing complaint because trustee failed to plead the transferor was insolvent at

28

the time); <u>Global Link Liquidating Trust v. Avantel, S.A. (In re</u>
<u>Global Link Telecom Corp.)</u>, 327 B.R. 711, 718 (Bankr. D. Del.
2005) (dismissing constructive fraud claim because trustee pled
no information related to the debtor's insolvency at the time of
the transfer other than the conclusory statement that it was
insolvent).

The Court disagrees with the Defendants' assertion.  The
Amended Complaint alleges that after borrowing $5 million from
the Cyrus Defendants in March 2014, Sphere was unable to pay its
obligations as they came due, including interest payments on that
debt.  (D.I. 18 at ¶¶ 66, 158-61).  The Amended Complaint further
alleges that the Cyrus Defendants arranged for the consolidation
of Overland into Sphere and Sphere's assumption of Overland's
debt in the December 2014 Debenture which resulted in Sphere
being saddled with overwhelming debt in excess of the value of
the combined assets of Sphere and Overland at that time.  (<u>Id.</u> at
¶¶ 144, 232-33.)  Finally, the Amended Complaint alleges that
after entering into the various loans with the Cyrus Defendants
in 2014, Sphere was unable to make payments on those loans,
resulting in the conversion of that debt to equity and generating
public speculation about a potential bankruptcy and a massive
sell-off of its stock.  (<u>Id.</u> at ¶¶ 158-61.)  In addition, the
Amended Complaint alleges that because of the loans from the

29

Cyrus Defendants, Sphere was unable to pay its debts and was
forced into agreeing to the SPA where it lost 90% of its assets
and revenue stream.  (Id. at ¶¶ 165-87.)

The Court concludes that these allegations are sufficient to
meet the Plaintiff's burden of stating facts establishing that
the transactions at issue occurred while Sphere was insolvent or
resulted in Sphere's insolvency.  Therefore, the Court concludes
that the Plaintiff has met the heightened standard of Rule 9 for
pleading actual fraud.

### b.    Constructive fraud

Under California law, a transfer is constructively
fraudulent if the debtor did not receive "a reasonably equivalent
value in exchange for the transfer or obligation" and the debtor
was either (1) engaged or about to engage in a business for which
the remaining assets were unreasonably small in relation to the
business or (2) believed or should have believed that it would
incur debts beyond its ability to pay.  Cal. Civ. Code at §
3439.04(a)(2)(A)-(B).

The Defendants contend that the Plaintiff relies solely on
conclusory statements that the transfers were constructively
fraudulent rather than pointing to specific facts establishing
that claim.  In particular, the Defendants assert that the
Plaintiff provides no factual basis for the conclusory allegation

that Sphere did not receive reasonably equivalent value for, or
was insolvent or rendered insolvent, by the transfers.

The Court disagrees.  The Court finds that the same
allegations supporting the insolvency prong of the actual fraud
claim provide a sufficient factual basis for its assertion that
Sphere did not receive reasonably equivalent value for the
transfer, and was insolvent or rendered insolvent, by them.  This
is sufficient to state a claim for avoidance of those transfers
as constructively fraudulent.  See, e.g., Boyer v. Crown Stock
Distribution, Inc., 587 F. 3d 787, 796 (7th Cir. 2009) (affirming
bankruptcy court's holding that leveraged buyout was a
constructively fraudulent transfer under UFTA because
debtor/target entity did not receive reasonably equivalent value
and was left with unreasonably small capital after purchasing
almost all of seller's assets and obligating itself to twice the
amount of debt compared to the remaining combined assets);
Majestic Mgmt., 321 B.R. at 140-42 (holding that trustee's
allegations supported a claim to avoid a constructive fraudulent
transfer where the debtor - after a leveraged buyout agreement to
purchase defendants' assets, assume defendants' liabilities, and
incur additional secured debt on its own assets to pay cash to
defendants' shareholders - was left with a combined corpus of
assets worth less than outstanding debts).

31

Accordingly, the Court will deny the Defendants' Motions to Dismiss Counts 7 and 8 to the extent they are based on applicable state law.

    b.   Counts 9 and 10: Breach of Fiduciary
         Duty/Aiding and Abetting Such Breach

The Defendants argue that the claim of breach of fiduciary duty in Count 9 against the Directors and the claim for aiding and abetting that breach of fiduciary duty in Count 10 against the Cyrus Defendants must be dismissed for several reasons.

         i.   No fiduciary duty

First, the Defendants argue that any claim relating to the negotiation of the APA should be dismissed because it is based on alleged failures to disclose all material facts to V3 prior to closing on the APA.  They contend that the Directors did not owe the Plaintiff any fiduciary duty until after closing when V3 became a shareholder and, therefore, they argue there can be no breach of fiduciary duty claims for any actions taken before closing.  Additionally, the Sphere Defendants contend that the breach of fiduciary duty claims as they relate to the SPA transaction do not state a claim against Directors who were not on Sphere's Board at the time of that transaction.  See Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002) (holding that as a general rule, a breach of fiduciary duty claim

32

must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach).

The Plaintiff responds that there are numerous allegations in the Amended Complaint on which the fiduciary duty claims are based which relate to actions the Defendants took after the APA closing and before the SPA closing, during a time when the Defendants were Directors.  (D.I. 18 at ¶¶ 116-78.)

The Court agrees with the Defendants that they owed no fiduciary duty to V3 while they were not serving in a fiduciary capacity.  However, because the Plaintiff alleges numerous actions by the Defendants while V3 was a Sphere shareholder and the Directors were on the Sphere Board for which a breach of fiduciary duty claim may lie, the Court finds no basis to dismiss the fiduciary duty claims on that basis.

### ii.  Duplicative of contract claims

The Defendants also contend that the fiduciary duty claims should be dismissed because they are based on Sphere's failure to comply with the APA after it closed and, therefore, they are duplicative of the claims for breach of contract.  Accordingly, they argue that the fiduciary duty claims must be dismissed. Edinburgh Holdings, Inc. v. Education Affiliates, Inc., C.A. No. 2017-0500-JRS, 2018 WL 2727542, at *15 (Del. Ch. June 6, 2018)

33

(noting that "[g]enerally, Delaware '[c]ourts will dismiss [a] breach of fiduciary duty claim where [it] overlap[s] completely [with a breach of contract claim] and arise[s] from the same underlying conduct or nucleus of operative facts' as the breach of contract claim.").

The Plaintiff disputes this contention. It asserts that the Directors are not parties to the APA, and, therefore, the breach of contract claims do not cover their actions. Further, it contends that the Amended Complaint makes factual allegations of misrepresentations and omissions by the Directors themselves. (D.I. 18 at ¶¶ 71-72, 82-94, 110-28, 135-43, 340, 344, 352, 360-63, 365-68).

The Court agrees with the Plaintiff that, to the extent the Directors cannot be held liable for the breach of contract claims, the breach of fiduciary duty claims against them are not duplicative. Even if they are duplicative, however, Rule 8(d) allows alternative pleading. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . . ."). Therefore, the Court concludes that there is no basis to dismiss either claim at this stage simply because they state a different claim based on the same set of facts. Of course, to the extent the Defendants are found liable on both theories, the Plaintiff can recover only once.

### iii. Special circumstance rule

The Defendants further assert that the claims of the Plaintiff are based on allegations that the Directors owed a special fiduciary duty to V3 outside the contours of the APA and beyond the duties owed to shareholders generally.  They argue that this claim must fail because a director's duty is only to shareholders as a class, not to specific shareholders.  See, e.g., Kors v. Carey, 158 A.2d 136, 143 (Del. Ch. 1960).

The Plaintiff responds that the claims are covered by the "special circumstance rule" which recognizes a fiduciary duty may be owed by Directors to specific shareholders.  See, e.g., Lank v. Steiner, 224 A.2d 242, 244 (Del. 1966) (citing Kors, 158 A.2d at 143 for the proposition that a director has a fiduciary duty to a specific stockholder when he "is possessed of special knowledge of future plans or secret resources and deliberately misleads a stockholder who is ignorant of them").  The Amended Complaint alleges that after V3 became a shareholder of Sphere the Directors had ongoing discussions, that were never disclosed, which led to the Overland merger and ultimately to the disastrous SPA transaction.  (D.I. 18 at ¶¶ 82-83, 91-94, 108-110, 113, 116-17, 144-46, 158-163, 165, 176-80).  It contends that the failure to disclose those facts to V3 resulted in specific damage to it.  (Id. at ¶¶ 83, 108, 113, 118-54, 187.)

In their reply, the Defendants contend that the special
circumstance rule articulated in the <u>Lank</u> case applies only when
directors deal with a shareholder in relation to the purchase or
sale of his stock.  224 A.2d at 244.

The Court disagrees.  While the facts of <u>Lank</u> dealt with
failure to disclose in connection with an option to purchase
stock, the Court did not state that the rule applies only in
those circumstances.  In this case, the Court finds that the
Plaintiff has stated sufficient facts, which if taken to be true,
fit within the special circumstance rule articulated by the
Delaware courts.  Therefore, the Court concludes that the
Defendants' argument on this point does not merit dismissal of
the fiduciary duty claims.

### iv.  <u>Prior approval</u>

The Defendants also argue that the fiduciary duty claims
with respect to the SPA transaction must be dismissed because
those claims belong to Sphere and for a shareholder to bring a
derivative action on behalf of Sphere requires prior judicial
authorization under Ontario law.  <u>See, e.g.</u>, <u>Fleeger v. Clarkson
Co.</u>, 86 F.R.D. 388, 394 (N.D. Tex. 1980) (holding that Canadian
law forbids derivative action without obtaining prior leave of
court).

The Plaintiff responds that Canadian law is not applicable

36

because the SPA provides that the agreement is governed by California law.  (D.I. 18, Ex. G at § 10.7.)  Similarly, the Plaintiff asserts that the APA provides that it is governed by Delaware law.  (<u>Id.</u>, Ex. D at § 11.6.)

In their reply, the Defendants argue that the Plaintiff also has failed to comply with either California or Delaware law in bringing its derivative breach of fiduciary duty action.  They contend that the Plaintiff was required to explain what efforts it made to demand that Sphere bring the action (or why it failed to make demand).  <u>Bader v. Anderson</u>, 110 Cal. Rptr. 3d 821, 832 (Cal. Ct. App. 2009); <u>Chester Cty. Emps. Ret. Fund v. New Residential Inv. Corp.</u>, C.A. No. 11058-VCMR, 2016 WL 5865004, at *8 (Del. Ch. Oct. 7, 2016).

The Plaintiff alternatively argues that the claims regarding breach of fiduciary duty are not derivative claims, because V3 suffered specific damage different from injury to other shareholders.  It argues that because of the actions, inter alia, of the Directors, it was precluded from selling the Initial Shares (when other shareholders, namely the Directors, were able to sell theirs) until the price of Sphere's shares had dropped.

The Court concludes that the claims asserted by the Plaintiff against the Directors are not derivative but state a direct claim for breach of fiduciary duty under the special

37

circumstance rule.  <u>Kors</u>, 158 A.2d at 144.  The injury to V3 is different from injuries suffered by all shareholders generally. Furthermore, even if the action is derivative, the Court agrees with the Plaintiff that any derivative action it may bring on behalf of Sphere is governed by California or Delaware law, not Canadian law, and therefore approval of the court in Ontario is not a prerequisite to its filing.

Finally, there is an exception to the requirement of pre-suit demand on a corporation to bring a derivative action - where it would be futile.  <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 101-02 (1991) ("Although jurisdictions differ widely in defining the circumstances under which demand on directors will be excused, . . . demand typically is deemed to be futile when a majority of the directors have participated in or approved the alleged wrongdoing . . . or are otherwise financially interested in the challenged transactions . . . .") (internal quotations and citations omitted).  This exception is recognized in both California and Delaware.  <u>Bader</u>, 101 Cal. Rptr. 3d at 832; <u>Aronson v. Lewis</u>, 473 A.2d 805, 814 (Del. 1984).

The allegations of the Amended Complaint make evident that any request made to Sphere to bring such an action would have been futile because the action alleges wrongdoing by Sphere and its Directors.  Therefore, the Court concludes that the filing of

38

the action by the Plaintiff, even if derivative, is not barred.

### v.    Rule 9

Finally, the Cyrus Defendants argue that a claim for aiding and abetting a tort, such as breach of fiduciary duty, must comply with the heightened pleading requirements of Rule 9(b). They contend that the Amended Complaint fails to articulate precisely what actions each of the Cyrus Defendants took to facilitate any breach of fiduciary duty.  They contend that the "group pleading" in the Amended Complaint fails to comply with Rule 9(b).  See, e.g., Hawk Mountain LLC v. Mirra, C.A. No. 13-2083-SLR-SRF, 2016 WL 3182778, at *16 (D. Del. June 3, 2016). The Cyrus Defendants assert that the few allegations with respect to specific actions by the Cyrus Defendants are woefully inadequate to support the claim against them.

The Court disagrees.  The Court finds that the Amended Complaint contains sufficient detail of actions taken by the Cyrus Defendants, collectively and individually, in furtherance of the alleged breaches of fiduciary duty.  See, e.g., Grant v. Turner, 505 Fed. App'x 107, 112 (3d Cir. 2012) ("Although Plaintiffs do not allege who, specifically, made misrepresentations to whom in all cases, they include many other details to 'inject precision or some measure of substantiation into [their allegations of fraud].'") (quoting Frederico v. Home

Depot, 507 F.3d 188, 200 (3d Cir. 2007)).  Specifically, the
Plaintiff alleges that the Cyrus Defendants, through different
entities and complicated transactions, orchestrated Sphere's
acquisition of V3, the merger of Overland and Sphere, the over-
leveraging of the combined entity to the Cyrus Defendants, and
the ultimate divestiture of Overland to another Cyrus-related
entity, SVTP.  (D.I. 18 at ¶¶ 23-30, 43-66, 116-17, 144-47, 157-
85.)  It alleges that these and other actions by the Cyrus
Defendants resulted in harm to V3.  (Id. at ¶¶ 90, 108-09, 112-
13, 116, 119-25, 128-35, 140-43, 148-50.)

Therefore, the Court concludes that the Plaintiff has stated
claims for breaches of fiduciary duty and aiding and abetting
those breaches.  Accordingly, the Court will deny the Motions to
Dismiss Counts 9 and 10.

### c.   Count 11: Equitable Subordination

In Count 11 the Plaintiff seeks equitable subordination of
claims that the Defendants may have because of their inequitable
conduct.  (Id. at ¶¶ 263-69.)

The Defendants contend that Count 11 should be dismissed for
several reasons.  First, the Defendants contend that no right to
equitable subordination is available under the Bankruptcy Code
for any claims they may have against Sphere because it is not a
debtor in bankruptcy.

The Plaintiff apparently concedes this point but argues that
equitable subordination is available under the Uniform Commercial
Code (the "UCC"), which is incorporated into the SPA.  (Id. at ¶
268, Ex. G at §§ 2.20 & 3.7.)  The Plaintiff argues that the UCC
should be "liberally" construed and applied "(1) to simplify,
clarify, and modernize the law governing commercial transactions;
(2) to permit the continued expansion of commercial practices
through custom, usage, and agreement of the parties; and (3) to
make uniform the law among the various jurisdictions."  Cal. Com.
Code § 1103(a) (West 2021).

The Court disagrees with the Defendants on this point.
Equitable subordination is not a creation of the Bankruptcy Code;
rather, the Code merely provides that in a bankruptcy case, a
court may subordinate a claim under the general principles of
equitable subordination.  11 U.S.C. § 510(c).  As the Fifth
Circuit has explained:

> The Bankruptcy Code does not specify the circumstances
> in which equitable subordination is appropriate.
> Instead, drawing on common law principles, this circuit
> has crafted a widely followed standard authorizing
> equitable subordination if three preconditions are
> satisfied.  Under this test, equitable subordination is
> permitted when (1) the claimant engaged in inequitable
> conduct; (2) the conduct resulted in harm to the
> creditors or conferred an unfair advantage upon the
> claimant; and (3) equitable subordination is not
> inconsistent with the Bankruptcy Code.

In re Cajun Elec. Power Coop., Inc., 119 F.3d 349, 357 (5th Cir.

41

1997).  Thus, the Court concludes that, if a basis for equitable subordination under the UCC or common law principles is established, then it is a claim that the Court may consider even though Sphere is not in bankruptcy.

The Defendants also argue that the Plaintiff has not articulated what claims should be subordinated.[13]  In particular, the Cyrus Defendants contend that they have no claim to be subordinated because, as the Amended Complaint itself acknowledges, any debt they held against Sphere was converted to equity.  (D.I. 18 at ¶ 177.)

The Plaintiff responds that the Amended Complaint seeks to avoid the various transfers by which the Cyrus Defendants' debt was converted as, inter alia, fraudulent conveyances.  Therefore, to the extent it is successful, the Plaintiff argues that the circumstances would also warrant the equitable subordination of the Cyrus Defendants' reinstated claims.

The Court agrees with the Plaintiff.  If the Plaintiff is successful on other counts in the Amended Complaint, then the Cyrus Defendants' claims may be reinstated.  Therefore, equitable subordination may be relevant to those claims and there is no

---

[13]   The Amended Complaint does allege that Sphere and Holdings have filed a claim against the estate, and in Count 4 the Plaintiff seeks to have that claim subordinated.  (D.I. 18 at ¶¶ 204-07.)

basis to dismiss Count 11 at this stage.

As a result, the Court will deny the Motions to Dismiss Count 11.

### d.   Counts 12 and 13: Turnover

Counts 12 and 13 seek turnover of property from the Sphere Defendants that is allegedly due to the Plaintiff pursuant to the APA, namely the maximum Earn-out and the Holdback Shares.[14]  The Plaintiff relies on section 542(b) of the Bankruptcy Code, which provides that turnover is available against an entity "that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order."  11 U.S.C. § 542(b).

The Sphere Defendants argue that the claims against the Directors should be dismissed because the Directors did not possess or control any of the property at issue.  The Plaintiff responds that turnover against the Directors is appropriate because the Directors exercised control over Sphere and interfered with V3's efforts to achieve the Earn-out, remove the restrictive legend, and timely get the Holdback Shares.  Therefore, the Plaintiff asserts that the Directors should be required to turn over the value of those assets.

The Court disagrees with the Plaintiff.  The Directors were

---

[14]   The Plaintiff contends that the Holdback Shares, in particular, are property of the estate and are being held in trust for it.

not parties to the APA.  To the extent that they interfered with the Plaintiff's rights under that agreement, the Plaintiff has asserted a claim for that.  However, turnover is not a proper avenue of recovery against the Directors because there is no allegation that the Directors possess property of the estate or that the Directors owe a mature debt to the estate as is required under section 542(b).  Therefore, the Court concludes that Counts 12 and 13 must be dismissed as to the Directors.

The other Sphere Defendants also argue that no turnover claim is available against them.  The property which the Plaintiff demands be turned over is the same property that is directly at issue in the breach of contract claims.  The Sphere Defendants argue that turnover is not appropriate in these circumstances because there is a dispute as to whether <u>anything</u> is owed to the Plaintiff under the APA.  (D.I. 22.)  <u>See Welded Constr. L.P. v. Williams Cos. (In re Welded Constr. L.P.)</u>, 609 B.R. 101, 125-26 (Bankr. D. Del. 2019); <u>OHC Liquidation Trust v. Discover Re (In re Oakwood Homes Corp.)</u>, 342 B.R. 59, 67-68 (Bankr. D. Del. 2006).

The Plaintiff asserts nonetheless that it is entitled to turnover under section 542(b) because it is owed a mature debt. The Plaintiff argues that "an action may be a turnover proceeding even if the defendant disputes the validity or existence of the

44

debt, as long as the . . . allegations state the existence of a
mature debt." 5 Collier on Bankruptcy ¶ 542.04 (Alan N. Resnick
& Henry J. Sommer eds., 16th ed. 2016). Accord Nat. Enters.,
Inc. v. Koger P'ship, Ltd. (In re Nat. Enters., Inc.), 128 B.R.
956, 959 (E.D. Va. 1991); Kids World of Am., Inc. v. State of
Georgia Dep't of Early Care & Learning (In re Kids World of Am.,
Inc.), 349 B.R. 152, 163 (Bankr. W.D. Ky. 2006).

The Court agrees with the Defendants on this point. In this
case, the Plaintiff's contention that there is a mature debt due
under the APA for the maximum Earn-out is not supported by the
allegations of the Amended Complaint. Rather, Count 12 alleges
that the Sphere Defendants breached the APA by not performing the
covenants relating to the Earn-out and that as a result they must
be "deemed" to be fully earned and achieved. (D.I. 18 at ¶¶ 272-
80.)

Similarly, in Count 13 the Amended Complaint alleges that
the Holdback Shares were due to be turned over by July 6, 2015,
but it also alleges that they were held back subject to the
satisfaction of certain conditions (namely adjustments under
section 4.5 of the APA and resolution of pending litigation).
(Id. at ¶¶ 97, 99 & 283.) There is no allegation that those
conditions have been met. In fact, the Sphere Defendants dispute
the Plaintiff's contentions, as set forth in the Answer and

45

Counterclaim filed by Sphere and Holdings.  (D.I. 22.)

This is not a case where all acts necessary to create the debt have occurred, such as delivery of goods or performance of services.  See, e.g., Kids World, 349 B.R. at 164 (holding that debtor stated a claim for turnover for value of services fully performed despite dispute as to whether contract existed).  In this case, the Plaintiff's claims are predicated on its assertion that the APA has been breached, which is disputed.  Therefore, the Court cannot conclude that there is a mature debt due under the APA for either the Earn-out or the Holdback Shares.  See, e.g., Discover Re, 342 B.R. at 67-68 (holding that turnover is not a remedy available to recover debts that remain unliquidated and/or in dispute).

Furthermore, the obligation to turn over a mature debt is subject to a caveat: "except to the extent that such debt may be offset under section 553."  11 U.S.C. § 542(b).  The Answer filed by Sphere and Holdings asserts a right of setoff in its Thirteenth Affirmative Defense.  (D.I. 22.)

As a result, the Court will grant the Motion to Dismiss Counts 12 and 13 as to the other Sphere Defendants, as well.  Because dismissal is appropriate as to all Defendants named in those Counts, the Court will dismiss them entirely.

e.   <u>Count 14: Constructively Fraudulent Transfer</u>

Count 14 asserts a constructively fraudulent transfer claim against the Sphere Defendants relating to the transfer of V3's assets to Sphere under the APA.  The Sphere Defendants argue that Count 14 must be dismissed for several reasons.

i.   <u>Applicable state law</u>

First, the Sphere Defendants contend that the Amended Complaint fails to identify any applicable state law supporting the claim.

The Court rejects the Sphere Defendants' argument.  In Count 14 the Plaintiff asserts that the transfer is avoidable under "applicable state law."  (D.I. 18 at ¶ 288.)  As noted above, the constructive fraudulent conveyance law is the same under California and Delaware law.  (<u>See</u> Part III.C.2.a.ii. n.9 <u>supra</u>.)

ii.   <u>Insolvency</u>

Second, the Sphere Defendants argue that the claim must fail because there are no allegations that V3 was insolvent or rendered insolvent as a result of the APA.  The Plaintiff responds that the Amended Complaint contains ample allegations to that effect.

The Court agrees with the Plaintiff on this point.  The Amended Complaint alleges that during the due diligence period prior to the APA closing, V3 struggled to pay operating costs and

was required to have Sphere begin fulfilling its orders, thereby providing operating funds for V3 (which were deducted from the cash due to V3 at closing of the APA). (D.I. 18 at ¶ 78.) Further, it alleges that V3 was unable to pay all its creditors from the cash paid at closing and that, because of the opposition of the Sphere Defendants to removal of the restrictive legend on the Initial Shares, V3 was unable to pay its creditors and forced to file bankruptcy. (<u>Id.</u> at ¶¶ 92-94, 106-07, 128-30, 141-42, 148-49.) The Court finds those allegations sufficient to allege that V3 was insolvent or rendered insolvent by the APA.

### iii. <u>Benefit to the Defendants</u>

The Sphere Defendants also assert that the Plaintiff does not allege that any Director ever received V3's assets or benefitted from the transfer of those assets. Without having received the assets, they contend that the Directors cannot be liable as an initial transferee or an immediate or mediate transferee of such initial transferee.

The Plaintiff responds that the Amended Complaint does allege that the Directors benefitted from the transfers. Specifically, it alleges that the Directors benefitted from the transaction by selling the Sphere shares they, their family, and friends owned for a higher price - after Sphere had acquired V3's assets but before V3 could sell its Initial Shares and before it

became public that Sphere had agreed to issue additional shares
of its stock in connection with the Overland merger.  (D.I. 18 at
¶¶ 123-26, 250-52.)

The Court agrees that the Amended Complaint does state a
claim against the Directors by alleging they benefitted
personally from the transfer of the V3 assets in exchange for
restricted stock in Sphere because it enhanced the value of their
shareholdings, which allowed them to liquidate that stock before
the Initial Share restrictions were lifted and before its value
fell.

## iv.   Duplicative of contract claims

In their reply, the Sphere Defendants additionally argue
that Count 14 must be dismissed because it merely alleges that
the transfer of V3's assets under the APA was fraudulent only as
a result of V3 being unable to realize the negotiated purchase
price for its assets.  This allegation, they assert, is a claim
for breach of contract, not for a fraudulent transfer.

The Court disagrees.  The Amended Complaint contains
sufficient allegations that V3 received less than reasonably
equivalent value for its assets, even if the APA was not
breached.  (Id. at ¶ 291.)  For example, the Amended Complaint
alleges that because the Sphere Defendants interfered with V3's
efforts to sell the Initial Shares and forced V3 to accept the

49

terms in the Leak-out Agreement, V3 received less than the $14.7 million value of its assets due it under the APA.   (Id. at ¶¶ 90, 114-25, 128-32, 137-39, 290.)

Accordingly, the Court finds that the Amended Complaint adequately alleges a claim for avoidance of a constructively fraudulent transfer against the Sphere Defendants.   Therefore, the Court will deny the Motion to Dismiss Count 14.

### f.   Counts 15-19: Breach of Contract

The Sphere Defendants argue that Counts 15 through 19, which assert breach of contract claims, should be dismissed against the Directors because they are not parties to the APA.   The Defendants assert that "[d]irectors of a corporation . . . are not parties to a contract simply because the corporation is a party to a contract.   Rather, Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."   Ruggerio v. FuturaGene, plc., 948 A.2d 1124, 1132 (Del. Ch. 2008) (internal quotations and citations omitted).

The Plaintiff argues that the Directors are liable for breach of the APA because they have bound themselves individually to the APA under section 4.3(e)(iii).   See, e.g., Brown v. Colonial Chevrolet Co., 249 A.2d 439, 441 (Del. Super. Court. 1968).   That section is a negative covenant that precludes any

action by Holdings, Sphere, and their respective Affiliates or successors to reduce the amount of the Earn-out to be paid to V3. (D.I. 18, Ex. D.)  The Plaintiff asserts that the Directors are Affiliates of Sphere and Holdings, as defined in section 1.1 of the APA, by virtue of their control of those corporations.  (Id.)

The Plaintiff further argues that the Directors are liable for breach of contract under the participation theory, which "imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation." Oldcastle Precast, Inc. v. VPMC, Ltd., C.A. No. 12-6270, 2013 WL 1952090, at *14 (E.D. Pa. May 13, 2013) (internal citations omitted).

The Sphere Defendants reply that the participation theory only imposes personal liability on a director who has personally taken part in a tort committed by a corporation. Heronemus v. Ulrick, C.A. No. 97C-03-168-JOH, 1997 WL 524127, at *1 (Del. Super. Ct. July 9, 1997).  They contend that this theory has not been extended to make a director liable for a breach of contract by a corporation.

While the Defendants are correct that directors of a corporation are not ordinarily liable on corporate contracts and that the participation theory may not extend to contract claims, the Court concludes nonetheless that the Plaintiff has stated a

51

claim against the Directors for breach of contract.  The Amended
Complaint contains specific allegations of the control exerted by
the Directors over the actions of Sphere related to its
performance under the APA, which supports the Plaintiff's
argument that they were Affiliates under the definition in the
APA.  (D.I. 18 at ¶ 120, Ex. D at § 1.1.)  It also alleges
specific actions taken by the Directors themselves violative of
Section 4.3(e)(iii) of the APA, such as making false
representations to the transfer agent regarding removal of the
restrictive legend so that the Directors could sell hundreds of
thousands of Sphere stock they owned, while V3 was prevented from
selling its shares.  (Id. at ¶¶ 119-32).  The Court concludes
that these allegations are sufficient to state a claim for breach
of contract against the Directors.

As a result, the Court will deny the Motion to Dismiss
Counts 15, 16, 17, 18 and 19.

g.   <u>Count 21: Interference with Contractual
     Relations</u>

Count 21 asserts a claim for interference with contractual
relations that V3 had with its securities broker and transfer
agent as a result of the Defendants' interference with V3's
efforts to lift the restrictive legend from the Initial Shares
between July and October 2014.  The Defendants contend that the
claim should be dismissed for several reasons.

52

The parties agree that to state a claim for interference with contractual relations, a plaintiff must allege: (i) a valid contract; (ii) about which the interfering defendant knew; (iii) an intentional act that is a significant factor in causing the breach of such contract; (iv) without justification; (v) which causes injury. Beard Rsch., Inc. v. Kates, 8 A.3d 573, 605 (Del. Ch. 2010).

### i.   Sphere Defendants

The Sphere Defendants argue that Count 21 is merely an impermissible attempt to recast a breach of contract claim as a tort. Data Mgmt. Int'l, Inc. v. Saraga, C.A. No. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007) (holding that a plaintiff may not bootstrap contract claims into tort claims when a contract exists). The Sphere Defendants contend that the interference alleged in Count 21 (with the contract between V3 and its securities broker and transfer agent) was expressly permitted by numerous provisions of the APA.[15] While this is contested by the Plaintiff, the Sphere Defendants argue that in Count 16 the Plaintiff alleges that the same conduct was a breach of the APA. Thus, they contend that the tort claim

---

[15]   The Sphere Defendants cite sections 4.2(b) and 6.31 of the APA, in support of their position that V3 was barred from selling the Initial Shares before December 31, 2014, without the prior written consent of Sphere.

based on that same conduct must be dismissed.

The Plaintiff responds that the allegations in the Amended Complaint detail sufficient facts to support its intentional tort claims.  (D.I. 18 at ¶¶ 114, 118, 131-32, 135-37, 139-41, 340.) The Plaintiff disputes that it is just a recasting of its breach of contract claim, arguing that the Amended Complaint contains actionable allegations that the Defendants committed a tort, in addition to the breach of contract, by acting duplicitously and fraudulently.

The Court disagrees with the Plaintiff and concludes that the allegations of interference with V3's contractual relations with its broker and transfer agent contained in Count 21 are merely restatements of its claim that the Defendants breached the APA in Count 16.  The Amended Complaint does not articulate any action taken by the Sphere Defendants to interfere with V3's relationship with its broker, other than the Defendants' actions to prevent V3 from removing the restrictive legend on the Initial Shares.  (D.I. 18 at ¶¶ 87, 114, 119-28, 338-41.)  Further, the Plaintiff does not articulate any specific harm done to V3's contractual relationship with its broker; instead it asserts that the "interference" with that relationship resulted in "economic injury flowing from its inability to liquidate [the Initial Shares], to pay its just debts and obligations and to make

54

appropriate lawful distributions to its shareholders." (Id. at ¶
341.)  This is not an injury flowing from interference with the
Plaintiff's relationship with its broker; it is an injury
stemming from the alleged breach of the APA.

Thus, the Court concludes that the Plaintiff has failed to
state a claim for relief against the Sphere Defendants in Count
21.

### ii. Cyrus Defendants

The Cyrus Defendants contend that the allegations against
them in Count 21 are based solely on the action of their
representative on Sphere's Board, Bordessa, who was not appointed
to the Board until December 2014, months after the alleged
tortious conduct occurred.  (Id. at ¶¶ 18, 138, 339-41.)  The
Plaintiff does not address this argument.

The Court agrees with the Defendants that the Amended
Complaint fails to state a claim against them based on the
actions of their nominee on the Sphere Board, who was not on the
Sphere Board at the relevant time.  Even though the Amended
Complaint also asserts that the Cyrus Defendants controlled
Sphere in other ways at the relevant time,[16] the Court has found
that the Amended Complaint fails to state a claim against Sphere

---

[16]    D.I. 18 at ¶¶ 42-68, 82-83, 91, 117-41.

and so it cannot state a claim against the Cyrus Defendants for Sphere's actions.

Accordingly, the Court will grant the Motions to Dismiss Count 21 as to all Defendants.

> h.   <u>Count 20: Interference with Existing Economic Relations</u>

Count 20 asserts a claim for interference with existing economic relations that V3 had with a former employee, Peter Bookman, who was a co-defendant with V3 in an action for misappropriation of intellectual property brought in 2013 (the "Anderer lawsuit"). (<u>Id.</u> at ¶¶ 72.)  The Defendants contend that it should be dismissed for several reasons.

First, the Defendants contend that Delaware law does not recognize a claim for interference with existing economic relations where there is no contract.[17]  They cite no authority for that proposition.

The Plaintiff responds that there is a claim for tortious interference with an economic interest under Delaware law.  It contends that the standard is essentially the same as that for interference with a contract, except that it requires only the

---

[17]   They argue that the Amended Complaint does not allege a contract existed between V3 and Booker, and in fact none did at the relevant time, because Sphere had hired Bookman when the APA closed.  (D.I. 18 at ¶ 331.)

"existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy . . . ." Bowl-Mor Co. v. Brunswick Corp., 297 A.2d 61, 65 (Del. Ch. 1972).

The Court agrees with the Plaintiff.  Delaware law recognizes a claim for tortious interference with an economic relationship even in the absence of an existing contract.  Bowl-Mor, 297 A.2d at 65 (concluding a claim was stated for interference with a business relationship with customers even though the plaintiff had no further interest in the contract it had assigned to a finance company because there was an expectancy that the customers would continue their business relationships with the plaintiff).

Second, the Defendants assert that the Plaintiff does not identify any existing economic relationship, arguing that the alleged interference with Bookman is really an assertion that the Defendants violated section 8.10 of the APA under which Sphere hired Bookman.  The Defendants argue that a party cannot interfere with its own contract, and, therefore, the count must be dismissed.  Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc., 844 F. Supp. 2d 519, 531 (D. Del. 2012).

The Plaintiff responds that the allegations in the Amended Complaint detail intentional torts committed by the Defendants that interfered with V3's efforts to resolve claims with Bookman

57

arising as a result of the Anderer lawsuit.  (D.I. 18 at ¶¶ 72,
107, 116-27, 133-34, 138, 329-31.)  It contends that the
Defendants' interference was not simply the failure to perform
the APA.

The Defendants reply that there was no economic relationship
between V3 and Bookman related to the Anderer lawsuit because
they were both defendants in the suit and had not asserted claims
against each other.  They assert that the Plaintiff is arguing
that they interfered with its business relationship with Bookman,
not with an economic relationship.  They argue that the Plaintiff
should not be allowed to amend its claim at this late stage.

The Court disagrees with the Defendants.  First, the
Defendants do not articulate any legal difference between an
economic and a business relationship.  Second, the Court finds
that the Amended Complaint adequately pleads a claim for
interference with V3's economic and business relationship with
Bookman.  The Amended Complaint alleges that the Defendants
interfered with the employment/severance arrangements that V3 had
with Bookman.  (Id. at ¶¶ 127, 329-36.)  Further, while Bookman
and V3 had not asserted cross-claims against each other in the
Anderer lawsuit, the Plaintiff alleges that the Defendants
intentionally and without justification induced Bookman to
perjure himself in the Anderer lawsuit, causing V3 injury.  (Id.
at ¶¶ 72, 127, 133-34, 332-36.)  The expectation that Bookman

would not perjure himself in that action (and thus support V3's defense of it) was a valid business and economic relation or expectancy.  The Amended Complaint also alleges that the Defendants used the Anderer suit and Bookman's perjured testimony as another excuse to prevent V3's sale of the Initial Shares and to force V3 to agree to the onerous Leak-out Agreement.  (Id. at ¶ 333.)  Finally, the Amended Complaint alleges that the V3 was injured by having to expend attorney's fees, costs, and possibly excess payments because of that interference.  (Id. at ¶ 336.)

As a result, the Court concludes that the Plaintiff has stated a claim for interference with an existing economic interest.  The Court will deny the Motions to Dismiss Count 20.

### i.   Count 22: Constructive Conversion

Count 22 of the Amended Complaint alleges that the Defendants' actions in blocking the removal of the restrictive legend from the Initial Shares constituted a constructive conversion of V3's interest in those shares entitling it to damages in the amount of the value of those shares had V3 sold them in July rather than October 2014.

The Defendants raise several reasons the claim should be dismissed.

The Sphere Defendants argue that the Plaintiff's allegation of constructive conversion is barred by the economic loss

doctrine which bars tort claims where overlapping claims based in contract adequately address the injury alleged.  That doctrine provides that when a claim for conversion arises "solely from a breach of contract, the plaintiff generally must sue in contract, and not in tort." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 889 (Del. Ch. 2009) (dismissing claim for conversion which was based on duties imposed by contract and duplicative of contract claim).  The Sphere Defendants contend that for any exception to that doctrine to apply, the Plaintiff must allege a duty independent from the contract.  See, e.g., Khushaim v. Tullow, Inc., No. N15C-11-212-PRW, 2016 Del. Super. LEXIS 287, at *22 (Del. Super. Ct. June 27, 2016).

The Plaintiff responds that constructive conversion is not barred by the economic loss doctrine because "the economic loss doctrine is not widely used in Delaware jurisprudence. . . . [and] no Delaware court ever has barred a claim for conversion based upon the economic loss doctrine." Isr. Disc. Bank of N.Y. v. First State Depository Co., C.A. No. 7237-VCP, 2012 WL 4459802, at *14 (Del. Ch. Sept. 27, 2012) (internal quotations and citations omitted), aff'd 86 A.3d 1118 (Del. 2014).

The Court concludes that the assertion of a contract claim in the Amended Complaint is not a bar to the assertion of the conversion claim for several reasons.  First, Delaware Courts do

60

recognize the economic loss doctrine but also recognize a fraud exception to that doctrine.  See, e.g., Livery Coach Sol., L.L.C. v. Music Express/E., Inc., 245 F. Supp. 3d 639, 646 (D. Del. 2017) (concluding that Delaware law recognizes economic loss doctrine as well as the fraud exception to that doctrine for fraudulent inducement and negligent misrepresentation claims); Cavi v. Evolving Sys., Inc., C.A. No. 15-1211-RGA/MPT, 2017 WL 658470, at *7 (D. Del. Feb. 17, 2017) (recognizing fraudulent inducement as exception to economic loss doctrine); Commonwealth Constr. Co. v. Endecon, Inc., C.A. No. 08C-01-266 RRC, 2009 WL 609426, at *5 (Del. Super. Ct. Mar. 9, 2009) (holding that tortious interference with contract is an exception to economic loss doctrine); Christiana Marine Servs. Corp. v. Texaco Fuel and Marine Mktg. Inc., C.A. No. 98C-02-217 WCC, 2002 WL 1335360, at *6 (Del. Super. Ct. June 13, 2002) (concluding that exception to economic loss doctrine permits claim for negligent misrepresentation).  The Court concludes that the conversion claim in the Amended Complaint fits within the fraud exception to the economic loss doctrine recognized by Delaware courts.

Further, as the Court held with respect to Counts 9 and 10, the Federal Rules permit pleading in the alternative.  Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a

claim or defense alternatively . . . .").  (<u>See</u> Part III.C.2.b.ii
<u>supra</u>.)  Thus, the Court concludes that the assertion of a tort
claim as well as a contract claim, at this stage, is permissible.

The Cyrus Defendants contend, however, that the Amended
Complaint contains no factual allegations that they interfered
with V3's right to sell the Initial Shares.  Therefore, they
argue that Count 22 should be dismissed as to them.  The
Plaintiff disputes this assertion.

The Court concludes that there are ample allegations in the
Amended Complaint asserting that, at the time the Sphere
Defendants interfered with V3's efforts to remove the restrictive
legend from the Initial Shares, the Cyrus Defendants controlled
Sphere (even before it placed a member on its Board) through
loans to Sphere and its interests in Overland.  (D.I. 18 at ¶¶
42-68, 82-83, 91, 117-41.)  Thus, because the Court finds that
the Amended Complaint contains sufficient allegations to state a
claim for constructive conversion against the Sphere Defendants,
it finds that they are sufficient to state a claim against the
Cyrus Defendants.

For the foregoing reasons, the Court will deny the Motions
to Dismiss Count 22 as to all Defendants.

### j.   <u>Count 23: Securities Fraud</u>

In Count 23, the Plaintiff alleges that in agreeing to

accept part of the purchase price in stock under the APA, V3 was

informed, assumed, and justifiably relied on the false

representations of the Defendants "that Sphere's shares were

honestly traded and priced by legitimate public market factors

and were not subject to any manipulations, fraud, insider

trading, or other unlawful or improper activity" when in fact the

stock price was artificially inflated and manipulated by acts of

the Defendants in violation of Section 10(b) of the Securities

Exchange Act of 1934 and Rule 10b-5 promulgated under it.  (D.I.

18 at ¶¶ 347-54.)

> i.   Cyrus Defendants
> a.   Vicarious liability

The Cyrus Defendants contend that Count 23 must be dismissed

as to them because a principal cannot be held secondarily liable

for securities fraud by its employee or agent.  See, e.g., Gould

v. American-Hawaiian Steamship Co., 535 F.2d 761, 778-79 (3d Cir.

1976) (noting that "ordinary agency principles are not applicable

in determining secondary liability in securities violation

cases"); Rochez Bros., Inc. v. Rhoades, 527 F.2d 880, 886 (3d

Cir. 1975) (holding that "agency principles - respondeat superior

- are not applicable to determine secondary liability in a

securities violation case").

The Plaintiff responds that an entity can be held

vicariously liable for the actions of its agent.  Cent. Bank of

Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994); Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 842 (2d Cir. 1998).

The Court concludes that dismissal of Count 23 is not warranted on this ground.  First, the cases the Cyrus Defendants cite do not support their claim that they cannot be held liable for the actions of their agents.  The Third Circuit in Rochez stated that:

> There is no doubt that the fraud of an officer of a corporation is imputed to the corporation when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation.  This is true even if the officer's conduct was unauthorized, effected for his own benefit but clothed with apparent authority of the corporation, or contrary to instructions.  The underlying reason is that a corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business.  A corporation, however, is not liable for the fraud of its officer when the officer acted as an individual for his own account and the defrauded party knew that the officer was not acting for the corporation.

Rochez, 527 F.2d at 884 (citations omitted).  Further, the Third Circuit in Gould did not hold that a person or entity cannot be liable for securities fraud simply because of the actions of its agent, but instead remanded the case for a determination whether the actions of the principal directly or indirectly induced the agent's actions.  Gould, 535 F.2d at 779.

64

Thus, the Court rejects the Cyrus Defendants' blanket assertion that they cannot be held vicariously liable for securities fraud.

### b. Liability for APA misrepresentations

The Cyrus Defendants contend, nonetheless, that the acts for which the Plaintiff alleges they are liable with respect to the APA are those of their "employee on Sphere's Board." (D.I. 18 at ¶¶ 347-49.)  The only employee that the Cyrus Defendants had on the Sphere Board, however, was Bordessa who was not appointed to that Board until December, 2014, after the occurrence of the actions on which the securities fraud claim is premised.  (Id. at ¶¶ 18, 73-87, 118-40, 347-54.)

As noted above, however, the Amended Complaint has numerous allegations that Cyrus exercised control over Sphere prior to the time Bordessa was appointed to the Sphere Board.  (Id. at ¶¶ 42-68, 82-83, 91, 117-41.)  Thus, the Court concludes that there are sufficient allegations against the Cyrus Defendants to support a securities fraud claim, beyond the allegations relating to the actions of Bordessa.[18]

---

[18]   While select paragraphs refer to actions by the Cyrus Defendants through Bordessa, Count 23 incorporates all the allegations of the Complaint and refers generally to actions of "the Defendants" including the Cyrus Defendants.  (D.I. 18 at ¶ 346-55.)

c.    Aiding and abetting

The Cyrus Defendants also argue that the allegations that they conspired or aided and abetted the securities fraud committed by others must fail because there is no such liability under federal securities law.  See, e.g., Cent. Bank, 511 U.S. at 177 (holding that if Congress intended to impose aiding and abetting liability, it would have used the words "aid" and "abet" in the statutory text); Dinsmore, 135 F.3d at 842 (holding that conspiracy liability is beyond the scope of conduct prohibited by the securities fraud statute).

The Plaintiff responds that the Cyrus Defendants' contention that there is no claim for aiding and abetting under securities law is a strawman, as the Plaintiff does not assert such a claim. Rather, it asserts a direct securities fraud claim against the Cyrus Defendants for causing Sphere and the Directors to make material misstatements and omissions in connection with the sale of securities through the APA.

The Court agrees with the Defendants that a securities claim cannot be premised on aiding and abetting another's securities fraud.  Cent. Bank, 511 U.S. at 177.  However, the Court agrees with the Plaintiff that Count 23 is not premised on that contention.  Count 23 alleges that the Cyrus Defendants themselves, and through entities they controlled, committed

66

actions violative of the securities law.  (D.I. 18 at ¶¶ 42-66, 350-52.)

### ii.  All Defendants
### a.  Specificity

All Defendants argue that the Plaintiff fails to plead the securities fraud claim in Count 23 with the particularity required by the Private Securities Litigation Reform Act ("PSLRA").  To plead a securities fraud claim, a plaintiff must plead:

> (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) causation.

In re Hertz Global Holdings, Inc., 905 F.3d 106, 114 (3d Cir. 2018) (quoting City of Edinburgh Council v. Pfizer, Inc., 754 F.3d 159, 167 (3d Cir. 2014)).  "This standard requires plaintiffs to plead the who, what, where, when, and how." Edinburgh Council, 754 F.3d at 166 (citations omitted).

The Defendants do not contest that the Amended Complaint alleges that Count 23 relates to the purchase or sale of a security and that it alleges that the Plaintiff relied on certain representations in connection with that purchase.  The Defendants do, however, assert that the remaining elements have not been pled with the requisite specificity required by Rule 9.

67

1.   <u>Misrepresentation</u>

The Defendants contend that the allegations of the Amended Complaint do not identify the specific statements/omissions made by each Defendant that violate the securities law.  15 U.S.C. § 78u-4(b)(1) (requiring that a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . .").  Instead, the Defendants assert, the Amended Complaint relies on "group pleading" which presumes that published statements of a corporation are attributable to insiders without connecting the individuals who made each statement.  They argue that group pleading is not permissible in securities actions and that the Plaintiff must identify which Defendant made each alleged misrepresentation or omission.  <u>See</u> 15 U.S.C. § 78u-4(b)(2); <u>Winer Family Trust v. Queen</u>, 503 F.3d 319, 335-37 (3d Cir. 2007) (dismissing Rule 10b-5 claims against certain individual defendants based on lack of specific allegations as to each). Further, with respect to any alleged omissions, the Defendants argue that they cannot be held liable because the Plaintiff does not allege that they had a duty to disclose that information. <u>See</u> <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 239 n.17 (1988) (stating that silence is not misleading without a duty to disclose).

The Plaintiff responds that the Amended Complaint does make particularized allegations against the Defendants concerning misrepresentations and omissions, both before and after the APA closed, including:

(1)   Defendants knew and concealed from V3 that Sphere did not have the financial resources to close the APA without the $5 million in financing from the Cyrus Defendants and did not have the financial ability to perform that agreement thereafter. (D.I. 18 at ¶¶ 54, 62, 64, 66, 90-92, 101-28, 250-52.)

(2)   The Cyrus Defendants acquired control of Tandberg, Overland and ultimately Sphere, through a series of secured and convertible debt transactions, which were not disclosed to V3. (Id. at ¶¶ 43-64, 70, 82-83, 90-91, 349, 352, 359.)

(3)   After the APA closed, the Defendants (including Directors Meretsky and the Cyrus Defendants' representative, Bordessa), made false representations and interfered with V3's efforts to sell the Initial Shares, misrepresented Sphere's ability to operate profitably which made it impossible for V3 to realize the Earn-Out, and failed to disclose the negotiations to acquire Overland which adversely affected V3's ability to sell the Initial Shares.  (Id. at ¶¶ 54, 62, 64, 66, 90-92 101-28, 250-52.)

The Plaintiff states that it does identify the specific

speaker, where known, but is still gathering facts as to each specific Defendant, which has been hampered by the Defendants' failure to cooperate.

The Plaintiff's assertion that, at this stage, it does not yet know whether any of the other Directors made a specific statement to support its securities fraud claim against them, though, is to no avail. "[C]laims must be pleaded with the specificity required by the PSLRA with respect to each defendant." <u>Winer</u>, 503 F.3d at 337. "If a private securities case proceeds past the pleadings stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants. <u>See</u> Fed. R. Civ. P. 15." <u>Id.</u>

As to some of the Directors (Ashkin, Biasini, Bowman, and Mahadevan), the Court concludes that the Amended Complaint fails to plead a misstatement or omission with particularity. As a result, the Court concludes that the Amended Complaint does not meet the specificity requirements of the PSLRA. 15 U.S.C. § 78u-4(b)(1); <u>Winer</u>, 503 F.3d at 335-36 (requiring complaint to "specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."). The Court will therefore dismiss Count 23 of the Amended Complaint as to those Directors. 15 U.S.C. § 78u-4(b)(3)(A).

70

The Court finds, however, that the Amended Complaint does make sufficiently specific allegations from which the Court could conclude that Meretsky, Tassiopoulos, Kelly, and Bordessa made misstatements or omissions related to the Overland transaction, the APA, and/or removal of the restrictions on the Initial Shares.  (D.I. 18 at ¶¶ 55, 57, 70, 90, 94, 110, 112, 116, 120, 122-23.)  Therefore, dismissal as to those Directors on this ground is not warranted.

With respect to the corporate Defendants, the Court finds that the allegations of material misrepresentations and omissions cited by the Plaintiff are sufficient to state a claim.  While the Defendants contend that there can be no securities fraud claim for an omission without an allegation of a duty to disclose, the case which they cite for that proposition is not so broad.  As the <u>Nuveen</u> Court observed:

> No one in [the <u>Basic]</u> case took issue with the proposition that the denial of facts which were true was a misstatement or omission. . . .  Further, as Plaintiffs [in this case] observe, duty is irrelevant to claims of "device, scheme or artifice," under Rule 10b-5(a), and to "practice or course of business which operates or would operate as a fraud or deceit upon any person," under Rule 10b-5(c).

<u>Nuveen Quality Income Mun. Fund, Inc. v. Prudential Sec., Inc.</u>, C.A. No. CS-01-0127-EFS, 2001 WL 37126611, at *9-10 (E.D. Wash. Dec. 10, 2001) (citations omitted).

71

In this case, the Amended Complaint clearly alleges that
Sphere made representations that it was able to perform under the
APA.  In that context, the failure to disclose that it was being
burdened with unsustainable debt was materially misleading.
(D.I. 18 at ¶¶ 54, 62, 64, 66, 90-92, 101-28, 250-52.)  Further,
the Amended Complaint alleges that the Cyrus Defendants were
involved in a scheme to defraud V3 by stripping its business from
Sphere and leaving Sphere unable to pay V3 for that business.
(Id. at ¶¶ 47-60, 81-82, 90-94, 144-47, 159-89.)

The Defendants allege in their reply that public information
at the time revealed the precarious nature of Sphere's financial
condition and the acquisition of debt by Cyrus in Overland and
Sphere and that, therefore, they cannot be held liable for these
"omissions."  At the motion to dismiss stage, however, the Court
is not tasked with evaluating any evidence that the Defendants
may present in their defense but must accept the allegations in
the Amended Complaint as true.

## 2.   Scienter

The Defendants argue that the Amended Complaint contains no
facts whatsoever that would give rise to a "powerful or cogent"
inference that the Defendants acted with the necessary "intent to
deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues
& Rights, Ltd., 551 U.S. 308, 319, 323-24 (2007) (internal
citations omitted).

The Plaintiff responds that numerous allegations in the
Amended Complaint show "a strong inference that the
[D]efendant[s] acted with the required state of mind."  15 U.S.C.
§ 78u-4(b)(2)(A).  For example, the Plaintiff argues that the
Amended Complaint alleges that the Defendants were aware that V3
needed all the cash promised under the APA to pay its debts.
(D.I. 18 at ¶¶ 71, 76-80, 88, 91-94.)  Yet, the Amended Complaint
alleges, the Defendants failed to disclose the Cyrus Defendants'
growing ownership and control over Sphere and Overland, their
plan to merge the two, and their ultimate plan to take the V3
business from Sphere.  (Id. at ¶¶ 47-60, 81-82, 90-94, 144-47,
159-89.)  The Plaintiff argues that these factual allegations are
sufficient to support the allegations in the Amended Complaint
that the Defendants intended to deceive, manipulate, and defraud
V3 into accepting over 70% of the purchase price under the APA in
Sphere stock.  (Id. at ¶¶ 111, 113, 347-48, 351-52, 354.)  It
contends they are also sufficient to support the allegations that
the Defendants' actions in preventing the removal of the
restrictive legend on the Initial Shares was done intentionally
to protect the Directors' stock options and warrants and to
induce V3 into agreeing to the Leak-out Agreement.  (Id. at ¶¶
54, 62, 64, 66, 90-92, 101-28, 250-52, 325.)

In determining whether scienter has been properly pled, the
Supreme Court has stated that courts must inquire "whether <u>all</u> of
the facts alleged, taken collectively, give rise to a strong
inference of scienter, not whether any individual allegation,
scrutinized in isolation, meets that standard. . . .  When the
allegations are accepted as true and taken collectively, would a
reasonable person deem the inference of scienter at least as
strong as any opposing inference?"  <u>Tellabs</u>, 551 U.S. at 323, 326
(emphasis in original).

In this case, the Court concludes that the allegations of
the Amended Complaint do meet the required standard of pleading
scienter.  Taken as a whole the allegations in the Amended
Complaint could lead a reasonable person to conclude that the
actions of the Defendants were all designed to (1) mislead V3
into agreeing to take the Initial Shares instead of cash under
the APA, (2) force V3 to enter into the Leak-out Agreement when
it was unable to sell the Initial Shares as a result of the
Defendants' obstruction of V3's efforts to remove the restrictive
legend, and (3) foreclose V3 from any possible reimbursement as a
result of Sphere's divestiture of Overland through the SPA
transaction.

### 3.   <u>Loss Causation</u>

The Defendants assert that the Plaintiff fails to plead loss

causation, i.e., that the fraudulent misrepresentations and
omissions actually caused any loss.  Erica P. John Fund, Inc. v.
Halliburton Co., 563 U.S. 804, 807 (2011); McCabe v. Ernst &
Young, LLP, 494 F.3d 418, 428 (3d Cir. 2007).

The Plaintiff responds that the Amended Complaint contains
sufficient particularized allegations that it suffered damages
and that they were a direct result of the scheme to defraud V3.
(D.I. 18 at ¶¶ 59, 82, 88, 90-94, 105-49, 161-62, 173, 178-79.)

The Court agrees with the Plaintiff.  To state a section
10(b) claim a plaintiff must prove both transaction causation
(that but for the misrepresentation the transaction would not
have occurred) and loss causation (that the misrepresentation
actually caused the losses the plaintiff suffered).  See, e.g.,
McCabe, 494 F.3d at 429-30; Berckeley Inv. Group, Ltd. v.
Colkitt, 455 F.3d 195, 222 (3d Cir. 2006).  In this case, the
Amended Complaint alleges, inter alia, that V3 would not have
agreed to the APA, the Earn-out, or Leak-out Agreement terms
without the specific misrepresentations or had it known of the
omitted facts.  (D.I. 18 at ¶¶ 82-93, 111-12.)  It further
alleges that but for the Defendants' misrepresentations about and
interference with its ability to remove the restrictions on the
Initial Shares, V3 would have been able to sell the Initial
Shares at a favorable market price rather than being forced to

75

agree to the unfavorable Leak-Out Agreement.   (Id. at ¶¶ 59, 82, 88, 90-94, 105-49, 161-62, 173, 178-79.)

The Court concludes that these allegations of causation are sufficient to state a securities fraud claim because they allege facts showing that the alleged misrepresentations were in a reasonably direct or proximate way responsible for the Plaintiff's loss.  See, e.g., EP MedSystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 884-85 (3d Cir. 2000) (finding sufficient to withstand motion to dismiss allegations that defendant had violated § 10(b) by inducing plaintiff to buy shares in defendant through misrepresentations about "imminent" business opportunities that were non-existent).

For the reasons stated above, the Court will grant the Motions to Dismiss as to Defendants Ashkin, Biasini, Bowman, and Mahadevan.  The Court will deny the Motions to Dismiss Count 23 as to the remaining Defendants.

> k.   Counts 24 and 25: Negligent and Intentional
>      Misrepresentation

In Counts 24 and 25, the Plaintiff alleges that the same misrepresentations and omissions that form the basis for their securities fraud claims also support a claim for negligent and intentional misrepresentation against the Sphere Defendants. (D.I. 18 at ¶¶ 357-68.)

The Sphere Defendants raise several bases for dismissal. First, they assert that the Plaintiff's claims should be dismissed because neither claim satisfies the heightened pleading standards of Rule 9(b) for the same reasons they articulate with respect to Count 23, namely that the Plaintiff does not allege what representations were made, who made the representations, how the representations were false, or what specific material was withheld.  The Plaintiff responds that the Sphere Defendants ignore allegations regarding the alleged misrepresentations made by them throughout the Amended Complaint and particularly with respect to their 10b-5 claims.  (Id. at ¶¶ 47-60, 81-82, 90-94, 110-13, 144-47, 159-89, 34, 349, 352.)

For the same reasons stated above, the Court concludes that the Amended Complaint contains ample allegations of intentional and negligent misrepresentations with respect to all the Sphere Defendants except Directors Ashkin, Biasini, Bowman, and Mahadevan.

Second, the Sphere Defendants contend that the negligent misrepresentation claim is barred by the economic loss doctrine because their tort claim is simply a rehash of the breach of contract claims.  Brasby v. Morris, C.A. No. 05C-10-022-RFS, 2007 WL 949485, at *6 (Del. Super. Ct. Mar. 29, 2007) (stating that "the driving principle" behind the economic loss doctrine "is the

notion that contract law provides a better and more specific remedy than tort law."). "[F]or contract and tort claims to co-exist, the plaintiff must allege that the defendant breached a duty that is independent of the duties imposed by the contract." Abbott Lab'ys v. Owens, C.A. No. 13C-09-186 JRJ CCLD, 2014 WL 8407613, at *7. (Del. Super. Ct. Sept. 20, 2014).

The Plaintiff responds that the economic loss doctrine's exceptions, particularly its fraud exception, precludes dismissal of its negligent and intentional misrepresentation claims. RLI Ins. Co. v. Indian River Sch. Dist., 556 F. Supp. 2d 356, 361 (D. Del. 2008) (citing Restatement (Second) of Torts § 552).

The Court has already concluded that Delaware law recognizes a fraud exception to the economic loss doctrine. (See Part III.C.2.i. supra.) That exception includes intentional and negligent misrepresentation claims. See, e.g., Livery Coach, 245 F. Supp. 3d at 646.

The Court finds that the Plaintiff has alleged sufficient facts to fall within the fraud exception to the economic loss doctrine for the claims in Counts 24 and 25. As found with respect to the securities fraud claim, the Amended Complaint contains ample allegations about the misrepresentations and omissions regarding the stock offered in connection with the APA and its ability to be traded freely after the restrictive legend

was due to be removed.  These alleged misrepresentations were not simply that Sphere would perform the APA, they are allegations that Sphere misled V3 about facts on which V3 relied in agreeing to enter into the APA in the first place.  Consequently, the Court concludes that Counts 24 and 25 fall under the exception to the economic loss doctrine.  Cavi, 2017 WL 658470, at *7 (stating that "[a]llegations of fraud that go directly to the inducement of the contract, rather than its performance, present a viable claim" not barred by the economic loss doctrine).

Accordingly, the Court will deny the Motions to Dismiss Counts 24 and 25 as to all Defendants except Ashkin, Biasini, Bowman, and Mahadevan.

### l.  Count 26: Unjust Enrichment

Count 26 asserts a claim for unjust enrichment for the value of V3's assets, contending that it is inequitable for the Defendants to retain the benefit of those assets without full payment of their value under the APA.  (D.I. 18 at ¶ 372.)

### i.  Duplicative of contract claim

The Defendants argue that Count 26 should be dismissed because the Plaintiff has asserted a claim for breach of contract for the same conduct and same damages.  See, e.g., Vichi v. Koninklijke Philips Elecs. N.V., 62 A.3d 26, 58 (Del. Ch. 2012) ("It is a well-settled principle of Delaware law that a party

cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim."); Kuroda, 971 A.2d at 891 ("a claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim.").  The Defendants argue that the Plaintiff's claim is based entirely on the APA, a valid contract, and, therefore, Count 26 must be dismissed.

The Plaintiff argues that the existence of the APA does not preclude an unjust enrichment claim.  It argues that such preclusion is not a per se rule and its claims may be pled alternatively at the pleadings stage.  See McPadden v. Sidhu, 964 A.2d 1262, 1276 (Del. Ch. 2008).

The Defendants respond that the Plaintiff cannot plead an unjust enrichment claim in the alternative, because the existence of the contract is not disputed by the parties.  See, e.g., 9586 LLC v. Great Am. Grp., LLC (In re Abound Solar Mfr., LLC), 547 B.R. 611, 623 (Bankr. D. Del. 2016).

The Plaintiff responds, however, that the claim is not based on the contract but on its allegations that the Defendants fraudulently induced V3 to enter into the APA.  (D.I. 18 at ¶¶ 82, 90, 110-13, 344, 349, 352, 360-63, 366-67.)  The Plaintiff contends that a claim for fraudulent inducement is independent of

a breach of contract claim and would support a claim for unjust enrichment.  See, e.g., Abound Solar, 547 B.R. at 625; Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998).

The Court agrees with the Plaintiff that its unjust enrichment claim is not foreclosed by its breach of contract claims.  First, as to the Cyrus Defendants, there is no contract claim asserted against them in the Amended Complaint.  With respect to the Sphere Defendants, the Court concludes that the Plaintiff's unjust enrichment claim (based on an assertion that V3 was fraudulently induced to enter into the APA) is not duplicative of the breach of contract claim.  Abound Solar, 547 B.R. at 625 (denying motion to dismiss fraudulent inducement claim because it was independent from breach of contract claim); Formosa Plastics, 960 S.W.2d at 46 (concluding that "it is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself.").

### ii.  No benefit received

The Cyrus Defendants also contend that the Amended Complaint fails to state a claim against them because there are no allegations (other than group ones) that the Cyrus Defendants received any benefit from the transfer of the V3 assets to Sphere

under the APA.  They argue that they were not a party to the APA
nor has the Plaintiff alleged that they received any assets or
benefits from V3 that would form the basis of an unjust
enrichment claim.  The Plaintiff responds that the Cyrus
Defendants ignore the numerous allegations that the Cyrus
Defendants benefitted from the sale of V3's assets to Sphere
which it controlled.  (D.I. 18 at ¶¶ 50-56, 62-64, 66, 82-83, 90,
111-13, 144, 158-89, 344, 349, 352, 360-63, 366-67.)

The Court rejects the Cyrus Defendants' argument because it
finds that the Amended Complaint does contain sufficient
allegations that the Cyrus Defendants participated in the acts
which form the basis of the fraudulent inducement claims by the
Plaintiff and received a benefit from them as a result of its
ownership and control of Tandberg, Overland, and Sphere.  Thus,
the Court concludes that the Amended Complaint states a claim
against the Cyrus Defendants for unjust enrichment.  See, e.g.,
Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 394 (Del.
Ch. 1999).

Consequently, the Court will deny the Motions to Dismiss
Count 26.

### m.    Count 27: Injunctive Relief

Count 27 seeks a temporary, preliminary, and permanent
injunction requiring Sphere to release and remove the restrictive

legend from the Holdback Shares, as well as barring Sphere from objecting to, interfering with, or otherwise halting or impairing V3's sales of its shares without regard to the Leak-out Agreement.

The Defendants argue that injunctive relief should be foreclosed, because the Plaintiff has not moved for preliminary injunctive relief under Rule 65 despite filing the Original Complaint more than five years ago.  The Defendants also contend that the Plaintiff's claim for injunctive relief in Count 27 must be dismissed because it is merely a remedy and not a separate cause of action.  See, e.g., Birdman v. Office of the Governor, 677 F.3d 167, 172 (3d Cir. 2012).

The Plaintiff responds that any delay does not mean it is precluded from seeking relief and that the delay was caused by the Defendants who have sought repeatedly to delay the case, by filing, inter alia, motions to transfer venue and dismiss the case.  The Plaintiff further asserts that the APA provides that it is entitled to assert such a claim by providing that, if a party breaches the APA, any non-breaching party may request emergency injunctive relief during or prior to the invocation of the dispute resolution procedures.  (D.I. 18, Ex. D at § 11.8.) The SPA provides similar rights.  (Id., Ex. G at §§ 10.6 & 10.7.)

The Court agrees with the Defendants that injunctive relief

is not an independent claim but a remedy.  <u>Birdman</u>, 677 F.3d at

172-73 (affirming dismissal of case where claimants asserted no

independent claim in seeking an injunction).  As the Eleventh

Circuit has explained:

> [A]ny motion or suit for either a preliminary or
> permanent injunction must be based upon a cause of
> action, such as a constitutional violation, a trespass,
> or a nuisance.  There is no such thing as a suit for a
> traditional injunction in the abstract.  For a
> traditional injunction to be even theoretically
> available, a plaintiff must be able to articulate a
> basis for relief that would withstand scrutiny under
> Fed. R. Civ. P. 12(b)(6) (failure to state a claim).

<u>Alabama v. U.S. Army Corps of Eng'rs</u>, 424 F.3d 1117, 1127 (11th

Cir. 2005) (internal quotations and citations omitted).

While the Plaintiff may seek injunctive relief as a remedy

if it prevails on its breach of contract claims, the Court

concludes that Count 27 does not independently state a claim for

relief.  Therefore, the Court will grant the Motions to Dismiss

Count 27.

n.  <u>Claims against Stephen Freidheim</u>

The Cyrus Defendants argue that all claims against Stephen

Freidheim must be dismissed as there are no particular

allegations of any actions taken by him in relationship to any of

the claims in the Amended Complaint.  The Plaintiff responds that

the Amended Complaint alleges sufficient actions taken by

Freidheim or entities controlled by him to state claims for

relief under the various Counts of the Amended Complaint.

The Court finds that there are sufficient allegations against Freidheim and that the Amended Complaint should not be dismissed as to him. The Amended Complaint alleges that Freidheim was the managing member of several of the Cyrus Defendants and the Chief Investment Officer of one of the Cyrus Defendants, Cyrus Capital Partners, L.P. ("CCP"). (D.I. 18 at ¶¶ 29-31.) It further alleges that Freidheim and the Cyrus Defendants had an investment management agreement under which CCP had full voting and disposition power over the stocks held by the Cyrus Defendants. (Id. at ¶ 30.) Finally, the Complaint includes Freidheim in its definition of Cyrus Defendants. (Id. at ¶ 23.) Therefore, all of the allegations in the Amended Complaint of actions by the Cyrus Defendants are, in essence, allegations against him because he was the one person in control of all of those entities. Thus, to the extent the Amended Complaint states a claim against the Cyrus Defendants, it states a claim against Freidheim.

Therefore, the Court concludes that the Motion to Dismiss must be denied as to Freidheim.


IV.  CONCLUSION

For the reasons set forth above, the Court will grant the

85

Defendants' Motions to Dismiss Counts 12, 13, 21, and 27 for all Defendants.  The Court will grant in part and deny in part the Defendants' Motions to Dismiss Counts 7, 8, 23, 24, and 25.  The Court will deny the Defendants' Motions to Dismiss in all other respects.

An appropriate Order follows.


Dated: March 19, 2021          BY THE COURT:


                                 MARY F. WALRATH
                                 United States Bankruptcy Judge

86

SERVICE LIST

Albert H. Manwaring, IV, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2309
Counsel for UD Dissolution Liquidating Trust

Kevin N. Anderson, Esquire
Fabian Vancott
215 South State Street, Suite 1200
Salt Lake City, UT 84111
Counsel for UD Dissolution Liquidating Trust

Eric Lopez Schnabel, Esquire
Alessandra Glorioso, Esquire
Dorsey & Whitney (Delaware) LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Counsel for the Sphere Defendants

Milo Steven Marsden, Esquire
Sarah Goldberg, Esquire
Dorsey & Whitney LLP
111 South Main Street, Suite 2100
Salt Lake City, UT 84111
Counsel for the Sphere Defendants

L. Katherine Good, Esquire
Matthew F. Davis, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Counsel for the Cyrus Defendants

Brian R. Carney, Esquire
Kristen Diane White, Esquire
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York NY 10036
Counsel for the Cyrus Defendants